1   243

2   Mark A. Wolff  (CA State Bar No. 175570)
    Wolff & Wolff
3   8861 Williamson Dr., Suite 30
    Elk Grove, CA 95624
4   (916) 714-5050
    E-Mail: attorneys@wolffandwolff.com
5

6   Attorney for Defendant Jaspal Deol

7

8               UNITED STATES BANKRUPTCY COURT

9               EASTERN DISTRICT OF CALIFORNIA

10                    SACRAMENTO DIVISION

11  In re:                          BK Case No:   2018-23885-C-11
                                    AP Case No:   2019-02146
12  Jaspal Deol                     DC No:

13                  Debtor          Date:
                                    Time:
14  _____/       Place:        501 I Street, 6th Floor
                                                  Sacramento, CA 95814
15  Prabhakar Goel, Goel Family Ventures LLP
    and Econergy, Inc.,             Courtroom:    35
16                                  Judge:        Christopher M. Klein

17                  Plaintiffs

18  v.

19  Jaspal Deol,

20                  Defendant.

21  _____/

22      EXHIBITS  IN SUPPORT OF ADVERSARY COMPLAINT FOR DECLATORY RELIEF,

23          OBJECTION TO CLAIM, AND VIOLATION OF THE AUTOMATIC STAY

24

25  1.     Exhibit A. - LOAN AGREEMENT, DATED NOV. 27, 2011 . . . . . . . . . . . . . . . Page 3

26  2.     Exhibit B. - FURTHER PARTIAL FINAL AWARD DETERMINING VALUE OF

27         JASPAL DEOL'S INTEREST IN ECONERGY, INC., AND VALUE OF LUDHIANA

28         LAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16

3.    Exhibit C. - PLAINTIFF'S COMPLAINT FOR INJUNCTIVE RELIEF, FILED
AUG. 22, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 21

4.    Exhibit D. - TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW
CAUSE RE. PRELIMINARY INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . Page 31

5.    Exhibit E. - ORDER, FILED SEPT. 11, 2017 . . . . . . . . . . . . . . . . . . . . . . . . Page 35

6.    Exhibit F. - FURTHER PARTIAL AWARD . . . . . . . . . . . . . . . . . . . . . . . . . . Page 40

7.    Exhibit G. - ORDER TO CONFIRM FINAL ARBITRATION AWARD ISSUED BY
JUDGE ZAYNER, FILED JAN. 10, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . Page 107

8.    Exhibit H. - JAMS ARBITRATION FINAL AWARD . . . . . . . . . . . . . . . . . . . . Page 113

9.    Exhibit I. - PROOF OF CLAIM FOR PRABHAKAR GOEL AND GOEL FAMILY
VENTURES I L.P. (CLAIM 6-1), FILED AUG. 28, 2018 . . . . . . . . . . . . . . . . Page 122

10.   Exhibit J. - PROOF OF CLAIM FOR PRABHAKAR GOEL (CLAIM 6-2), FILED
SEPT. 30, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 128

11.   Exhibit K. - PROOF OF CLAIM FOR GOEL FAMILY VENTURES I, L.P.
(CLAIM 6-3), FILED SEPT. 30, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 166

12.   Exhibit L. - PROOF OF CLAIM FOR ECONERGY, INC. (CLAIM 10), FILED
SEPT. 30, 2019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 204

14.   Exhibit M. - ORDER MODIFYING AUTOMATIC RELIEF FROM STAY, FILED
OCT. 31, 2018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 242

Dated: 12/4/19

Mark A Wolff

# EXHIBIT A

### LOAN AGREEMENT

This Loan Agreement (hereinafter referred to as the "Agreement") is made on this 27th day of November, 2011 (hereinafter referred to as the "Effective Date") at California, United States of America.

**BY AND BETWEEN**

I. **Econergy Inc.**, a company incorporated and existing under the laws of United States of America (hereinafter referred to as "Borrower" which expression shall, unless it be repugnant to the context or meaning thereof, be deemed to mean and include its executors, administrators and permitted assigns) represented through Mr. Jaspal Singh Deol, resident of 2712 Hinton Cir. Elk Grove, CA 95758, USA having Passport No. 056969372 being a United States of America citizen, of the **FIRST PART**.

**AND**

II. **Mr. Jaspal Singh Deol**, S/o Jasmer Singh Deol, (hereinafter referred to as the "Guarantor" which expression shall unless contrary or repugnant to the context or meaning hereof shall mean and include his heirs, successors, executors, administrators and permitted assigns) resident of 2712 Hinton Cir. Elk Grove, CA 95758, USA having Passport No. ___056969372___ being a United States of America citizen, having 51% (fifty one percent) shareholding in the Borrower company, of the **SECOND PART**.

**AND**

III. **Dr. Prabhakar Goel**, S/o Prem Prakash Goel resident of 98 Ridgeview Drive, Atherton, CA 94027, USA having Passport No. 432604427 being a United States of America citizen, (hereinafter referred to as the "Lender" which expression shall unless contrary or repugnant to the context or meaning hereof shall mean and include his heirs, successors, executors, administrators and permitted assigns), of the **THIRD PART**. For purposes of full disclosure it is acknowledged that Prabhakar Goel is a Managing Partner of Goel Family Ventures I LP which is having 49% (forty nine percent) equity shareholding in the Borrower company.

Borrower, Guarantor and Lender are hereinafter referred collectively as the "Parties" and individually as the "Party" as the context may require.

**PREAMBLE**

**WHEREAS** the Borrower is engaged in the business of power generation based on renewable energy.

**AND WHEREAS** Borrower had applied for appropriate approval from state competent authority,

which is Punjab Energy Development Agency (hereinafter referred to as PEDA) for setting up of 1 Mega Watt Solar Power Project (hereinafter referred to as "Project") under Rooftop PV and Small Solar Power Generation Programme (hereinafter referred to as "RPSSGP) under Jawaharlal Nehru National Solar Mission of Ministry of New and Renewable Energy, Government of India (hereinafter referred to as GOI);

i) Borrower received pre-registration certificate for the Project from PEDA dated July 08, 2010.

ii) Borrower entered into the Power Purchase Agreement (hereinafter referred to as "PPA") with Distribution Licensee i.e. Punjab State Power Corporation Limited (hereinafter referred to as "PSPCL") on August 18, 2010 wherein Borrower is entitled to receive a feed-in tariff of Rs.17.91 per KwH of power delivered to the grid for a period of 25 years from the date of commissioning of the Project provided the Project is commissioned by March 15, 2012.

iii) Borrower received the Registration Certificate from Indian Renewable Energy Development Agency (hereinafter referred to as "IREDA") confirming its eligibility for the Project to avail the Generation Based Incentive (hereinafter referred to as "GBI") under RPSSGP on September 17, 2010.

iv) Borrower is in material compliance with all laws in USA and in India and has timely filed all necessary taxes and met all of its reporting obligations in all applicable jurisdictions.

v) Borrower has no pending or threatened litigation, either directly or indirectly that carries any liability to Borrower or in any way interferes with the Project.

vi) Lender and Guarantor are also on the Board of Directors of Borrower and both Borrower and Guarantor acknowledge that they are executing this Agreement and waive any conflict of interest claims on the Lender related to this Agreement. Further, both Borrower and Guarantor agree that Lender has abstained from both (a) voting on any Board resolution to approve the terms of this Agreement and (b) voting to authorize Borrower to execute this Agreement.

vii) All above referenced agreements and/or grants are presently valid and enforceable. Further, the execution of this Agreement will not violate any other agreements or understandings to which Borrower or Lender are a party

**AND WHEREAS** Guarantor owns the entire land (hereinafter referred to as "Land") where the Project shall be set up, and more clearly identified as Agricultural land measuring 10 acres 1 Kanal 9 Marla according to Jamabandi for period of 2004-2005, bearing Khata No. 1306/1433 Rect. No. 67 Killa No. 20/2(1-11), 21(8-0) Rect. No 68 Killa No. 23(8-0), 24(8-0), 25(8-0) Rect. No. 74 Killa No. 3(8-0), 4(8-0), 7(8-0), 8(8-0), 13(8-0), 14(8-0) situated at Village Boparai Kalan, Tehsil Jagraon, Distt. Ludhiana (Copy of details of Khasra Numbers and latest Jamabandi)

**AND WHEREAS** Guarantor shall apply best efforts to obtain the approval from the Government of Punjab, India for change of land use with respect to the Land from agricultural to industrial or to non-agricultural within 60 days from the Effective Date.

**AND WHEREAS** Guarantor has agreed to promptly provide an irrevocable Power of Attorney to Lender or Lender's nominee (Lender or nominee referred to as "Attorney") wherein the said Attorney will have absolute and sole rights and authority to execute any and all documents solely for the purpose of securing change of land use with respect to the Land from agricultural to industrial or from agricultural to non-agricultural.

**AND WHEREAS** Guarantor shall co-operate, provide, sign, execute documents, deeds, papers as and when required and appear in person and do all such other acts which are required for or towards obtaining of said change of land use approvals and do so promptly, if so requested by the Attorney.

**AND WHEREAS** said Power of Attorney will be promptly provided by Guarantor either as (a) duly notarized in California and also apostilled by the Secretary of State of California, USA or (b) duly notarized in India. Said Power of Attorney will be promptly recorded with the appropriate governmental agencies in India, and that any and all costs incurred for said change of land use shall be solely to the account of Borrower. For purposes of clarification, the said amount of the charges and costs incurred shall be shared proportionately by Econergy, Inc shareholders in the respective shareholder holdings ratio and said Power of Attorney will expire upon securing change of land use.

**AND WHEREAS** Guarantor has represented to the Lender that the Land is free from any and all encumbrances whatsoever and he holds a clean and marketable title.

**AND WHEREAS** the Borrower intends to set up, establish the Project, erect necessary plant and machinery required for the Project, and commission the Project for which Borrower requires funding.

PAGE 3 of 12

AND WHEREAS the Borrower has approached the Lender for funding for the Project in form of a loan in an amount not to exceed USD 1,600,000 (USD One Million Six Hundred Thousand) for the purposes mentioned below and Lender has agreed to provide loan to Borrower on the terms and conditions mentioned herein below.

NOW THEREFORE, IN CONSIDERATION OF MUTUAL COVENANTS SET FORTH HEREIN, THE PARTIES HERETO AGREE AS FOLLOWS:

### ARTICLE 1
### PURPOSE OF THE LOAN

**1.1    Purposes of Loan**

The Loan under this Agreement shall be used solely for the following purpose, namely:-

1.1.1  Establishment, erection and installation of plant and machinery, and commissioning, required for the Project;

### ARTICLE 2
### AGREEMENT AND TERMS OF THE LOAN

**2.1    Amount of Loan**

The Lender agrees to lend to the Borrower and the Borrower agrees to borrow from the Lender for the purposes specified in Article 1 hereof and on the terms and conditions contained herein, a sum up to and not exceeding USD 1,600,000 (USD One Million Six Hundred Thousand only). The said sum is hereinafter referred to as **"the Loan"**. The Loan will be made incrementally to service cash needs as they arise. Should there be any material adverse changes with Borrower or its solar power Project and the full Loan has not been advanced to Borrower, the Lender is not obligated to make any further incremental Loan advances to Borrower. Borrower and its Directors are obligated to promptly disclose any material adverse changes in conditions of the Borrower.

**2.2    Mode of Disbursement**

All disbursements to be made by the Lender to the Borrower under or in terms of this Agreement shall be made as requested by Borrower and charges, if any, in respect of all

PAGE 4 OF 12

such disbursements shall be borne by the Borrower and the interest on Loan will begin to accrue daily in favor of the Lender as and from the dates of disbursement. The disbursements shall be duly accounted.

## 2.3    Interest

2.3.1    The unpaid interest on the Loan and the principal amount of the Loan outstanding from time to time shall carry an interest at the rate of 15% per annum (annual percentage rate). Interest will accrue daily from the date the Loan is advanced but all interest and/or principal repayments will commence on July 1, 2012. The entire cash flow of Borrower will be used to service first the interest owed to Lender and next any amount of Loan principal that can be paid down each month. Guarantor and Borrower agree that Borrower is obligated to defer payments of any amounts owed by Borrower to Guarantor under any prior agreements and with no penalty or charges for delayed payment.

2.3.2    The interest and Loan principal repayments shall be credited to the account of the Lender on or before the 1st day of each month starting with the month of July, 2012. The details of the said account are to be provided by Lender.

## 2.4    Prepayment of the Loan

The Borrower may prepay the Loan together with the interest and other charges due thereon at any time.

## 2.5    Loan Repayment

2.5.1    The Borrower and the Guarantor hereby agree and undertake that the repayment of Loan along with interest and other receivables under this Agreement by the Lender shall be given priority over other dues of the Borrower with an exception of statutory dues and operating costs, with operating costs capped at Indian Rupees 1 Million each year. Any extraordinary operating costs over and above the aforesaid cap will require prior written approval from Lender. The Loan will be provided in US Dollars ("USD") and all repayments of interest and Loan will be in US Dollars.

2.5.2    The Borrower hereby agrees to repay the Loan on or before the expiry of the 48 months from July 1, 2012 to Lender in terms of this Agreement or instruction

PAGE 5 OF 12

provided by the Lender in writing. The unpaid portion of the principal amount of the Loan will be paid as a balloon payment after 48 months from July 1, 2012.

2.5.3  In case of any delays in payments from Borrower to the Lender, in making interest plus Loan principal payments as described herein, should the delay extend beyond 90 days, the Lender can at its option foreclose the Loan and the Borrower and Guarantor will be respectively liable for prompt payment and Lender will be entitled to invoke any and all guarantees and possess any and all collateral provided as Security as described in more detail in Article 4 of this Agreement. The Guarantor's liability for any and all payments owed by Borrower to the Lender will be limited to 51% of the said payments.

2.5.4  Without prejudice to the foregoing, the Lender may initiate appropriate legal actions available to him to ensure the repayment of the Loan along with unpaid interest per terms set forth in this agreement.

## ARTICLE 3

## EVENT OF DEFAULT

3.1  For the purpose of this Agreement, each of the following shall constitute an Event of Default:

3.1.1  Failure by the Borrower in the payments when due, of the Loan or interest on the Loan or other monies receivable by the Lender under this Agreement; or

3.1.2  Failure to make any payment in a manner as stipulated by the Lender.

## ARTICLE 4
## SECURITY

4.1  The Parties agree that the Loan, together with interest, costs, charges and monies whatsoever stipulated in this Agreement shall be secured by the following:

4.1.1  The Personal Guarantee issued by Guarantor in favor of the Lender for 51 % (fifty one percent) of the Loan amount and of 51% of any remaining unpaid interest. In

PAGE 6 OF 12

case of Event of Default by the Borrower, the Lender shall have the right to invoke the Personal Guarantee given by Guarantor.

The Guarantor shall pledge all his shares in the Borrower Company in favor of the Lender and the Lender shall have the right to forfeit the shares of Guarantor in case of Event of Default in payment of loan amount, interest or any other money due under this Agreement. Guarantor will ensure that at least $275,000 of his equity contribution of $306,000 (USD Three Hundred and Six Thousand) called for in the Project Development and Co-investment Agreement dated 6-7-11 will be deposited in the Borrower Bank account at Morgan Stanley prior to November 22, 2011. Balance equity from Guarantor will be provided subsequent to accounting of certain Guarantor expenses to be accounted for by Dec 31, 2011. Lender shall arrange for Goel Family Ventures I LP (an investor in Borrower) to contribute its full equity contribution of $506,794 to be deposited in the Borrower's bank account at Morgan Stanley no later than 3 working days after the Effective Date of this Agreement. Lender has already provided advances, directly or indirectly, to the IDBI Bank account of Econergy in India the sums of Rs 20 lakhs from Carlill Energy Pvt Ltd. and Rs 21 lakhs from Lender's account in India. Said advances will be paid back within 3 business days of the execution of this Agreement. No later than Dec 31, 2011 Guarantor will account for expenses incurred by Guarantor from his personal funds on behalf of Borrower since June 7, 2011 for liabilities that both existed only after June 7, 2011 and were not known of as liabilities prior to June 7, 2011. Said expenses when agreed to by all parties concerned will be accounted as equity of Guarantor or handled as permitted by accounting rules of the appropriate jurisdictions. The Guarantor hereby agrees to mortgage the Land in favor of the Lender or to Lender's nominee against the Loan. Appropriate recording of the said mortgage will be carried out promptly with best efforts support from the Guarantor, including obtaining approvals if any, required in this regard from any agency in India. In the Event of Default, the Guarantor shall transfer the Land to the Lender or Lender's nominee as the case may be without any consideration whatsoever. The necessary approvals from Reserve Bank of India and/or other relevant authorities, if required shall be duly obtained by the Lender and the Guarantor shall co-operate, provide, sign, execute documents, deeds, papers as required and appear in person and do all such other acts which are required for or towards obtaining of such approvals.

**4.1.2**   Goel Family Ventures I LP ("Goel Ventures") has been provided an Option to purchase exactly 50% of the Project Land (approximately 5.2 acres of the Land)

as provided in the Project Co-development and Investment Agreement between Econergy Inc, Goel Ventures, Jaspal Deol, and Prabhakar Goel – dated June 7, 2011. Should Goel Ventures exercise its Option, the proceeds of $300,000 from said Option exercise will be handed over directly to the Borrower and be treated as an additional equity contribution from Guarantor to Econergy Inc.. At the same time, Goel Ventures will also pay $288,235 to Econergy Inc. as Goel Ventures. additional equity contribution to Econergy Inc.. In this manner, the additional equity contribution of Guarantor and Goel Ventures will be in the ratio of 51% to 49% so that the equity ownership percentages of Guarantor and Goel Ventures stay unchanged. Lender will be responsible to ensure that Goel Ventures will make its said required contribution. All equity proceeds received by Borrower as above will be used to promptly pay down (a) first the Borrower's outstanding interest owed to Lender and then (b) Borrower's outstanding Loan owed to Lender. Guarantor agrees that in the event of the above Option being exercised, the present Land Lease Agreement between Guarantor and Econergy Inc. will be promptly amended to provide for (a) equal sharing of the lease rents between Guarantor and Goel Ventures effective the day of the said Option exercise and (b) equal amounts of the Land being owned by Guarantor and Goel Ventures.

4.13    Borrower agrees that Lender or Lender's nominee will be provided exclusive and complete control over the Borrower's bank account in which all revenues derived by Borrower's Project will be subject to direct deposit from PSPCL and said control will remain until such time as the Loan is completely repaid along with any interest obligations. Lender will be required to pay all statutory dues and operating costs, subject to limits specified earlier, that are obligations of the Borrower from funds in said bank account if and when such funds are available and when requested by Borrower. Borrower will promptly direct PSPCL to make all revenue payments to aforesaid Borrower's bank account

## ARTICLE 5
## TERM

This Agreement shall be valid from the Effective Date and shall expire simultaneously with the repayment of the Loan along with all unpaid interest by Borrower to Lender as per Article 2.5. Upon expiration of this Agreement as described in this Article 5, the Lender will release the Borrower and the Guarantor from any and all obligations related to said Loan and will relinquish the Power of Attorney provided in this Agreement as well as release the Security,

PAGE 8 of 12

control of exclusive account, described in Article 4 above within 15 days of the repayment of the Loan along with all unpaid interest.

## ARTICLE 6
## INDEMNITY

Borrower and Guarantor shall jointly and severally indemnify and keep indemnified the Lender and its representative, officers, employees and agents from and against any and all claims, liabilities, damages, demands, losses including but not limited to any legal or other expenses incurred or suffered by the Lender due to delay in the repayment of the Loan or anything contrary to this Agreement.

## ARTICLE 7
## DISPUTE RESOLUTION

7.1    Disputes arising between the Parties out of or in connection with this Agreement shall as far as possible be settled amicably by mutual discussions. If amicable settlement by mutual discussions cannot be reached within 30 days from the date of the occurrence of the dispute, the matter under dispute shall be finally settled by binding arbitration and without recourse to the Courts and in a manner laid down under applicable Dispute Resolution laws of the State of California, U.S.A.

7.2    The applicable law shall be the laws of State of California U.S.A and the language of proceeding shall be English.

7.3    The venue for the proceedings will be Santa Clara, California, U.S.A.

## ARTICLE 8
## MISCELLANEOUS

8.1    Notices

Any notice under this Agreement shall be given in writing either through facsimile or by mail. The notice shall be deemed to be served on the other Party on the date of receipt of the notice by the other Party. The notice shall be deemed to be received on the next day of transmission if sent through facsimile and after ten days of date of dispatch if sent through mail.

Page 9 of 12

The notices aforementioned shall be given at the following addresses to the attention of following persons:

In case of Borrower

Mr. Jaspal Singh Deol

Address: 2712 Hinton Cir, Elk Grove, CA 95758, USA

Facsimile: _____

In case of Guarantor

Mr. Jaspal Singh Deol

Address: 2712 Hinton Cir, Elk Grove, CA 95758, USA

Facsimile: _____

In case of Lender :

Mr. Prabhakar Goel
Address: 98 Ridgeview Drive, Atherton,
         California 94027, U.S.A.
Facsimile: 650-854-0593

**8.2    Entire Agreement**

The terms of this Agreement are the final expression of the Parties' to the Agreement with respect to the subject matter hereof and may not be contradicted by evidence of any prior or contemporaneous agreement. This Agreement shall constitute the complete and exclusive statement of its terms and any changes or modifications will be subject to being in writing and signed by all parties involved.

**8.3    Waiver of Covenants, Conditions or Remedies**

Waiver by one Party of performance of any covenant or condition under the Agreement shall not invalidate the Agreement nor shall be considered a waiver of any other covenant or condition under the Agreement.

PAGE 10 of 12

## 8.4 Severability

If any provision of this Agreement or application thereof to any person, place or circumstances, shall be unenforceable, void or invalid under any applicable law or be so held by a court of competent jurisdiction, the same shall not render this Agreement unenforceable or invalid as a whole and remainder of this Agreement and such provisions applied to other persons, places, and circumstances shall remain in full force and effect.

## 8.5 Amendment

No change, modification or amendment of this Agreement shall be valid or binding on the Parties unless such change or modification shall be in writing and signed by the other Party against whom the same is sought to be enforced.

## 8.6 Headings

Paragraphs Heading contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement or the intent of any provision hereof.

## 8.7 Governing Law

This Agreement shall be governed and construed in accordance with the laws of the State of California.

IN WITNESS WHEREOF the parties hereto have signed this Agreement on the date mentioned above.

Borrower

*(signature)*

(Mr. Jaspal Singh Deol)   11/27/11

November 27, 2011
Director
Authorized Signatory
Authorized pursuant to the Board Resolution dated _____

Guarantor

*(signature)*

Page 11 of 12

_(Jaspal Singh Deol)_
NOVEMBER 27, 2011

Lender

_(Dr. Prabhakar Goel)_

**WITNESSES:**

1.

2.

**BORROWER AND GUARANTOR SIGNATURES TO BE NOTARIZED & AGREEMENT TO BE APOSTILLED**

PAGE 12 OF 12

# EXHIBIT B

# JAMS ARBITRATION
## Case No. 1110016365

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

<div style="text-align:center">Claimants,</div>

vs.

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

<div style="text-align:center">Respondents.</div>

_____/

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

<div style="text-align:center">Counter-Claimants,</div>

vs.

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

<div style="text-align:center">Counter-Respondents.</div>

_____/

**FURTHER PARTIAL FINAL AWARD DETERMINING VALUE OF
JASPAL DEOL'S INTEREST IN ECONERGY, INC., AND VALUE OF
LUDHIANA LAND**

<div style="text-align:center">1</div>

**FURTHER PARTIAL FINAL AWARD DETERMINING VALUE OF JASPAL DEOL'S
INTEREST IN ECONERGY, INC., AND VALUE OF LUDHIANA LAND**

## ATTACHMENT D

## PROCEDURAL BACKGROUND

The (Corrected) Partial Final Award[1] and subsequent orders in this matter required Respondent Jaspal Singh Deol ("Deol") to make good on the personal guarantee he had given to Claimant Prabhakar Goel ("Goel") as part of the 2011 Loan Agreement. Deol was given the option of satisfying his guarantee by either paying $352,308.59 or by turning over to Goel the two items Deol had pledged in lieu of a cash payment under that personal guarantee, i.e., Deol's land underlying Econergy's solar farm in the Ludhiana District of the State of Punjab, India, ("the Ludhiana land"[2]) and Deol's fifty-one percent (51%) shareholder interest in Econergy, Inc.

Deol elected not to make the cash payment to satisfy his guarantee, and thus was ordered to transfer the two items in question.[3]

Hearings to determine the value of each item took place on December 18, 2017, and January 12, 2018, at the JAMS Silicon Valley Resolution Center, 160 W. Santa Clara Street, Sixteenth Floor, San Jose, California.    Robert J. Yorio, Esq., of Carr & Ferrell LLP, appeared on behalf of Claimants/Counter-Respondents Prabhakar Goel and Goel Family Ventures I LP ("GFV I LP").    Prabhakar "Prabhu" Goel also personally appeared at both hearing.    Ognian Gavrilov, Esq., of Gavrilov & Brooks, appeared on behalf of Respondents/Counter-Claimants Econergy, Inc. and Jaspal Singh Deol at the December 18, 2017, hearing.    Eliezer Cohen, Esq., of Gavrilov & Brooks, appeared on behalf of Respondents/Counter-Claimants at the January 12, 2018, hearing.    No party requested that the proceedings be reported.    The parties agreed that the two items were to be valued as of October 2017.

The following reports, documents, and briefs were submitted on the valuation issues:

1.  Anand & Associates Valuation (land value), dated September 5, 2017;
2.  Anand & Associates Supplemental Report (land value), dated December 12, 2017, and Claimant's objection thereto, dated December 15, 2017;
3.  Colliers International Valuation Report (land value), dated October 31, 2017;
4.  Expert Report of Eric Sundheim (share value), dated November 10, 2017;

---

[1] Issued June 21, 2017.

[2] Eleven parcels totaling approximately 10.2 acres, described as Khasra No. 67/20/2, 21, 68/23, 24, 25, 74/3, 4, 7, 8, 13, and 14,Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

[3] See Orders Following August 4, 2017, Hearing.

2

**FURTHER PARTIAL FINAL AWARD DETERMINING VALUE OF JASPAL DEOL'S INTEREST IN ECONERGY, INC., AND VALUE OF LUDHIANA LAND**

# ATTACHMENT D

5.      Valuation Report of Sergey Mysin, CPA (share value), dated November 13, 2017;

6.      Jaspal Deol's Letter Brief Re: Valuation of Land, dated November 20, 2017;

7.      Claimant's Letter Brief re Valuations (land and share value), dated November 20, 2017;

8.      Respondent's Letter Brief in Opposition to Claimants' Letter Brief (land and share value), dated November 30, 2017;

9.      Robert J. Yorio Letter to Judge Baines Re: Valuation of the Transferred Land, dated January 8, 2018; and

10.     Robert J. Yorio Letter to Judge Baines, Re Offers to Sell Two Projects (1 MW) (land value) dated January 10, 2018.

11.     The letter brief of Eliezer Cohen, Esq., dated February 9, 2018, submitted on behalf of Respondent/Counter-Claimant Deol.

12.     The letter brief of Robert J. Yorio, Esq., dated February 15, 2018, submitted on behalf of Claimants/Counter-Respondents.

The undersigned, having read and considered the above documents and reports, and considered the written and oral arguments of counsel, and good cause appearing, hereby makes the following findings, and issues the following Further Partial Final Award:

## FINDINGS

1.      The undersigned finds that the value of the Ludhiana land, as of October 2017, was $342,000.00.

2.      The undersigned finds that the value of Jaspal Singh Deol's fifty-one percent (51%) shareholder interest in Econergy, Inc., as of October 2017, was $634,600.00.

3.      Once the transfer of these two items is completed, Deol will be deemed to have satisfied his personal guarantee under the Loan Agreement. Additionally, Deol will be entitled to a credit of $624,291.41, the amount by which the combined value of the two transferred items exceeds the amount of his personal guarantee. That credit will be applied toward any financial obligations that may be imposed on Deol, individually, in this matter. Ultimately, any excess credit (after application to obligations determined herein) will be ordered paid to Deol, individually, by Goel, individually.

**FURTHER PARTIAL FINAL AWARD DETERMINING VALUE OF JASPAL DEOL'S INTEREST IN ECONERGY, INC., AND VALUE OF LUDHIANA LAND**

# ATTACHMENT D

4.      Once the transfer of these two items is completed, $352,308.59 will be deducted from the balance due to Goel, from Econergy, Inc., under the Loan Agreement.

5.      Given the value of the Ludhiana land, as determined above, it does not appear that GFV I LP was damaged by Deol's failure to honor the option he had given to GFV I LP to purchase one half of the Ludhiana land in 2012 for $300,000. However, if GFV I LP contends that it was damaged by that failure to honor the option agreement, it may present argument on, and evidence of, its claimed damages in the later proceedings herein.

## FURTHER PARTIAL FINAL AWARD

The above valuations are hereby entered in this matter as a Further Partial Final Award, as follows:

1.      The value of the Ludhiana land, as of October 2017, was $342,000.00;

2.      The value of Jaspal Singh Deol's fifty-one percent (51%) interest in Econergy, Inc., as of October 2017, was $634,600.00.

3.      Once the transfer of these two items is completed, Deol will be deemed to have satisfied his personal guarantee under the Loan Agreement. Additionally, Deol will be entitled to a credit of $624,291.41, the amount by which the combined value of the two transferred items exceeds the amount of his personal guarantee. That credit will be applied toward any financial obligations that may be imposed on Deol, individually, in this matter. Ultimately, any excess credit (after application to obligations determined herein) will be ordered paid to Deol, individually, by Goel, individually.

4.      Once the transfer of these two items is completed, $352,308.59 will be deducted from the balance due to Goel, from Econergy, Inc., under the Loan Agreement.

Dated: February 20, 2018.

_____
Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator

4

**FURTHER PARTIAL FINAL AWARD DETERMINING VALUE OF JASPAL DEOL'S
INTEREST IN ECONERGY, INC., AND VALUE OF LUDHIANA LAND**

# ATTACHMENT D

# EXHIBIT C

1 | ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
2 | ILENE H. GOLDBERG (SBN 168051)
igoldberg@carrferrell.com
3 | CARR & FERRELL LLP
120 Constitution Drive
4 | Menlo Park, California 94070
Telephone No.: (650) 812-3400
5 | Facsimile No.: (650) 812-3444

6 | Attorneys for Plaintiffs
ECONERGY, INC., PRABHAKAR GOEL and
7 | GOEL FAMILY VENTURES I LP

**(ENDORSED)**
**FILED**
AUG 2 2 2017

**Clerk of the Court**
Superior Court of CA County of Santa Clara
BY_____A. Hwang_____DEPUTY

8

9

10 | IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | IN AND FOR THE COUNTY OF SANTA CLARA

12 | UNLIMITED JURISDICTION

13

14 | ECONERGY, INC., a California
corporation; GOEL FAMILY VENTURES
15 | I LP, a partnership, and PRABHAKAR
GOEL, an individual,
16 |
17 |       Plaintiffs,
18 |
    v.
19 |
JASPAL SINGH DEOL, an individual;
20 | and DOES I through XX, inclusive,
21 |
      Defendants.
22 |

CASE NO. 17 CV314877

**PLAINTIFFS' COMPLAINT FOR
INJUNCTIVE RELIEF**

23 |     Plaintiffs Econergy, Inc., Goel Family Ventures I LP, and Prabhakar Goel, by their attorneys,

24 | bring this Complaint against Defendants, and each of them, and allege:

25 | **GENERAL ALLEGATIONS**

26 |     1.    Plaintiff Econergy, Inc. (hereinafter "Econergy") is, and at all times relevant hereto

27 | was, a California corporation, with its principal place of business in the County of Sacramento, State

28 | of California.

2.    Plaintiff Goel Family Ventures I LP, (hereinafter "Goel Ventures") is a partnership incorporated under the laws of the California and has its principal place of business in the County of San Mateo, State of California.

3.    Plaintiff Prabhakar Goel (hereinafter "Dr. Goel") is, and at all times relevant hereto was, a resident of the County of San Mateo, State of California.

4.    Plaintiffs are informed and believe, and thereon allege, that Defendant Jaspal Singh Deol (hereinafter "Mr. Deol") is, and at all times relevant hereto was, an individual residing in the County of Sacramento, State of California.

5.    At all times mentioned herein, the wrongful acts alleged were committed by the Defendants and their agents, and each of them.

6.    Plaintiffs are informed and believe, and thereon allege, that at all times relevant hereto, each of the Defendants was the agent, affiliate or co-conspirator of the other Defendants, and in committing the acts hereinafter set forth, acted within the scope of such agency, affiliation or conspiracy and/or ratified or acquiesced in the acts of the other Defendants.

7.    The true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through XX, inclusive, are unknown to Plaintiffs who therefore sue said Defendants by fictitious names.  Plaintiffs will seek leave to amend this Complaint to show the true names and capacities of DOES 1 through XX when the same have been ascertained.

## JURISDICTION AND VENUE

8.    This is an action brought to enjoin Defendants from continuing with collateral attacks and actions aimed at circumventing a Partial Final Arbitration Award and Interim Orders issued by Honorable Robert A. Baines at JAMS in a pending arbitration proceeding between the parties.

9.    The contracts between the parties in this action are governed by the laws of the State of California pursuant to, *inter alia*, Article 7.2 of the Loan Agreement and Paragraph 14 of the Project Co-Development and Investment Agreement.

10.    Venue is proper in Santa Clara County. Article 7.3 of the Loan Agreement at issue provides for binding arbitration of disputes arising thereunder to take place in Santa Clara, California. Paragraph 14 of the written Project Co-Development and Investment Agreement at issue provides for

PLAINTIFFS' COMPLAINT FOR INJUNCTIVE RELIEF

1 | binding arbitration facilitated by JAMS in either Santa Clara or Sacramento, California. The amount

2 | in controversy exceeds $1,000,000.00.

**FIRST CAUSE OF ACTION**
**(Injunctive Relief)**

3

4

5 | 11.    Plaintiffs repeat and reallege each of the allegations set forth in Paragraphs 1 through

6 | 10 as though fully set forth herein.

7 | 12.    Plaintiff Econergy is in the business of power generation based on renewable energy.

8 | 13.    Econergy applied for approval from Punjab Energy Development Agency ("PEDA")

9 | for setting up a 1 Mega Watt Solar Power Project ("Project") under the Rooftop PV and Small Solar

10 | Power Generation Programme ("RPSSGP") under the Jawaharlal Nehru National Solar Mission of

11 | Ministry of New and Renewable Energy, Government of India.

12 | 14.    Econergy entered into a Power Purchase Agreement ("PPA") with Punjab State Power

13 | Corporation Limited ("PSPCL") on or about August 18, 2010. Plaintiffs are further informed and

14 | believe, and thereon allege, that Defendant Deol owns the entire land where the Project was

15 | constructed ("Project Land").

16 | 15.    On or about June 7, 2011, Goel Ventures entered into a Project Co-Development and

17 | Investment Agreement (hereinafter "Co-Development Agreement") with Econergy, Mr. Deol and

18 | Dr. Goel. Pursuant to the terms of the Co-Development Agreement, Defendant Deol made

19 | representations to Goel Ventures and Goel Ventures relied on those representations in becoming an

20 | investor in Econergy and co-developer of the Project. A true and correct copy of the Co-Development

21 | Agreement is attached hereto as Exhibit A.

22 | 16.    On or about November 27, 2011, Dr. Goel, Mr. Deol, and Econergy entered into a

23 | written agreement wherein Dr. Goel would lend, Econergy would borrow, and Mr. Deol would

24 | guarantee 51%, of a loan in the amount of up to one million six hundred thousand dollars (USD

25 | $1,600,000) ("Loan Agreement") for the purpose of the "[e]stablishment, erection and installation of

26 | plant and machinery, and commissioning, required for the Project." The amount of funds advanced

27 | and owed to Lender under the Loan Agreement was USD $997,716.00.  A true and correct copy of

28 | the Loan Agreement is attached hereto as Exhibit B.

17.    In December 2013, Plaintiffs Goel Family Ventures I LP and Goel filed their Demand for Arbitration with JAMS and the Honorable Robert A. Baines (Ret.) was appointed as the Arbitrator for that proceeding by JAMS.

18.    On January 7, 2015, Plaintiffs Goel Family Ventures I LP and Goel filed their First Amended Complaint in Arbitration including claims for Breach of the Co-Development Agreement, Breach of the Loan Agreement, and Breach of Fiduciary Duty.

19.    On December 9, 2014, Econergy and Deol filed Counterclaims in the JAMS Arbitration proceeding including claims for Breach of Fiduciary Duties, Breach of the Terms of Co-Development Agreement and the Loan Agreement and for Conversion.

20.    The Arbitration hearing took place over eleven (11) days at the JAMS Silicon Valley Resolution Center in San Jose between June and November 2016.

21.    Following post hearing briefing by the parties and oral argument, Judge Baines issued his Partial Final Award (Corrected) on June 21, 2017. A true and correct copy of that Partial Final Award (Corrected) is attached hereto as Exhibit C. The relief ordered in the Partial Final Award is located at pages 48-52 thereof.

22.    Among other things, Judge Baines determined that there was a default under the Loan Agreement. Partial Final Award, Section VI(1) at p. 48. After applying credits for amounts of money in Econergy bank accounts in India (Axis Bank) and in California (Morgan Stanley) against the loan balance; the unpaid loan principal was determined to be $690,801.16.

23.    Because Defendant Deol had provided a 51% guarantee to the Loan Agreement, he was responsible for payment of the sum of $352,308.59 if he wished to avoid a surrender of pledge security (Deol's shares in Econergy, Inc. and his land located where the Plant was situated). The Award further provided that the aforementioned sum was paid within thirty (30) days of the Partial Final Award (Corrected), Defendant Deol would be deemed to have satisfied his personal guarantee. The Award further provided that if the sum was not paid within that thirty (30) day period, Defendant Deol "is ordered to immediately transfer to Goel the pledged security, i.e., his shares in Econergy and the land on which the plant is located." Partial Final Award (Corrected), Section VI(1)(b) at pp. 48-49.

24.     Defendant Deol did not arrange for the payment of any part of the sum of $352,308.59 by July 21, 2017 and thereby forfeited his shares in Econergy and the land on which the plant was situated.

25.     Following that July 21, 2017 default by Defendant Deol, Judge Baines convened a telephonic hearing among the parties on August 4, 2017, and issued further Orders following that August 4, 2017 hearing later that day. A true and exact copy of Judge Baines August 4, 2017 Order is attached hereto as Exhibit D, and made a part hereof. Paragraph 1 of the August 4, 2017 Order provides, in pertinent part, that:

> "Accordingly, Deol is hereby ordered to transfer to Goel all his shares in Econergy, Inc., and his interest in the land under the Econergy, Inc. Ludhiana plant. Counsel are to promptly meet and confer regarding the mechanics of effecting these transfers, with Mr. Yorio initiating the process by proposing the steps that need to be taken.
>
> Deol is also hereby ordered to full preserve and protect the assets of Econergy, Inc., and make no expenditures from Econergy's funds other than those essential for the ordinary conduct of business by Econergy."

26.     As of the date of the filing of this Complaint, Defendant Deol has not transferred his shares in Econergy, Inc. or his interest in the land under the Econergy Ludhiana Plant to Dr. Goel or Goel Family Ventures I LP.

27.     Instead, Defendant Deol, on behalf of himself and Econergy, Inc. apparently filed a civil action in the commercial courts of Ludhiana, India against eleven (11) defendants, including Dr. Goel and Goel Family Ventures, the contractor who built the Ludhiana plant (TIF), three other solar power plants in India and three banks in which Econergy has accounts. It is not clear when this action for "rendition" of accounts between plaintiffs and the Goel Defendants and for the recovery of losses was actually filed by Defendant Deol, but Plaintiffs believe that it was filed in April or May of 2017. A true and correct copy of the filed action in India that Plaintiffs have been able to obtain is attached hereto as Exhibit E, and made a part hereof.

28.     Among other things, the action filed in India seeks a permanent injunction restraining Defendants from completing the Arbitration before Judge Baines and seeks other remedies directly

1   aimed at circumventing the rulings by Judge Baines in his Partial Final Award (Corrected) and in his

2   August 4, 2017 Order. See, Exhibit E at pages 3, 16, 17 and 19-21.

3        29.    These filings on behalf of Econergy and Deol in India were never authorized by

4   Econergy, never disclosed to Dr. Goel or Goel Family Ventures I LP and never disclosed to counsel

5   for the Goel Plaintiffs. These filings were also kept secret from Judge Baines.

6        30.    The Goel Plaintiffs only learned of these filings when Summons were issued in the

7   Indian courts for their appearance at a hearing on August 21, 2017. These Summons were first

8   forwarded to the Goel Plaintiffs on August 11, 2017.

9        31.    On August 14, 2017, Plaintiffs sent a letter to Judge Baines regarding Deol's actions

10  in violation of the Partial Final Award (Corrected) and the August 4, 2017 Order.

11       32.    Judge Baines convened a telephonic hearing with respect to the letter request for

12  injunctive relief on August 16, 2017. At that hearing, Kathleen Finnerty, counsel for Econergy and

13  Deol, participated in the call. Following that hearing, Judge Baines issued an Order enjoining actions

14  undertaken by Jaspal Singh Deol in violation of Orders issued in this [arbitration] proceeding on

15  August 16, 2017. A true and correct copy of Judge Baines' August 16, 2017 Order is attached hereto

16  as Exhibit F, and made a part hereof.

17       33.    As of the date of the filing of this Complaint, Defendant Deol has failed to transfer his

18  shares of Econergy to the Goel Plaintiffs, has not transferred his interest in the land on which the

19  Ludhiana Plant is situated, and has not withdrawn, dismissed or otherwise discontinued the civil

20  action filed in the Indian courts seeking a collateral attack on Judge Baines' Award and Orders.

21       34.    Unless Defendants are enjoined and restrained from undertaking further actions in

22  contravention of the Partial Final Award and other Orders from Judge Baines, Plaintiffs will suffer

23  great hardship and irreparable injury in terms of their ability to adequately preserve Econergy assets

24  including company bank accounts and contracts and the solar power plant itself.

25       35.    Preliminary injunctive relief is also necessary to prevent a multiplicity of judicial

26  proceedings (especially the Indian action filed by Deol) and because Defendants Deol's unauthorized

27  and illegal actions in India are in direct violation of Plaintiffs' rights specified in the Partial Final

28  Award and August 16, 2017 Order and said actions may adversely affect the upcoming Final Award

to be issued by Judge Baines and the subsequent Judgment by this Court confirming said Award. In these respects, Plaintiffs lack an adequate remedy at law and are entitled to a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction enjoining Defendants from committing further actions in derogation of Judge Baines' Orders and the Partial Final Award.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    An Order to Defendant Jaspal Singh Deol and all other Defendants to immediately cease and desist from pursuing any legal action(s) in India or in any other jurisdiction purportedly on behalf of Econergy, Inc.

2.    An Order to Defendant Jaspal Singh Deol and all other Defendants to immediately cease and desist from acting, or purporting to act, as authorized representatives of Econergy in India, the United States or any other country.

3.    An Order requiring Defendant Jaspal Singh Deol to advise any court(s) in which he has filed actions on behalf of Econergy, Inc. that he no longer holds any legal interest in Econergy, Inc., and that he has no legal capacity to pursue actions on behalf of Econergy , Inc.

4.    An Order requiring Defendant Jaspal Singh Deol immediately resign as a director of Econergy, Inc.

5.    An Order prohibiting Defendant Deol from disregarding or interfering with any action taken by Defendant Goel on behalf of Econergy, Inc.

6.    An Order prohibiting Defendant Deol from disregarding or failing to comply with any Orders or Awards issued by Judge Baines in the pending JAMS arbitration proceeding.

7.    An award of reasonable attorneys' fees and costs of suit.

8.    Such other, further and different relief as the Court deems appropriate.

1    Dated: August 21, 2017            CARR & FERRELL LLP

2

3                                  By _____

4                                     ROBERT J. YORIO

5                                 Attorneys for Plaintiffs

6                                 ECONERGY, INC., PRABHAKAR GOEL
                                    and GOEL FAMILY VENTURES I LP

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Page 8

# VERIFICATION

I, Prabhakar Goel, declare as follows:

1.  I am one of the plaintiffs in this action.

2.  I have read the foregoing **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF** and know its contents. I am informed and believe that the matters stated therein are true, and on that ground certify or declare under penalty of perjury under the laws of the State of California that the same are true and correct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at ___Atherton___, California, this 21st day of August 2017.

_____
PRABHAKAR GOEL

# EXHIBIT D

1  ROBERT J. YORIO (SBN 93178)
   yorio@carrferrell.com
2  ILENE H. GOLDBERG (SBN 168051)
   igoldberg@carrferrell.com
3  CARR & FERRELL LLP
   120 Constitution Drive
4  Menlo Park, California 94070
   Telephone No.:  (650) 812-3400
5  Facsimile No.:  (650) 812-3444

6  Attorneys for Plaintiffs
   ECONERGY, INC., PRABHAKAR GOEL and
7  GOEL FAMILY VENTURES I LP

8

9            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              IN AND FOR THE COUNTY OF SANTA CLARA

11                    UNLIMITED JURISDICTION

12

13 ECONERGY, INC., a California          )  CASE NO. 17 CV314877
   corporation; GOEL FAMILY VENTURES     )
14 I LP, a partnership, and PRABHAKAR    )  [PROPOSED] TEMPORARY
15 GOEL, an individual,                  )  RESTRAINING ORDER AND ORDER
                                         )  TO SHOW CAUSE RE PRELIMINARY
16           Plaintiffs,                  )  INJUNCTION
                                         )
17                                       )
   v.                                    )  Date: August 25, 2017
18                                       )  Time: 8:15 a.m.
19 JASPAL SINGH DEOL, an individual;     )  Location: Dept. 6
   and DOES I through XX, inclusive,     )
20                                       )  Date Action Filed: August 22, 2017
21           Defendants.                  )
                                         )  Trial Date: Not Yet Set
22

23

24        On reading the Verified Complaint of Plaintiffs on file in the above-entitled action and the

25 accompanying Declarations, it appears to the satisfaction of the Court that this is a proper case for

26 granting an Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order,

27 and that, unless the Temporary Restraining Order prayed for be granted, great or irreparable injury

28 will result to Plaintiffs before the matter can be heard on notice.

IT IS ORDERED that, pending the hearing and determination of the Order to Show Cause, the above-named defendants, and each of them, and their officers, agents, employees, representatives, and all persons acting in concert or participating with them, are restrained and enjoined from engaging in or performing, directly or indirectly, any and all of the following acts:

    (1) pursuing any legal action(s) in India or in any other jurisdiction purportedly on behalf of Econergy, Inc. ("Econergy");

    (2) acting, or purporting to act, as authorized representatives of Econergy in India, the United States or any other country;

    (3) interfering in any manner with Econergy's continued use of the land on which the Econergy solar power plant is located;

    (4) interfering in any manner with the operations of the power plant including trespassing on the aforesaid plant and land;

    (5) disregarding or interfering with any action taken by Plaintiff Goel on behalf of Econergy, Inc. in his capacity as the sole Director of Econergy; and

    (6) disregarding or failing to comply with any Orders or Awards already issued (or to be issued in the future) by Judge Baines in the pending JAMS arbitration proceeding.

Additionally, Defendant Jaspal Singh Deol ("defendant Deol") shall:

    (1) advise any court(s) in which defendant Deol has filed actions on behalf of Econergy that he no longer holds any legal interest in Econergy, and that he has no legal capacity to pursue actions on behalf of Econergy; and

    (2) immediately resign as a director of Econergy.

IT IS FURTHER ORDERED that the above-named defendants, and each of them, appear in Department ____13____ of this court, located at _____ on September 8, 2017 (date), at 8:30 am (time), or as soon thereafter as the matter may be heard, then and there to show cause, if any they have, why they and their agents, servants, employees, and representatives, and all persons acting in concert

or participating with them, should not be enjoined and restrained during the pendency of this action from engaging in, committing, or performing, directly or indirectly, any and all of the following acts:

IT IS FURTHER ORDERED that:

a. Plaintiffs shall serve this Order to Show Cause on defendants by August 25, 2017 by electronic delivery or hand delivery.

b. Proof of service of Plaintiff's moving papers shall be filed with the Court by ~~August~~ September 8, 2017.

c. Defendants' Opposition papers shall be filed and electronically served by September 1, 2017; at noon

d. Plaintiffs' Reply papers shall be filed and electronically served by September __, 2017.

IT IS FURTHER ORDERED that copies of the complaint, declaration(s), ex parte application and this order to show cause and temporary restraining order be served on counsel for Defendant Deol against whom this order is made not later than August 29, 2017 Courtesy copies to be delivered directly to D-13

DATED: August 25, 2017              **James L. Stoelker**
                                    _____
                                    Judge of the Superior Court

[PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION
(Case No. 17 CV314877)

# EXHIBIT E

F I L E D

SEP 11 2017

Clerk of the Court
Superior Court of CA County of Santa Clara
BY _____ DEPUTY

Robert Gutierrez

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

|  |  |
|---|---|
| Econergy, Inc., a California corporation; et al,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>Jaspal Singh Deol, an individual and Does I<br>through XX, inclusive,<br>                    Defendant | Case No.    17-CV-314877<br><br>ORDER |

On September 8, 2017 the above-entitled matter came on for hearing in Department 13 before the Honorable James L. Stoelker on plaintiffs Econergy, Inc.'s, Prabhakar Goel's and Goel Family Ventures I LP's Order to Show Cause re Preliminary Injunction. Attorney Robert J. Yorio appeared on behalf of plaintiffs. Attorney Eliezer M. Cohen appeared on behalf of defendant Jaspal Deol. The matter having been briefed argued and submitted for decision, the court rules as follows:

**71**

1    This court issued an Order to Show Cause and Temporary Restraining Order on August

2 25, 2017. The terms of the Order required that the Order to Show Cause be served on defendant

3 no later than August 28, 2017. Defendant contends that he was not served pursuant to Code.

4 However, the court finds that service to counsel was timely completed and even though service

5 was not completed as required by Code of Civil Procedure section 527(d)(2), Rule 3.1150(a), no

6 prejudice was suffered by defendant who responded on the merits and appeared in person at the

7 time of the hearing.

8    IT IS HEREBY ORDERED that during the pendency of this action defendant Jaspal

9 Deol and his agents, servants, employees, and representatives, and all persons acting in concert

10 or participating with them are enjoined and restrained from engaging in, committing, or

11 performing, directly or indirectly, and of the following acts:

12 (a) pursuing any legal action(s) in India or in any other jurisdiction purportedly on behalf of

13 Econergy, Inc.;

14 (b) acting or purporting to act as authorized representative of Econergy in India, or in any other

15 jurisdiction;

16 (c) violating or taking actions in opposition to, or hindering, interfering with or frustrating the

17 implementation of the interim orders pursuant to the terms of the arbitration award issued by

18 Judge Baines dated June 21, 2017 and/or August 4, 2017;

19 (d) interfering with or frustrating any actions taken or to be taken by plaintiff Goel on behalf of

20 Econergy, Inc. in his capacity as sole Director of Econergy;

21 (e) interfering with or frustrating the implementation of any and all orders arising out of the

22 arbitration proceedings.

23    The acts restrained in this order do not include legal proceedings for the purpose of

24 obtaining a reconsideration of the arbitration award, opposing the entry of judgment thereon or

25 appealing the judgment therefrom.

26    This order is compelled pursuant to Code of Civil Procedure section 529(a) to require

27 an undertaking as a condition for granting the injunction. The amount of the bond is intended to

28 cover all reasonably foreseeable damages that may be proximately caused by issuance of the

injunction. Here, the court fixes the amount of the bond at $50,000 as a reasonable estimate of

the defense costs incurred by defendant in opposing the complaint in this matter.

Dated: 9/11/17

Hon. James L. Stoelker
Superior Court Judge



# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
### DOWNTOWN COURTHOUSE
#### 191 NORTH FIRST STREET
#### SAN JOSÉ, CALIFORNIA 95113
### CIVIL DIVISION

**Robert J. Yorio**
**120 Constitution Drive**
**Menlo Park CA 94025**

RE:      **Econergy, Inc. vs Jaspal Singh Deol**
Case Number:  **17CV314877**

### PROOF OF SERVICE

**ORDER** was delivered to the parties listed below the above entitled case as set forth in the sworn declaration below.

---

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line (408) 882-2690 or the Voice/TDD California Relay Service (800) 735-2922.

**DECLARATION OF SERVICE BY MAIL:** I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each person whose name is shown below, and by depositing the envelope with postage fully prepaid, in the United States Mail at San Jose, CA on September 11, 2017. CLERK OF THE COURT, by Robert Gutierrez, Deputy.

cc:    Eliezer M. Cohen, 2315 Capitol Avenue, Sacramento, CA 95816

THE FOREGOING INSTRUMENT IS
A CORRECT COPY OF THE ORIGINAL
ON FILE IN THIS OFFICE

SEP 2 1 2017

Clerk of the Court
SUPERIOR COURT OF CA COUNTY OF SANTA CLARA
A. Hwang
BY_____ DEPUTY

CW-9027 REV 12/08/16                    **PROOF OF SERVICE**

# EXHIBIT F

# JAMS ARBITRATION
## Case No. 1110016365

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

<div align="center">Claimants,</div>

vs.

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

<div align="center">Respondents.</div>

_____/

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

<div align="center">Counter-Claimants,</div>

vs.

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

<div align="center">Counter-Respondents.</div>

_____/

## FURTHER PARTIAL FINAL AWARD

(Incorporating all Prior Awards and Orders, and Resolving all Remaining
Issues Other than the Amount of Claimants/Counter-Respondents'
Reasonable Attorneys' Fees, Costs and Interest)

# TABLE OF CONTENTS

|  | | Page |
|---|---|---|
| I. | PROCEDURAL BACKGROUND FROM FILING THROUGH ISSUANCE OF THE JUNE 21, 2017, PARTIAL FINAL AWARD | 5 |
| II. | INCORPORATION OF THE JUNE 21, 2017, PARTIAL FINAL AWARD: | 8 |
|  | A. Facts | 8 |
|  | B. Summary Of Claims | 25 |
|  | C. Relief Requested | 27 |
|  | D. Findings and Conclusions Made in the June 21, 2017, Partial Final Award: | 29 |
|  | 1. Did Goel commit any breaches of fiduciary duty *prior to* entering into the Co-Development Agreement? | 29 |
|  | 2. Is the Loan Agreement voidable by Econergy or Deol due to duress in the making? | 31 |
|  | 3. Even if the Loan Agreement is not voidable due to duress, are some or all of its terms unenforceable due to unconscionability? | 32 |
|  | 4. Was the interest rate in the Loan Agreement usurious? If so, what remedy should flow from that fact? | 35 |
|  | 5. Did Goel fail to complete the project in a timely manner? | 37 |
|  | 6. Did Goel fail to execute the project "per IREDA and PEDA requirements"? | 39 |
|  | 7. During construction, did Goel misappropriate Econergy's materials for use on his other projects? | 41 |
|  | 8. Was Goel deficient in his director duties by making the decision to abandon the custom-made riveted nuts at the German airport? | 41 |

9. Did Goel misallocate the work time of the shared
project personnel?                                                      41

10. During construction, did Goel fail to act in a
consensus manner with Deol?                                             41

11. Was Goel at fault if the plant produced below
the parties' expectations?                                             42

12. Did Goel properly perform his duties, as a
director, in response to the plant performance issues
that arose in 2012?                                                    43

13. Did either Goel or Deol fail to meet their
obligations regarding obtaining a CLU for Deol's
land?                                                                  44

14. Did either party breach its obligations under the
option to purchase after GFV exercised that option?                    45

15. Did Deol adequately account for the $31,000 of
claimed expenses for which he received a credit
against his equity requirement?                                         45

16. Is Deol liable to Econergy for the interest received
on the IREDA bank guarantees?                                          46

17. Did Goel fail to adequately account to Econergy
and Deol for construction costs and for the advances
Goel made to Econergy?                                                 46

18. Was Deol justified, because of any of Goel's
actions, in taking the actions he took beginning in
March of 2013, to take control over Econergy and
cause Econergy to default on its loan payments
to Goel?                                                               46

19. Following the events of early 2013, has Deol
engaged in actions that violated his fiduciary duties
to Goel and to Econergy?                                               48

E. Relief Ordered in the June 21, 2017, Partial
Final Award                                                            49

F. The Further Proceedings Ordered in June 21, 2017,
Partial Final Award                                                    53

3

FURTHER PARTIAL FINAL AWARD

III.   PROCEEDINGS HELD SUBSEQUENT TO ISSUANCE
       OF THE JUNE 21, 2017, PARTIAL FINAL AWARD
       AND PRIOR TO MARCH 16, 2018, FINAL HEARING                55

IV.    INCORPORATION OF ALL AWARDS AND ORDERS ENTERED
       SUBSEQUENT TO THE JUNE 21, 2017, PARTIAL FINAL AWARD
       AND PRIOR TO MARCH 16, 2018, FINAL HEARING                56

V.     THE MARCH 16, 2018, FINAL HEARING AND FURTHER
       PARTIAL FINAL AWARD                                       57

VI.    REMAINING PROCEEDINGS: ATTORNEYS' FEES, COSTS,
       AND INTEREST                                              65

## ATTACHMENTS
(Prior Orders Incorporated into this Further Partial Final Award)

ATTACHMENT A – Orders Following August 4, 2017, Hearing

ATTACHMENT B – Orders on Request for Modification

ATTACHMENT C – Orders Enjoining Actions Undertaken by Jaspal
                Singh Deol in Violation of Orders Issued in this Proceeding

ATTACHMENT D – Further Partial Final Award Determining Value of Jaspal
                Deol's Interest in Econergy, Inc., and Value of Ludhiana
                Land

ATTACHMENT E – Further Injunctive Orders Directed to Jaspal Singh Deol

THE UNDERSIGNED, having been duly appointed as the Arbitrator, and having examined the submissions, proofs and allegations of the parties, finds, concludes, and issues this Further Partial Final Award, incorporating all prior Awards and Orders, and resolving all remaining issues other than the amount of Claimants/Counter-Respondents' reasonable attorneys' fees, costs, and interest.

## I. PROCEDURAL BACKGROUND FROM FILING THROUGH ISSUANCE OF THE JUNE 21, 2017, PARTIAL FINAL AWARD

A.  <u>Parties and Counsel</u>. The parties to this arbitration are identified in the above caption and were represented as follows:

For Claimants/Counter-Respondents Prabhakar Goel and Goel Family Ventures I LP:

> Robert J. Yorio, Esq.,
> Christine S. Watson, Esq.
> Carr & Ferrell LLP
> 120 Constitution Drive
> Menlo Park, CA 94025
> (650) 812-3400          (650) 812-3444 (fax)
> yorio@carrferrell.com
> cwatson@carrferrell.com

For Respondents/Counter-Claimants Econergy, Inc., and Jaspal Singh Deol:

From commencement of arbitration through February 24, 2016:

> Sean Krogh, Esq.
> Krogh & Decker, LLP
> Sacramento, CA 95814

From February 24, 2016, through October 10, 2017:

> Kathleen E. Finnerty, Esq.
> Laurel Edgeworth, Esq.
> Finnerty Law Offices, Inc.
> Roseville, CA 95747

From October 10, 2017 to date:

> Ognian Gavrilov, Esq.
> Eliezer M. Cohen, Esq.
> Gavrilov & Brooks
> 2315 Capitol Ave.

Sacramento, CA 95816
(916) 504-0529
info@gavrilovlaw.com
ecohen@gavrilovlaw.com

B.    Arbitrator.  The parties selected, as sole arbitrator:

Hon. Robert A. Baines (Ret.)
JAMS
160 W. Santa Clara Street, Suite 1600
San Jose, CA 95113
(408) 288-2240         (408) 295-5267 (fax)
rbaines@jamsadr.net

C.    Arbitrator's Case Manager:

Cynthia Victory
JAMS
160 W. Santa Clara Street, Suite 1600
San Jose, CA 95113
(408) 346-0736         (408) 295-5267 (fax)
cvictory@jamsadr.com

D.    Agreement to Arbitrate:

The parties' agreement to arbitrate disputes is contained in two documents:
(1) a "Project Co-Development and Investment Agreement" dated on or about
June 7, 2011, at Paragraph 14, and (2) Article 7.1 of the "Loan Agreement" dated
on or about November 27, 2011 (collectively "the Agreements").

All parties agree that the disputes presented for resolution herein were subject to
the binding arbitration provisions of those Agreements.

E.    Commencement of Arbitration:

Claimant's Demand for Arbitration was received by JAMS on or about
December 3, 2013.

The arbitration was formally commenced by JAMS on January 15, 2014, with the
sending of the "Commencement of Arbitration" letter to all parties.  On January
31, 2014, the undersigned was appointed as the Arbitrator, and the JAMS
"Appointment of Arbitrator" letter was sent to all parties on that date.  The
Arbitrator's written disclosures were sent to all parties on that same date.

FURTHER PARTIAL FINAL AWARD

F.    Applicable Law and Rules:

Substantive Law:  Although both Agreements involve an enterprise undertaken in India, the Agreements were made in California.  Also, the Loan Agreement specifically provides: "This Agreement shall be governed and construed in accordance with the laws of the State of California."  California substantive law has been applied.

Rules:  The JAMS Comprehensive Arbitration Rules ("Rules") were applied to these proceedings.

G.    Claims of the Parties:

Claimant Goel initially filed only individual claims on or about December 2, 2013.  Subsequently, claims on behalf of Goel Family Ventures I LP were added. The currently operative claims (by both Goel and Goel Family Ventures I LP) are those described in their First Amended Complaint in Arbitration, dated on or about January 7, 2015. These amended claims essentially are for Breach of the Co-Development Agreement, Breach of the Loan Agreement, and Breach of Fiduciary Duty.  Respondents filed their Responses to these amended claims on or about February 2, 2015.

On December 9, 2014, Respondents filed Counter-Claims in this matter.  These Counter-Claims are for Breach of Fiduciary Duties, breach of the express terms of both the Co-Development Agreement and the Loan Agreement, and for Conversion.   Counter-Respondents filed their responses to these Counter-Claims on or about January 7, 2015.  The Counter-Claims were subsequently amended in April of 2016 to add claims of breach of the implied covenant of good faith and fair dealing, and for usury.  These amended Counter-Claims were deemed denied without the need for a written response. [Rule 9(e)]

H.    The Initial Arbitration Hearing:

The initial arbitration hearing occupied eleven days in 2016[1] at the JAMS Silicon Valley Resolution Center, 160 W. Santa Clara Street, Suite 1600, San Jose, California.

Seven witnesses testified in person;[2] four additional witnesses appeared by way of deposition testimony.[3]  The proceedings were reported and a transcript prepared.

---

[1] June 13, 14, 29, and 30; July 21 and 22; August 15 and 16; October 19 and 20; and November 7, 2016.

[2] Alphabetically: Surinder Bedi, Brittney Blackburn, Jaspal Singh Deol, Pooneet Goel, Prabhakar (Prabhu) Goel, Monica Ip, and Forest Vickery.

[3] Alphabetically: Neelkant Gargya, Vijay Goel, Anmol Jaggi, and Klaus Müller.

A number of exhibits were admitted either by stipulation of counsel or order of the undersigned.

Post-hearing briefing was completed on February 2, 2017, and oral arguments held on February 24, 2017. Following oral arguments, and pursuant to Rule 22, the undersigned requested certain additional evidence, i.e., solar plant output as reported to IREDA for all plants in the initial RPSSGP program. The undersigned also asked counsel for additional input as to which issues were to be resolved in the initial Partial Final Award without use of the independent accounting, and which should require use of the accountant. These matters, and others, were discussed with counsel on April 13, 2017, and additional materials furnished thereafter.

The case was then submitted for decision on May 22, 2017. [See Submittal Order, dated May 22, 2017].

I.    The June 21, 2017, Partial Final Award:

On June 16, 2017, the undersigned issued his Partial Final Award. On June 21, 2017, that Partial Final Award was corrected to show the accurate rupee-to-dollar conversion rate in effect on June 15, 2017 (i.e., 64.58 ₹/$). The Partial Final Award (Corrected), issued on June 21, 2017, will be referred to hereinafter as the "June 21, 2017, Partial Final Award."

## II. INCORPORATION OF THE JUNE 21, 2017, PARTIAL FINAL AWARD

The facts, findings, and orders of the June 21, 2017, Partial Final Award are reproduced immediately below (as subsections A through E, pages 8 through 55) and are hereby made part of this Further Partial Final Award.

## A. Facts[4]

This matter is the unfortunate saga of two seasoned entrepreneurs, Prabhakar Goel ("Goel") and Jaspal Singh Deol ("Deol"), coming together to build a solar power plant in the state of Punjab, India, and ending up in a contentious and long-running battle for control of that plant and its revenues.

Goel and Deol first met in California in late 2009 or early 2010. Each was already involved in energy production ventures worldwide, including solar. Goel, with a doctorate in electrical engineering, had been very successful in the high-tech world, first at several well-known companies and then with his own company. After selling that

---

[4] Whenever reference is made to an exhibit, it will be by exhibit number only, in brackets, e.g., [#1].

company, he became primarily an "angel investor," with an interest in solar energy ventures.

Deol, a long-time electrical engineer for the Sacramento Municipal Utilities District, also engaged in private business ventures in the energy field. In 2009 he had formed his own energy development corporation, Econergy, Inc. ("Econergy"). In a 2010 document, Econergy listed its two principals as Deol (CEO) and Dirk Vollbrecht (CTO/CFO) and described their vast experience in solar projects worldwide: "ECONERGY's team consists of highly skilled and experienced professionals with a solid track record of over 150 turnkey PV Solar power projects implemented, totaling >75 MW capacity and investments of about 425 Million EUR." [#1726]

Shortly before Goel and Deol met, the Indian government had announced a major solar power initiative -- the Jawaharlal Nehru National Solar Mission ("Solar Mission"). The Solar Mission included a program known as the Rooftop Photovoltaic and Small Solar Power Generation Programme ("RPSSGP"), the goal of which was to encourage the building of modest-scale (1 to 2 MW capacity) solar plants throughout India. The incentive offered to prospective developers was a very attractive, government-subsidized, price (tariff) for solar-produced electricity. To participate in the RPSSGP program, solar plant developers needed to be approved ("certified") by the Indian Renewable Energy Development Agency ("IREDA") before building a plant.

Both Goel and Deol had relatives and connections in India, and both were interested in participating in the RPSSGP program, either separately or jointly. Each began exploring various projects under that program. In early April of 2010, in anticipation of doing joint projects, Econergy and one of Goel's investment entities, the Goel Family Group, LLC, entered into a one-page agreement entitled "Agreement for Solar Farm Projects in India." [#1811] That Agreement contained few specifics, but it did indicate that the two entities would be "bidding as a consortium for setting up solar farms in India." The Agreement called for the two entities to finalize, by the end of April, an Operating Agreement that would "govern any and all activities undertaken jointly by the two parties in the solar farms area in India." An Operating Agreement, however, did not materialize for another fourteen months. The Agreement for Solar Farm Projects in India also recognized that the parties were free to pursue their own separate solar projects.[5]

One of the projects Deol was exploring was a 1 to 2 MW solar plant near the village of Boparai Kalan, District of Ludhiana, State of Punjab, where he had relatives and other contacts ("Ludhiana project"). Deol and Goel discussed the possibility of doing the Ludhiana project as one of their joint endeavors.

IREDA announced the guidelines for RPSSGP applicants in June of 2010. Applications were due by mid-July, with a short-list of approved projects to be

---

[5] The Agreement for Solar Farm Projects in India also indicated that they had submitted a Joint Development Agreement to the Punjab Energy Development Agency ("PEDA"). That Joint Development Agreement, however, was not produced in evidence, and if it existed, its terms are unknown.

announced by mid-August. Final approvals would be made by mid-September. As part of the approval process, applicants had to obtain pre-registration from their state's energy agency. In the state of Punjab, that agency was the Punjab Energy Development Agency ("PEDA"). Once a project was short-listed by IREDA, the proponent needed to enter into a contract with a local utility company to sell solar-generated electricity to that utility (a "Power Purchase Agreement").

Econergy obtained pre-registration from PEDA for its Ludhiana project in early July of 2010, and submitted its application to IREDA. Econergy was short-listed by IREDA in mid-August, and thus on August 18, 2010, Econergy entered into a Power Purchase Agreement with the local utility, the Punjab State Power Company, Ltd. ("PSPCL"). [#1604]

Because Deol and Goel had not finalized an Operating Agreement for any joint projects, the Ludhiana project initially was pursued as an Econergy project. The applications to PEDA and IREDA, as well as the Power Purchase Agreement, were solely in Econergy's name and made no mention of a partnership with the Goel Family Group LLC or any other entity.

Also, although Econergy represented to PEDA that it had "full control" of the land needed for the proposed farm [#1726], Econergy had not acquired any land at that point. Deol's plan was to obtain IREDA approval first, and then have Econergy buy or lease the needed land, with the acreage dependent on the size of the plant approved by IREDA.

In addition to land acquisition costs, Deol estimated that construction of a 1 MW solar farm would require between $2 million and $3 million for materials and labor. [#1726].[6] Deol, however, did not intend for Econergy to fund the entire project itself. Rather, he hoped to find financial backers, either equity partners or commercial lenders. One such possibility was a Goel investment entity.

As part of the application process under the RPSSGP program, each project proponent was required to furnish IREDA performance incentives, in the form of bank guarantees. Specifically, IREDA required five bank guarantees, each in the amount of 1 million Rupees (approximately $22,000 each[7]) from all project applicants. These bank guarantees were, in essence, held captive by IREDA to encourage timely completion of the plant. The proponent had one year to build and commission its plant. If done within that time frame, all five bank guarantees would be returned, together with accrued

---

[6] Deol's plan was for Econergy to hire an EPC (Engineering, Procurement and Construction) contractor to design the plant, procure the necessary materials, and build the plant. The result would be a turnkey-ready plant that Econergy would operate.

[7] Whenever Rupees are converted to U.S. dollars in this Award, the undersigned has used the historic conversion rates for the date(s) in question, as reported on the website "x-rates.com." Whenever a specific conversion rate is noted in this Award, it will be shown in brackets as Rupees per Dollar, e.g., [66 ₹/$].

interest. However, if the plant was not commissioned by the end of one year, the project had an additional six months to come on-line, but would lose one bank guarantee at the start of each subsequent two-month interval. Then, if the project was not on-line by the end of those extra six months [i.e., by the end of eighteen months from project approval], the remaining two bank guarantees would be forfeited, and the project would lose its favorable tariff for selling electricity. Deol, as part of Econergy's IREDA application, had purchased the required five bank guarantees in August 2010, and submitted them to IREDA.

During the time that Econergy was pursuing approval for its Ludhiana project, Goel was involved with three other RPSSGP projects, each done in conjunction with a different Indian company.[8]  Nonetheless, Goel and Deol continued to work toward a possible joint arrangement for Econergy's Ludhiana project; in August 2010, one of Goel's other entities, the Goel Family Ventures I LP ("GFV") agreed to transfer $87,500 to Deol's personal bank account. This represented the bulk of the cost of the five bank guarantees Deol had purchased for Econergy's IREDA application.[9]  However, because the parties still did not have an Operating Agreement for a joint venture, this transfer was considered either a loan to Deol (in the event no joint project went forward), or a capital contribution by GFV (in the event a joint project went forward).  As Deol wrote at that time: "The funds will be turned into joint venture project equity depending on an establishment of a mutually agreed upon project participation agreement. Should the joint venture not come to fruition between Mr. Deol and Mr. Goel or the project not proceed due to Indian governmental rejection of the application or lack of clearance from appropriate Indian regulatory agencies, the funds for the said project shall be construed as a loan and promptly returned to Mr. Goel less shared expenses for the development of the said project." [#1603]

In response to Deol's email, Goel reminded Deol that they already had a project participation agreement (i.e., the "Agreement for Solar Farm Projects in India"), but, under that Agreement, they still needed to enter into an Operating Agreement before they could move forward on any joint project: "The part remaining is to execute the Operating Agreement relating to how we will work together on solar projects in India." [#1603]

On September 17, 2010, IREDA announced the approved projects for the first round of solar plants under the RPSSGP. Seventy-two projects across India were approved, including Econergy's Ludhiana project and Goel's three projects.

---

[8] One in the state of Punjab, near Muktsar (a 1.5 MW plant sponsored by Carill Holding Private, Ltd.); one in the state of Orissa near Sonepur (a 1 MW plant promoted by Abacus Holdings Private, Ltd.); and one in the state of Uttarakhand near Roorkee, (a 1 MW plant promoted by Metro Frozen Foods and Vegetables Private, Ltd.).

[9] The cost of the five 1 million Rupee bank guarantees in mid-August of 2010 was approximately $107,500, of which Deol paid $20,000 and GFV paid $87,500.

After IREDA's approval, each of these projects was governed by the same time constraints: each had one year, until September 16, 2011, to build its plant and connect to the grid, to avoid loss of any of its bank guarantees. If not on-line by that initial deadline, one bank guarantee would be forfeited at the start of each two-month interval thereafter (i.e., one bank guarantee would be forfeited on September 17, 2011, one on November 17, 2011, and one on January 17, 2012). If the plant was not on-line by March 16, 2012, the remaining two bank guarantees would be forfeited, along with the favorable tariff for selling power to a local utility.

Following IREDA's approval of Econergy's Ludhiana project, Goel and Deol continued to discuss whether to convert that project into a joint one. For example, five months later (January of 2011) Goel sent Deol a proposed "Equity Investment Agreement." [#1789] Deol forwarded this proposal to his attorney in February [#1790], but it was never executed, for reasons not clear from our evidence.

Also, at times, Goel offered suggestions on resources that might assist Deol in developing the Ludhiana plant. In January 2011, Goel suggested that the Spanish EPC contractor Goel had used on a recent solar project could be of assistance: "The installation and system design team from Spain is available to us to help in any way needed." [#1786]

However, even as late as March 2011, Deol was still exploring other possible funding partners for the Ludhiana project, and apparently was reluctant to commit to having Goel as Econergy's partner for that project. [#312]

Also, in 2011, Deol had moved ahead on his own to acquire land for Econergy's Ludhiana project. By early April, he had acquired, in his own name, a little over 10 acres.[10] [#1611] He had purchased the land from a number of families for approximately $600,000.[11] Evidently he had bargained well; he later told Goel the land was worth more than he had paid for it.

Soon after acquiring the land, Deol leased it to Econergy for 25 years at 1,865,220 Rupees per year (approximately $42,000/year at that time). The rent payments would start once the plant was commissioned and revenue came to Econergy under the Power Purchase Agreement.

In early May of 2011, Deol registered Econergy as a foreign corporation doing business in India as a "Project Office." That status allowed Econergy to lawfully

---

[10] The acreage was 10.194. [#1810]

[11] Deol and Goel had discussed whether Goel might contribute to Deol's land purchase costs, but ultimately nothing was agreed upon, as there was no Operating Agreement in place.

conduct business in India. It also required Econergy to make certain official fillings, including tax returns.[12]

In mid-May, Goel forwarded to Deol a proposal from an EPC contractor, Staten Solar India Pvt., Ltd. ("Staten"), for Econergy's Ludhiana project. Staten proposed to use Goel's Spanish EPC contractor, Tejados Industriales de Fotovoltaica ("TIF"), for the engineering work, with Staten to do the procurement and construction. Staten indicated that it could build a 1 MW plant for approximately 102.6 million Rupees (around $2.3 million USD at the time). Staten's proposal also included a 15 % bonus if the project was completed by September 15, 2011, the deadline for Econergy to secure the return of all five IREDA bank guarantees. Staten's bid attached a construction work-flow chart indicating that some five months (twenty-one weeks) were needed to complete the project. [#1785] Deol apparently did not respond to that bid.

A month later, Deol and Goel finally reached agreement on turning Econergy's Ludhiana project into a joint one by having GFV become an Econergy shareholder, director, and short-term lender. They entered into a "Co-Development and Investment Agreement" on June 7, 2011 ("Co-Development Agreement"). There were four parties to that agreement: Goel (individually), Goel Family Ventures I LP ("GFV"), Deol (individually), and Econergy. It called for a number of things, *inter alia*:

> 1. <u>Equal Control of Econergy, Inc.</u>: Deol and GFV immediately became co-equal directors of the corporation, with equal say over all corporate matters, and with the expectation that they would work together in a consensus fashion: "Mr. Deol and Goel Ventures agree that the investment in Econergy is conditioned on both parties agreeing to work with consensus on all matters including the operations, business, and investments pertaining to Econergy and to all matters concerning [Econergy's] land lease."

> 2. <u>Corporate Shareholder Interests</u>: Prior to this Agreement, Deol was Econergy's sole shareholder. The Agreement allowed GFV to acquire a 49% equity interest in Econergy, Inc., upon infusion of $212,745 of new capital. No time frame was stated for GFV to complete this equity contribution. GFV also received an equity credit of $87,500 for the money transferred to Deol the previous year for the bank guarantees. Upon payment of the additional $212,745, GFV's capital contribution would be at $300,245. Because Deol was credited with a "deemed equity" of $312,500, Deol and GFV would be 51% and 49% equity owners, respectively. The Agreement provided, however, that Deol's 51% interest would not give him any greater management or control rights.

> 3. <u>Additional Capital Contributions</u>: The Agreement also provided that, "if needed for the execution of the project," the equity owners would be required to

---

[12] The Indian tax year runs from April 1 of one year through March 31 of the following year, with tax returns due by September 30th. Thus, Econergy's first Indian tax return (for the fiscal year ending March 31, 2012) was not due until September 30, 2012.

put in additional equity totaling $600,000, of which Deol would contribute $306,000 and GFV would contribute $294,000, thus preserving their 51/49 equity ratio.

4. Long-term Borrowing for Construction Costs: Both Goel and Deol wanted to keep their combined equity contributions at no more than 20% to 30% of total project costs. As such, it was understood that even after a call for the additional $600,000 equity (which would put their combined post-Co-Development Agreement cash infusions at $812,745), the corporation would still need to raise an additional $1M to $2M by way of long-term commercial loans to complete the project. The Agreement called for Goel to seek that commercial funding.

5. Short Term Loans from GFV: The Agreement also provided that GFV would lend the corporation needed sort term money until the long-term funding was obtained: "Goel Ventures agrees to provide short term debt to Econergy at an annualized interest rate of 15% with the express understanding by all parties that Econergy will apply best efforts to replace the short term debt from Goel Ventures with commercial long term debt as soon as possible. Detailed terms of the short term debt will be specified when required."

6. Project Supervision During Construction: The Agreement also designated Goel as the party responsible for getting the plant built and approved: "Mr. Goel will be responsible for execution of the project per IREDA and PEDA requirements. Mr. Goel is hereby authorized to negotiate with vendors and contractors for completion of the project." This provision was included partly because of health issues that might prevent Deol from actively supervising the project, and because Goel, and his son Pooneet, would be in India frequently to help with Goel's various solar projects there. However, as Deol had family and connections in the Ludhiana area, the Agreement required him to recommend local resources to help on the project: "Mr. Deol will identify resources locally to support the project implementation at the site in India."

7. No Director or Employee Compensation Without Agreement: Neither of the two Directors, nor any employees or consultants, was to receive compensation for their work on behalf of this project unless agreed to in writing by both Directors.

8. GFV's Option to Purchase One-Half of Land: The Co-Development Agreement granted GFV an option to purchase one-half of Deol's land, for $300,000. This option could be exercised during the first six months after the plant was commissioned. If GFV exercised this option, Deol would transfer one-half of the land to GFV and thereafter GFV would receive one-half of the rent paid by Econergy under its lease.

9. Change in Land Use ("CLU") Approval: The land Deol had purchased was zoned agricultural. However, Deol represented to Goel, and the Co-Development Agreement so indiates, that a change in the land use designation (a "CLU") from

agricultural to industrial, was not required for Econergy to build its solar farm there. "The Project can be implemented on the land without change of land use."

10. <u>Bank Account(s) for Econergy</u>: No particular bank account for Econergy was specified, although the Agreement provided that "[b]oth equity owners will have the right to require joint signature authority on all checks written from any Econergy bank account."

With the Co-Development Agreement in place, Econergy had barely three months to build its solar plant if it wanted to avoid loss of any of its bank guarantees. If the five month timeline in the recent Staten proposal was accurate, the initial IREDA deadline (September 16, 2011) was not feasible. Although Econergy had obtained project approval from IREDA nine months earlier, and had leased land, the project remained "green land" at the time of the Co-Development Agreement. Indeed, while under Deol's sole management, Econergy had neither selected an EPC contractor nor taken any concrete steps to build its plant.

Once on board at Econergy, Goel's first step was to find an EPC contractor, as the other steps in the process, from land improvements to ordering materials, depended on the plant's design. Goel quickly contacted a number of Indian-based EPC contractors, including Staten, Punj Lloyd and WIPRO; both Punj Lloyd and WIPRO inspected the site in mid-June. [#1612]

However, for various reasons, none of the Indian EPC contractors worked out. During that time, Goel also talked to Klaus Müller, the owner of TIF, the Spanish EPC company that Goel had used successfully on a solar project in Spain.[13] TIF was interested in bidding on the Econergy project and expressed confidence that it could complete the project by IREDA's final deadline (March 16, 2012).

On August 28, 2011, Econergy, Inc. and TIF entered into an EPC contract that called for TIF to design and construct the plant. The cost of TIF's design and construction work, which appeared as item 7 of the contract, was 10,996,800 Rupees (approximately $238,284 USD at that time). [#1003] Goel advised TIF that the project would be using 100 Watt PV panels manufactured by Green Energy Technology ("GET")[14], and to design the plant for those panels.

As a cost saving measure, Econergy was to procure most materials (the PV panels, the steel for the framework to hold the panels, and the electrical equipment such as inverters, strings, string combiners/diode boxes, etc.). TIF, however, was to procure certain of the cables and the riveted nuts (for attaching the panels to the steel frame). TIF

---

[13] Goel and Müller were co-owners of that plant.

[14] Deol's original proposal to PEDA had indicated that Signet Solar panels would be used. That apparently changed; after the Co-Development Agreement, Goel first looked at MASDAR panels, then both Goel and Deol decided on using Green Energy Technology panels.

had a trusted and preferred German supplier for these parts, and placed an order with that supplier.

Immediately after signing the TIF contract, Goel, on behalf of Econergy, entered into a contract with GET for the needed one thousand PV panels, and paid a deposit on that order. [#39]

Goel had also decided to use TIF, in varying degree, on his other solar projects in India. Thus, for example, two weeks after entering into the EPC contract for the Ludhiana project, Goel entered into an EPC contract with TIF on behalf of his Carlill project in Muktsar, Punjab. [#1788]

TIF's design work was completed quickly, and plans were made available on or about September 7, 2011. [#1565]  Soon thereafter, on September 14, 2011, Pooneet Goel,[15] issued a progress report giving the status of the land preparation work ("civil work") as well as the status of the purchase orders for steel, panels, inverters, diode boxes/string combiners, etc.  [#1621]

Not long after project got under way in September, the parties learned that Deol's earlier representation, that the project did not require a CLU, was incorrect; it became clear that the project needed a CLU if the plant was to be a legal land use.  This also meant that the CLU was needed in order to obtain bank construction funding, as no bank would knowingly fund a nonconforming use.  As such, Deol (as the sole landowner) applied for the CLU on October 2, 2011, and reported to Goel the next day: "We should be able to get the CLU this week.  I am moving the administration at the highest level to get this done." [#301]   Soon thereafter, Goel re-emphasized to Deol that obtaining the CLU was "critical" to the project and to Econergy's ability to obtain bank financing. [#1634]

At the time the Ludhiana project became a joint project in early June of 2011, there was little money in Econergy's coffers.  Up to then, Deol's contributions had been his time and his payment of the costs of the PEDA and IREDA approvals.  Although those payments became part of his "deemed equity," it was not money available to the corporation.  Similarly, the bank guarantees were not monies available to Econergy at that point.  Also, although the Co-Development Agreement called for GFV to become a 49% owner upon investing $212,745, the Agreement did not set a deadline for GFV to make that investment.

GFV, however, began putting money into Econergy as soon as the EPC contract was signed and the panels ordered.  Between August 29th and October 7th, 2011, GFV put in $163,000.  During that same time, Goel also arranged for two short-term loans to Econergy for an additional approximately $90,000: on September 21, 2011, Goel's Carlill project loaned Econergy 20 Lakhs (2 million Rupees) and on October 9, 2011, GFV loaned an additional 21 Lakhs (2.1 million Rupees). [#1662]

---

[15] On-site supervision on behalf of Goel was to be done by his son Pooneet Goel, assisted by Surinder Singh, a relative of Deol's who lived in the area.

During that early stage, Deol may have contributed to Econergy's operating expenses. He claimed that following the making of the Co-Development Agreement, he had spent $31,000 on behalf of Econergy. Apparently, much of this was in the form of cash or checks given to his second cousin, Surinder Singh, to pay expenses at the plant site.

As for Econergy's long-term commercial funding, the Co-Development Agreement required Goel to seek that funding. Goel involved Econergy's Chartered Accountant, Vijay Goel (no relation) in the hunt for commercial funds. Deol also helped in the effort. [#1634] As part of their effort, in September Deol and Goel prepared a funding proposal for the Overseas Private Investment Corporation ("OPIC"). It described the status of the project as it existed in at that time, and predicted that, with funding, the plant could be built by the end of November [#1618].

The parties' effort to raise commercial money was not successful. Apparently, no lender wanted to lend, possibly because solar power production was new in India and it was unclear whether these plants would be profitable.

Because of the lack of success with bank funding, and knowing that even if the owners put in their remaining equity, they would not have enough money to complete the project, Goel became concerned. At that point, he communicated with Deol about options, including possibly cutting their losses by scrapping the project. By that time, too, GFV had become reluctant to put any more money into the project unless Deol did the same. As of that time, Deol may have contributed $31,000 for operating expenses, but GFV had put in over $250,000 ($163,000 of equity plus two short-term loans for an additional $90,000).

Also, it appeared that neither Goel nor Deol was eager to make the equity call for the additional $600,000 allowed by the Co-Development Agreement; they knew that, without major bank funding, their additional equity would not get the plant built, and possibly would be lost.

At that point, Goel offered to step in as the bank and loan Econergy the needed construction money from his personal funds. After heated negotiations, the parties reached agreement. Goel would loan Econergy up to $1.6M, provided both Deol and GFV promptly contributed the balance of the equity called for by the Co-Development Agreement. As such, Deol was to immediately put in $275,000 of his required $306,000 (and then either verify $31,000 of expenses he had already paid or make up the difference by the end of December), and GFV was to quickly put in the balance of its initial equity ($49,745) plus $294,000 for the second equity call, for a total due from GFV of $343,745.

Because Goel served as GFV's appointee to the Econergy Board of Directors, he abstained from voting on this loan. As such, Deol made the decision to enter into the Loan Agreement on behalf of Econergy. Also, in the Loan Agreement, Econergy and Deol waived any conflict of interest claim they might have against Goel. "Lender [Goel]

17

and Guarantor [Deol] are also on the Board of Directors of Borrower [Econergy] and both Borrower and Guarantor acknowledge that they are executing this Agreement and waive any conflict of interest claims on the Lender related to this Agreement. Further, both Borrower and Guarantor agree that Lender has abstained from both (a) voting on any Board resolution to approve the terms of this Agreement and (b) voting to authorize Borrower to execute this Agreement."

In addition to the requiring that both Deol and GFV make their remaining equity contributions, the Loan Agreement had four main components:

1. The Loan Itself (essentially a construction draw account):

    a. The Loan Amount and Interest: Goel would personally loan Econergy up to $1.6M, when requested by Econergy and "made incrementally to service cash needs as they arise," with interest to accrue at 15% per annum on the monies advanced;

    b. Repayment of the Loan: There were no set periodic payment amount. Rather, Econergy needed only make payments from plant profits, i.e., the monthly revenue from PSPCL, minus operating expenses (which expenses were not to exceed 1M Rupees per year without consent). Econergy had four years to repay the loan starting on July 1, 2012. Also, until the loan was repaid, Econergy could defer its rent payments to Deol.

    c. A "Lender Controlled" Econergy Bank Account: "[Econergy] agrees that [Goel] or [Goel's] nominee will be provided exclusive and complete control over [Econergy's] bank account in which all revenues derived by [Econergy's] Project will be subject to direct deposit from PSPCL and said control will remain until such time as the Loan is completely repaid along with any interest obligations." An AxisBank account in Econergy's name became that account.

2. Security for that Loan: As Econergy did not own the land, and had no assets at that time, Goel insisted on security for his loan. As such, Deol personal guaranteed 51% of Econergy's loan, backed by a pledge of Deol's shares in Econergy and an agreement to promptly give Goel a mortgage on Deol's land. The personal guarantee and the security could not be enforced by Goel unless Econergy was more than 90 days delinquent on the loan.

3. Obtaining the Project's CLU. As noted, well before the Loan Agreement the parties learned that a CLU was needed for the solar plant to be a lawful land use, and Deol had already applied for one. By the time of the Loan Agreement, the plant was due to become operational in just over ninety days, and thus the need for the CLU was even more urgent. Accordingly, the Loan Agreement

required Deol to complete the process within 60 days, with Econergy to pay any expenses he incurred in doing so.

Also, given the urgency of obtaining the CLU before plant commissioning, and because of a concern that Doel's health issues might preclude him from attending to this matter, the Loan Agreement required Deol to immediately give Goel a power of attorney so that, if needed, Goel or his designee could act on Deol's behalf in obtaining the CLU.

4.  GFV's Option to Purchase.  The Loan Agreement reaffirmed GFV's option to purchase one-half of Deol's land within six months of plant commissioning. However, because the parties now knew that, by the time the option would be exercised, Econergy would be obligated to Goel on the construction loan, the Loan Agreement added a new provision: if GFV exercised its option and paid Doel $300,000 for the land, Deol would immediately put that money into Econergy as additional equity and GFV would then put in additional equity of $288,236 (thus preserving their 51:49 equity ratio), and this new equity (totaling $588,236) would be applied by Econergy to repayment of the outstanding loan.

With the infusion of the owners' additional equity ($618,745) and with an agreement now in place for funding the project when that equity ran out, the project moved ahead.  However, very shortly Doel proposed a change in the supplier of the panels, from GET to NexPower, as a cost-saving move.  Although Econergy had placed an order for GET panels months earlier and had paid a deposit, Deol wanted to explore this alternative supplier of panels.  Goel quickly discussed this with TIF, to see if it was feasible at that late stage.  TIF concluded that the change was possible, but would require design changes, as the new panels produced more electricity (150 Watts compared to GET's 100 Watts), and thus one-third fewer were needed.  This apparently had a number of features of the physical plant, including the structural steel, would need to be scaled back.  Goel gave the go-ahead for the panel change and TIF quickly made the design changes.  Goel then entered into a contract with NexPower for panels on December 15, 2011 [#40] and made a down payment of $120,876.00 on December 17, 2011. [#1542]

However, by the time of the panel change, the specially-manufactured riveted nuts that TIF had ordered for use with the GET panels had been delivered by the manufacturer to an airport in Germany, ready for airfreighting to India.  With the change in panels, these items became useless for the Ludhiana plant and apparently had no resale value either.  Although they had been paid for, Goel made the decision to simply leave them at the airport in Germany, to save the cost of airfreight and eliminate the need for Econergy to store useless parts at its Ludhiana plant.

Fortunately, Goel was able to cancel the original GET panel contract without loss of the deposit.  Also, because the new design did not require all of the steel and cables that had been ordered, Goel arranged for his other projects to buy some of the excess from Econergy.

After the redesign by TIF, the project again moved forward. At that point, the project had just three months remaining if it wanted to keep its favorable tariff with PSPCL and not lose all of its bank guarantees. Those final three months at the site were quite busy. Pooneet Goel was frequently on-site, as were the two electrical engineers provided by Goel (Niraj Mehta and Rajeev Ranjan). Deol, who was unable to be present, had his second cousin Surinder Singh ("Surinder") helping on the project. Also, Surinder has hired two local farmers to serve as security guards. TIF, as the EPC contractor, was the construction supervisor, and several people from TIF, including Klaus Müller, worked at the site at various times.

As previously noted, Goel was involved in developing three other solar plants under the PRSSGP program, all on the same timetable as Ludhiana. Goel's engineers (Mehta and Ranjan) worked on his other projects, as did TIF's personnel. Also, some of TIF's equipment, such as the ramming machine, rotated between these projects. For example, when the ramming machine first arrived in India it was taken to the Econergy site; however, the steel had not yet been delivered, so the machine was moved to a site that was ready for ramming.[16]

The Ludhiana plant was completed in early March 2012. Following inspection by PEDA and IREDA officials, it was synchronized to the grid and officially commissioned on or about March 2, 2012. [#25] As such, Econergy met IREDA's March 16, 2012 deadline, and was able to secure the return of the final two bank guarantees as well as enjoy the favorable tariff (17.91 Rupees per kwh) for selling electricity to PSPCL.

At a celebratory dinner following commissioning, Klaus Müller, who was concerned over Econergy's plans for on-site maintenance of the plant, offered Deol a contract under which TIF would provide operation and maintenance services. Deol declined, saying that he has it "under control."

For the first three months following commissioning, all went well other than some minor glitches with the new equipment, which were remedied. Then, however, beginning in mid-2012, tensions between Goel and Deol begin to develop over a number of issues:

1.  GFV's Exercise of its Purchase Option:

In June of 2012, Goel, who was satisfied with the project, gave written notice that GFV was exercising its option to buy one-half of the land under the farm; Deol acknowledged that exercise. However, that sale could not take place as long as the land remained zoned as agricultural; the CLU was needed. The CLU had been required of Deol by the Loan Agreement and he was to have been obtained it by late January 2012. Yet, as of June 2012, Deol had not done so, and had not given Goel a power of attorney for the CLU.

---

[16] TIF provided the ramming machine at no additional cost, but required that each project pay for any parts and supplies, such as hammerheads and fuel, used at that site.

After exercising the option, Goel frequently inquired of Deol as to the status of the CLU; Deol had myriad reasons why he had not yet obtained it. At one point, he said that it was a "done deal"; then later said a municipal labor strike was delaying matters, then said that Surinder was too busy to deal with it, or that certain fees were due, for which he was seeking a waiver. In December 2012, a full six months after exercising its option, GFV was still attempting to have Deol produce the CLU and complete the sale.

Then, at a point, Deol told Goel that he no longer was willing to sell, as the land has sentimental value, and besides, he was not happy with the agreed-upon price. Also, in April of 2013, Deol told Goel that he considered the sale to be "moot" because Deol had concerns over Goel's accounting of construction costs. [#1702][17]

### 2. Concerns Over Plant Performance:

At a point in mid-to-late 2012, the parties began having concerns over the plant's output, which was less than TIF initially had predicted.[18] The two directors discussed possible causes and involved Klaus Müller, and others, in their discussions. Also, at a point in 2012 it was discovered that some of the panels were exhibiting TCO corrosion,[19] which would reduce a panel's output.

The directors knew there were at least five factors that could be affecting the plant's output: (1) poor operation and maintenance (e.g., dirty panels, blown fuses, oxidized parts, etc.); (2) inadequate plant design; (3) poor construction (such as improper grounding that might lead to TCO corrosion); (4) defective panels from the manufacturer; and (5) local grid downtime (which prevented the plant from feeding power into the local grid).

Goel and Deol had differences of opinion as to the main causes of the reduced output. Goel felt, as did Klaus Müller after his inspections in 2012, there were two causes: (1) severe maintenance deficiencies and (2) defective NexPower panels that allowed moisture to invade the layers of the panels, causing TCO corrosion. Deol, on the other hand, felt the main cause of the reduced output was TCO corrosion, which he believed was caused solely by inadequate grounding of the panel frames by TIF.

The two directors argued over these matters and over whether Econergy should pursue remedies against either TIF or NexPower. Because Goel was of the opinion that TIF's work was not the cause of the TCO corrosion, he did not recommend pursuing TIF.

---

[17] Deol testified that about a year after this arbitration commenced, and several years after GFV's exercise of its purchase option, he obtained a CLU on November 10, 2014. He produced a document purporting to be the CLU, but it had various conditions, including one that precluded a sale of one-half of the land to GFV (by prohibiting a division of the land). [#1810],

[18] TIF had estimated output by using the "PVsyst "computer simulation program.

[19] Transparent Conducting Oxides ("TCO") form one of the layers in the PV panels. If that layer corrodes or delaminates, it can reduce the electrical output of the panel.

He also concluded that it would be economically unwise for Econergy to pursue NexPower in arbitration in Taiwan for allegedly defective panels. Deol, on the other hand, felt that the main problem was TCO corrosion and that this had been caused solely by inadequate grounding by TIF, and that this inadequate grounding had caused NexPower to deny Econergy's warranty claim on the defective panels. In early 2013, Goel agreed with Deol's recommendation to add additional grounding between the panels [#1700], but this work apparently was not done until sometime in 2014, after Deol had received the GenSol report, discussed below.[20]

At a point, Deol accused Goel of having a conflict of interest with regard to TIF (because of Goel's various dealings with TIF). Goel then recused himself and left to Deol the decision on whether Econergy should pursue TIF for construction or design defects. To date, Econergy has pursued neither TIF or NexPower. Interestingly, improvements in plant maintenance were implemented after Müller's observations of the plant's conditions in 2012, and plant performance increased significantly in 2013,[21] and has remained fairly constant.

At a point in 2013, and unbeknownst to Goel, Deol hired a third party, Gensol Consultants Pvt. Ltd. ("GenSol"), to inspect the plant and render a report on production issues. GenSol issued a report in December of 2013 [#1301], but it went to Deol only;[22] Goel was unaware of this report until well into this arbitration. And, importantly, the report was not something that either of the directors had available to them when they held their discussions in 2012 and 2013.

3.   Goel's Concern over Deol's Delayed Return of the Bank Guarantees:

The plant was completed and commissioned before the final IREDA deadline, and thus two of the 1M Rupee bank guarantees were returned by IREDA on June 11, 2012. [#25] These were sent to Deol, who placed the money into his personal bank account. Goel requested that Deol move these funds into Econergy's account, as they were part of either Goel's or Deol's equity contributions. Deol eventually did return the funds to Econergy, but did not include any interest he had received on the funds, either while they were being held by IREDA or after their return.

---

[20] Deol, sometime after receiving the GenSol report in December of 2013, installed additional grounding between the tables. This modification did not increase plant productivity, but Deol testified that these changes increased plant stability and reduced shocks to workers at the plant. Interestingly, after claiming that these modifications were needed because of TIF's inadequate work, Deol did not pursue TIF for the costs of that remedial work.

[21] In 2012, the plant was producing 25% below expectations; in 2013, at 13% below expectations.

[22] Deol, sometime after receiving the GenSol report in December of 2013, made some changes to the panel frame grounding. This modification did not increase plant productivity, but Deol testified that these changes increased plant stability and reduced shocks to workers at the plant. Interestingly, after claiming that these modifications were needed because of TIF's inadequate work, Deol did not have Econergy pursue TIF for the costs of that remedial work.

4. "Plant Accounting":

Beginning in mid-2012, Deol began voicing concerns over the quality of Goel's record keeping from the construction phase, which included the advances Goel made to Econergy under the Loan Agreement and the expenditure of those funds.

Deol asked for the records, and Goel furnished various records and the underlying documentation. Deol acknowledged that he was not an expert on accounting, but complained that what he had been given was incomplete or contradictory. In early 2013, Deol paid two visits to C.A. Vijay Goel, Econergy's accountant in Delhi, and received additional records from him. Deol, however, remained dissatisfied with the information he had received.

5. Deol's Accusations of Improprieties:

During that same time, Deol also began making accusations of wrongdoing by Goel, i.e., that he diverted some of Econergy's construction materials to Goels' other projects without proper compensation, improperly allocated Niraj Mehta's and Rajeev Ranjan's time between the different projects, and misallocated certain of TIF's costs between the different projects.

6. Goel's Concerns Over Econergy's Failure to Grant GFV Formal Recognition of its Ownership Interest in Econergy:

The Co-Development Agreement provided that, upon making its initial equity contribution of $212,745, GFV would become a 49% shareholder of Econergy, and that Econergy would provided the necessary documentation (Stock Purchase Agreement, Share Certificate, etc.). GFV completed its $212,745 equity contribution in late 2011, yet the documentation of its ownership was not forthcoming. In early 2013, Deol and Goel communicated with Econergy's attorney at Gordon & Rees in Sacramento regarding these matters, but a dispute quickly developed when Deol told the attorney that Goel's construction loan was not to be repaid, but rather converted to equity. As the corporate attorney wrote: "Per Jaspal, the loan is converted to equity, and is therefore not to be repaid." Goel promptly responded: "I am not sure how there is any disagreement on treatment of the loan – loan and equity are clearly separated." [#1034]

As tensions between the parties increased in early 2013, they used the services of Harsuhinder Brar, the owner of the Carlill plant in Muktsar, as an informal mediator: unfortunately, their issues remained unresolved.

Then, starting in mid-2013, Deol took a series of actions clearly aimed at wrestling control of Econergy, excluding GFV, and causing Econergy to disavow its obligations on Goel's construction loan. These actions included:

(1) Deol summarily fired Econergy's accountant, Vijay Goel, C.A., in May of 2013, and took the corporation's accounting work to his own accountant,

Neelkant Gargya of Sanjay Arora, C.A. However, in doing so, he did not tell Gargya about GFV being a co-director and a 49% co-owner of the corporation, or of Goel's loan of nearly $1M to Econergy. Rather, Deol told Gargya that he was the sole shareholder. As such, Gargya filed an Indian 2012 tax return (for the fiscal year ending March 31, 2012) that made no mention of Goel or GFV. Gargya testified in his deposition that Deol never told him of the existence of Goel or GFV or the loan;[23]

(2) Deol stopped depositing the monthly PSPCL revenue into Econergy's "lender's account" at Axis Bank, and instead opened another bank account in India (at HDFC bank) where he deposited this money;

(3) Deol instructed his U.S. accountant for Econergy, Karilyn Edwards, to file a U.S. tax return for Econergy for 2012 that stated that Deol was the 100% shareholder. Ms. Edwards also filed a 2013 return for Econergy, in which Deol is again shown as the sole shareholder. Deol disavows having a role in this second filing, claiming that it was done by Ms. Edwards without his knowledge or input, and likely done by her simply as a "placeholder" for the corporation's tax filings. However, he did not deny instructing her to list him as the 100% shareholder in the 2012 return.

(4) Deol transferred Econergy money to another of his solar projects in India (Allianz EcoPower). He later returned this money to Econergy, saying the initial transfer was simply a "mistake."

(5) In March, 2013, Deol told GFV that the sale of one-half of the land pursuant to the exercise of the option was "moot" because of Deol's concerns over "plant accounting" matters;

(6) Deol later transferred money from Econergy's Indian accounts to his own Indian bank account or to U.S. accounts under his sole control;

(7) Deol told others that GFV and Goel held no ownership interest in Econergy;

(8) Doel did not complete the share transfer documentation to verify GFV's 49% ownership interest in Econergy.

Following Deol's actions, particularly the ending of revenue deposits into the lender's account at Axis Bank, Goel filed for Arbitration on Dec. 3, 2013, claiming breaches of both the Co-Development Agreement and the Loan Agreement.

---

[23] After the firing of Vijay Goel as Econergy's accountant, the parties reached an agreement on the use of separate C.A.s in India, with separate payment to be made personally by each: Goel was to use and pay for Vijay Goel; Deol was to use, and pay for, Sanjay Aurora & Assocs. Goel now alleges that Deol failed to honor that agreement and instead used Econergy's money, rather than his own, to pay for Sanjay Aurora & Associates.

Subsequently, Goel became aware of other actions taken by Deol to the alleged detriment of GFV's holdings in the corporation, such as by Deol's use of corporate funds for non-Econergy matters. As such, Goel amended his arbitration demands in early 2015 to add claims on behalf of GFV. The amended claims were for further breaches of the Co-Development Agreement and of the Loan Agreement (by both Deol and Econergy), as well as for breaches of fiduciary duties by Deol.

At the end of 2014, Deol and Econergy counter-claimed in this arbitration, with allegations of breach of fiduciary duty (by Goel); breaches of contract (by both Goel and GFV); conversion of corporate property (by Goel); a common count for money had and received (by Goel), and requesting an accounting. An additional breach of contract claim (based on alleged breaches of the contracts' implied covenant of good faith and fair dealing), as well as a claim for usury, were later added by Deol.

The current claims are outlined in Section III (immediately below) and the requested relief is described in Section IV. The claims are analyzed, and ruled upon, in Section V.

### B. Summary of Claims

The parties have traded a large number of accusations, with Goel and Deol each making numerous individual claims against the other as well as against one or both of the entities. Also, each entity is making various claims. However, putting aside for the moment whether a particular claim is being advanced by, or leveled against, an individual or an entity (or both), the claims may be divided into two main groups, as follows:

A. Goel and GFV's Claims:

1. Econergy has not repaid any portion of the construction funds loaned by Goel in 2011, despite having received five years of revenue from PSPCL. As the loan's maturity date has now passed, the full loan amount of $997,716, plus interest, is owing from Econergy to Goel;

2. Following Econergy's default on the loan, Deol likewise has not performed his obligations under the Loan Agreement, i.e., he has not made good on his personal guarantee and has not delivered the pledged security (his shares and his land);

3. Deol also breached the Loan Agreement by not obtaining the CLU in a timely manner. By not obtaining the CLU, Deol has prevented Econergy from obtaining a bank loan that could have paid off Goel's loan to Econergy, and also prevented GFV's purchase of one-half of the land;

4. By not honoring GFV's exercise of its purchase option, Deol has not only prevented GFV from acquiring one-half of the land but has also prevented

Econergy from receiving additional equity of $588,236, which was to have have been used by Econergy to pay down a large portion of Goel's loan;

5. Deol has breached many of the fiduciary duties he owed to Goel, to GFV, and to Econergy by causing Econergy to default on Goel's loan, by excluding GFV from the corporation and denying GFV's ownership interest therein, by failing to maintain proper corporate records, by misleading accountants, by causing Econergy to file false tax returns, and by looting corporate funds for non-Econergy matters.

6. Deol has not properly accounted for the $31,000 he claimed to have expended on behalf of Econergy in the five months between the Co-Development Agreement and the Loan Agreement; and

7. Deol has not turned over to Econergy the interest he received on the IREDA bank guarantees.

B. Deol's and Econergy's Claims:

1. Goel and/or GFV have breached the Co-Development Agreement and the Loan Agreement, as well as Goel's fiduciary duties, by the following:

   a. By failing to timely complete the plant, and thus causing Econergy to forfeit three of its IREDA Bank guarantees and lose several months of revenue from PSPCL;

   b. By failing to execute the project "per IREDA and PEDA requirements";

   c. By failing to require TIF and other contractors to fully and properly perform their contractual obligations;

   d. By failing to properly account for construction costs;

   e. By failing to properly account for the loans Goel made to Econergy under the Loan Agreement;

   f. By diverting Econergy's construction materials to Goel's other solar projects;

   g. By failing to properly apportion, between Goel's various projects, the expenses of shared personnel (such as Niraj Mehta and Rajeev Ranjan) and by failing to properly apportion certain construction costs (such as for parts and fuel for the ramming machine);

   h. By failing to work in a consensus fashion with Deol.

2. The Loan Agreement is unenforceable, either because it was procured by duress or because its terms are unconscionable;

3. Even if the Loan Agreement is not voided, its 15% interest provision is usurious and thus no interest should be allowed and treble damages should be awarded on whatever interest Econergy has paid to date;

4. Even if the Loan Agreement is enforceable, Ecoergy has repaid this loan in full, or is excused from doing so;

5. That Goel and GFV have breached the Loan Agreement; and

6. That Goel has not performed his obligations following GFV's exercise of its option to purchase one-half of the land, including not performing his obligation to obtain a power of attorney from Deol and not procuring the CLU himself.

### C. Relief Requested

The parties requested extensive and detailed relief, as follows:

### A. The Relief Requested By Goel and GFV:

1. That Econergy be found in breach of the Loan Agreement and held liable for the principal loan balance of $997,716 plus interest at the legal rate of 10%, and that Deol be held liable for 51% of that amount as the guarantor of that loan;

2. That Deol be determined liable to Econergy for all interest received on the IREDA bank guarantees;

3. That Deol be ordered to return all Econergy funds misappropriated to date, with interest;

4. That Deol be ordered to return the principal and interest on unauthorized payments made by Econergy to Surinder Singh, Sanjay Arora & Associates and Amrita Kaur;

5. That Deol provide indemnification for all U.S., California, and Indian tax liabilities of Econergy, Inc., including indemnification for amounts assessed as penalties, charges, costs or fees caused by the improper filing of tax returns or failure to timely file tax returns;

6. That Deol be removed as a Managing Partner of Econergy;

7. That Deol be ordered to pay the unpaid expenses previously allocated to Econergy for Niraj Mehta's and Rajeev Ranjan's work;

8. That Deol be removed as a Director of Econergy;

9. That Deol's shares in Econergy be forfeited;

10. That the land on which the Econergy plant is situated be transferred to Claimants or their authorized designees;

11. That all of Deol's shares in Econergy be disposed of in favor of Goel;

12. That Deol be removed as an authorized signatory on all Econergy bank accounts;

13. That Deol be removed as an authorized representative of Econergy, Inc. for all purposes, including interaction with IREDA, PEDA, PSPCL, the Registrar of Companies in India and all U.S., California and India tax authorities;

14. That Deol be ordered to provide a full accounting of monies taken by Deol from Econergy's bank accounts and ordered to return said monies plus interest;

15. That a constructive trust be imposed on Deol's interest in Allianz EcoPower and Allianz Group LLC and any other business or project where Deol's contributions or payments were made with Econergy funds;

16. That an Order issue requiring Deol to turn over to Claimants all original Econergy related documents (or copies if originals are unavailable) in his possession or in the possession of Sanjay Arora or any other third parties that he has engaged;

17. That an Order issue directing Deol to provide Goel with a complete and itemized list of all filings made on behalf of Econergy with any regulatory authority – in India and in the United States.

**B. The Relief Requested By Deol and Econergy:**

1. That GFV be deemed in breach of the Co-Development Agreement and ordered to pay damages to Econergy;

2. That the delay penalties incurred by Econergy in the amount of $66,667 (i.e., the three forfeited IREDA bank guarantees) plus interest be deemed a credit against Econergy's debt to Goel under the Loan Agreement;

3. That damages for historical loss of plant production (due to reduced plant output) in the amount of $681,074, plus interest from June 10, 2016, be awarded to Econergy;

4. That damages for future loss of plant production in the amount of $824,843 plus interest from June 10, 2016, be awarded to Econergy;

5. That damages for the abandoned riveted bolts in the amount of $20,346, plus interest from June 10, 2016, be awarded to Econergy;

6. That GFV be deemed to have exercised its option to purchase one-half of Deol's land and ordered to deposit $588,236 into the Econergy accounts, to be credited against the loan balance;

7. That the Loan Agreement be ordered voided as the product of duress, or, if not voided, that some or all of its terms be declared unconscionable and thus unenforceable;

8. That the Loan Agreement be deemed usurious and no interest permitted;

9. That the sum of $378,731.04 ($307,000 for the money in the Axis Bank account and $71,731.04 for the money placed in the Morgan Stanley account in early 2013) be applied as a credit to Goel's Loan, and deemed interest paid by Econergy under the Loan Agreement;

10. That three times the above amount (i.e., $1,136,193.12) be awarded to Econergy as treble damages for having made usurious interest payments to Goel;

11. That Econergy and Deol be deemed not in default under the Loan Agreement;

12. That the loan be deemed paid in full;

13. That the amount of 1,865,220 Rupees per year from March 2, 2012, be deemed owed by Econergy to Deol as rent due under the lease; and

14. That GFV and Goel be ordered to provide a consolidated detailed accounting of all loan funds expended, and construction costs incurred, and that all income received in the AXIS bank account be credited to the Loan balance.

### D. Findings And Conclusions Made in the June 21, 2017, Partial Final Award

**1. Did Goel commit any breaches of fiduciary duty *prior to* entering into the Co-Development Agreement?**

Deol argues that a partnership, with resulting fiduciary duties, was formed well before the Co-Development Agreement, and that Goel breached his partnership duties during that time. Deol bases this argument on the parties' early discussions regarding the Ludhiana project and the April 2010 agreement between the Goel Family Group LLC and Econergy (Agreement for Solar Farm Projects in India). According to Deol, "[t]hat agreement established a legal partnership relation between the parties, and imposed fiduciary duties of loyalty and candor from that point forward." [Deol/ Econergy's Opening Brief @ 5: 7-9.]

Deol, however, misconstrues the parties relationship as it existed prior to the June 2011 Co-Development Agreement. We know that, in early 2010, the parties discussed how Econergy might undertake joint projects with one of Goel's investment entities, and that Econergy's project at Ludhiana was one possible joint project. However, the April 2010 Agreement for Solar Farm Projects in India was a very non-specific statement of intent that two entities would, in the future, bid together "as a consortium" on solar projects. That Agreement also required the two entities to enter into an Operating Agreement by the end of April to be effective. No such operating agreement was forthcoming, and no consortium bid was ever submitted by the parties. And, the Operating Agreement that was made some eighteen months later was with a different Goel entity.

Additionally, following the April Agreement, Deol undertook actions on behalf of Econergy that belied the existence of an Econergy-Goel Family Group partnership for the Ludhiana project. For example, Econergy's PEDA and IREDA applications, as well as its Power Purchase Agreement with PSPCL, were solely in the name of Econergy; there was no mention of a partnership with the Goel Family Group LLC or any other entity.

Months later, in January of 2011, well after Econergy had obtained IREDA approval for its Ludhiana project, Goel proposed an Operating Agreement that would have made the Ludhiana project a joint one, but Deol was not ready. And, as late as March of 2011, Deol again expressed reluctance to make the Ludhiana project a joint one with a Goel entity.

Despite these facts, Deol now argues that Goel breached his fiduciary duties *prior to the June 2011 Co-Development Agreement* in that he (1) delayed construction of the Ludhiana plant, i.e., "Dr. Goel offered no reasonable explanation for the delay [in plant construction] from [IREDA's] award of the project until the Project Development Agreement was signed" [Opening Brief @7:25-26], and that Goel (2) failed to help Deol with the purchase of real property for the Ludhiana plant, i.e., ". . . [Goel] refused to fund one-half of the cost of procuring the site for the Project." [Opening Brief @ 24:23-24]

These arguments conveniently ignore the fact that Goel did have a very reasonable explanation for his actions during that time: no agreement existed for any Goel entity to be involved in Econergy's Ludhiana project. After IREDA's September 2010 approval, and before the Co-Development Agreement, Deol remained the sole shareholder and director of Econergy. As noted, all PEDA and IREDA applications and approvals, as well as the Power Purchase Agreement, were solely in the name of

Econergy. Even if a Goel entity had wanted to, it could *not* have acted on behalf of Econergy during that time, such as by hiring an EPC contractor or ordering materials on behalf of Econergy.

Similarly, Goel did not "refuse" to fund one-half of the land purchase costs. At best, the parties had conducted very preliminary discussions regarding whether Goel would participate in a land purchase, but they never reached agreement. The fact that, in early 2011, Goel declined Deol's informal email request for money for a land purchase cannot be considered an unreasonable "refusal" to fund; the parties had no agreement in place for co-purchasing land.

If Econergy and the Goel Family Group LLC truly were partners and owed fiduciary duties to each other as the result of the April 2010 agreement, then Econergy was equally in breach of its partnership obligations. Econergy made no mention whatever of this partner in its Detailed Project Report to PEDA, or in its IREDA application, or in the Power Purchase Agreement. And, after IREDA's project approval, Econergy took no action to construct the plant for nearly nine months. At that time, there was no agreement calling for one of these supposed "partners" to take the lead on plant construction, and Econergy was equally capable of moving the Ludhiana project forward during that time. In Econergy's June 2010 project submittal to PEDA, Deol described Econergy's vast experience building solar energy projects worldwide. Yet, for some nine months following IREDA's approval, and despite Goel's suggestions as to available design and construction resources, Econergy did not select an EPC contractor, order materials, or start construction.

In sum, it cannot be said that Goel, or any of his investment entities, breached any fiduciary duty owed to Deol or Econergy at any time before the making of the Co-Development Agreement; no such duty existed during that time.

### 2. Is the Loan Agreement voidable by Econergy or Deol due to duress in the making?

Deol and Econergy argue that the Loan Agreement is voidable at their option because their consent was obtained through duress, economic and personal.[24] A contract obtained under duress, although not automatically void, may be voided by the aggrieved party: ". . . although a voidable contract may be disaffirmed, or rendered null, at the option of the wronged party, such contracts are not void until so rendered. Typical examples of voidable contracts include those . . . where the consent was induced by fraud, mistake or duress." Cal. Civ. Prac. Business Litigation § 24:7 (2016) [internal citations omitted.] Although Deol and Econergy do not use of the word "rescission" in their request to void the Loan Agreement, clearly it is the remedy they seek. The process by which a voidable contract is declared void is by seeking an order for its rescission under C.C. § 1689(b)(1), which permits voiding a contract when " . . . the consent of the party rescinding . . . was . . . obtained through duress, menace, fraud, or undue influence."

---

[24] Deol is not arguing that a loan between a director and a corporation is *ipso facto* void.

Without determining whether Goel's negotiations for the Loan Agreement amounted to legally-cognizable duress,[25] it is clear that neither Econergy nor Deol is in a position today to request avoidance of the Loan Agreement on grounds of duress. First, after the alleged duress, they accepted the full benefit of that contract, i.e., received nearly one million dollars of Goel's money to build the solar farm. The law is clear that, if after entering into a contract under alleged duress, the wronged party thereafter accepts the benefits of the contract, that party will be deemed to have ratified the contract. See, e.g., *Smith v. Glo-Fire Co.* (1949) 94 Cal.App.2d 154. Secondly, if a contract is to be rescinded, the parties must be restored to their *status quo ante*: ". . . rescission is a remedy that *disaffirms* the contract. The remedy of rescission necessarily involves a repudiation of the contract. Rescission extinguishes the contract (Civ. Code, § 1688), terminates further liability, and restores the parties to their former positions by *requiring them to return whatever consideration they have received*." *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1144-1145 [first italic in original, second added; internal quotes and citations omitted]. Neither Econergy nor Deol has offered, as part of their request to void the Loan Agreement, to restore to Goel the monies Econergy received from him under that Agreement.

### 3. Even if the Loan Agreement is not voidable due to duress, are some or all of its terms unenforceable due to unconscionability?

Deol and Econergy also argue that, even if the Loan Agreement is not voided, some or all of its provisions are unconscionable and should not be enforced.

#### A. General Rules Retarding Unconscionability:

The general rules governing the determination of whether contract terms are unconscionable are fairly straightforward: "The core concern of the unconscionability doctrine is the absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1145 (citation and internal quotation marks omitted). However, "[t]he unconscionability doctrine is concerned not with a simple old-fashioned bad bargain." *Sonic-Calabasas,* 57 Cal.4th 1109, 1145 (citation and internal quotation marks omitted).

"Unconscionability has a procedural and a substantive element; the procedural element focuses on the existence of oppression or surprise and the substantive element focuses on overly harsh or one-sided results." *Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 579. "To be unenforceable, a contract must be both procedurally and substantively unconscionable, but the elements need not be present in the same degree." *Id.* "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citation omitted).

---

[25] There does not appear to have been unreasonable duress on Goel's part; the duress that existed in November of 2011 was not of Goel's doing; it was the result of the fact that commercial funding was not available for this project, despite the parties' best efforts, placing the entire project in jeopardy.

"The procedural element requires oppression or surprise." *Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 821. "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Lhotka,* 181 Cal.App.4th at 821 *Id.* "When a contract is oppressive, awareness of its terms does not preclude a finding of procedural unconscionability." *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 663. "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 (internal quotation marks omitted). "To put it another way, procedural unconscionability focuses on the oppressiveness of the stronger party's conduct." *Abramson,* 115 Cal.App.4th at 662. (citation omitted). Evidence that contractual provision "is part of a nonstandard contract freely negotiated by parties of comparable bargaining power, 'such as may exist between an employer and a highly compensated executive employee,' weighs against a finding of unconscionability." *Sonic-Calabasas,* 57 Cal.4th at 1148. "Where an adhesive contract is oppressive, surprise need not be shown." *Nyulassy v. Lockheed Martin Corp.,* 120 Cal.App.4th 1267, 1281 (citation omitted).

"Substantive unconscionability addresses the fairness of the term in dispute." *Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1099. "The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as 'overly harsh,' 'unduly oppressive,' 'so one-sided as to shock the conscience' or 'unfairly one-sided.'" *Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910–11 (citations and some quotation marks omitted). "All of these formulations point to the central idea that unconscionability doctrine is concerned not with 'a simple old-fashioned bad bargain' but with terms that are 'unreasonably favorable to the more powerful party.'" *Id.* at 911. These include "provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to do with price or other central aspects of the transaction." *Id.* (citation omitted). The Supreme Court further stated in Sanchez, at 911:

> . . . an examination of the case law does not indicate that 'shock the conscience' is a different standard in practice than other formulations or that it is the one true, authoritative standard for substantive unconscionability, exclusive of all others." [citation omitted.] Nor do we see any conceptual difference among these formulations. Rather, "courts, including ours, have used various nonexclusive formulations to capture the notion that unconscionability requires a substantial degree of unfairness *beyond 'a simple old-fashioned bad bargain.'*" [citation omitted.] This latter qualification is important. Commerce depends on the enforceability, in most instances, of a duly executed written contract. A party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain.

Not all one-sided contract provisions are unconscionable; hence the various intensifiers in our formulations: "*overly* harsh," "*unduly* oppressive," "*unreasonably* favorable." [citation omitted]

Assuming, solely for discussion purposes, that procedural unconscionability was present here, the question remains whether the terms of the Agreement are substantively unconscionable as relates to either Econergy or Deol.

The burden, of course, is on Econergy and Deol to demonstrate the claimed unconscionability. "Because unconscionability is a contract defense, the party asserting the defense bears the burden of proof." *Sanchez v. Valencia Holding Company, LLC.* 61 Cal.4th 899, 911. Further, "[t]he critical juncture for determining whether a contract is unconscionable is the moment when it is entered into by both parties – not whether it is unconscionable in light of subsequent events." *American Software, Inc. v. Ali,* 46 Cal.App.4th 1386, 1391. Finally, the setting in which the agreement was made is important: "[a]n evaluation of unconscionability is highly dependent on context." *Sanchez, supra,* 61 Cal.4th at 911.

B.  Is the Loan Agreement Unconscionable as to Econergy?

The Loan Agreement basically called for Goel to be ready to provide construction funding of up to $1.6 million "incrementally to service cash needs as they arise," with Econergy to repay the advanced funds over four years, but only out of profits remaining after payment of operating expenses; there were no required minimum payments; only a final payment of any balance at the end of four years.

There was no showing that these terms were more favorable to Goel than a commercial loan would have been: "Directors may advance money to or for the corporation by way of loan when they deem such transaction to be in the interest of the corporation and may take its note for the amount, the terms being as favorable as any on which the corporation could have procured the money elsewhere." 15 Cal.Jur.3d Corporations at § 280 [internal citations omitted].

Also, this loan easily could have easily repaid by Econergy if Deol had honored GFV's exercise of its option to purchase one-half of the land (which would have reduced the loan balance by $588,236), and if Deol had applied each year's PSPCL profit to the loan, as required.

Other than the usurious 15% interest rate, which is not *per se* unconscionable, there is nothing about this loan that can be said to shock the conscience; as such, it is a not unconscionable as to Econergy.

C.  Is the Loan Agreement Unconscionable as to Deol?

Not surprisingly, Goel wanted security for his loan to Econergy (a corporation with no assets), and Deol agreed to guarantee the loan (up to 51%) and to provide

security for that guarantee -- he pledged his shares in the corporation as well as his real property under the plant.

In the Loan Agreement, Deol also agreed to obtain a CLU for his land, and to defer receipt of rent from Econergy until the loan was repaid.

Again, there is nothing in these terms that shocks the conscience. Goel's request for a personal guarantee for his loan was not unreasonable given size of the loan and the borrower's lack of assets. The personal guarantee and the security pledged by Deol were not shown to be unreasonable for the size and type of loan, and, again, there was no evidence that a commercial lender would not have required similar protections.

Further, the requirement that Deol obtain a CLU was not unreasonable or unconscionable; it was already known that Econergy needed a CLU for the plant to be a lawful land use, and Deol had applied for it two months earlier. And, the deferral of rent payments from Econergy to Deol until the loan was repaid does not appear unreasonable; the rent was simply deferred, it was not waived.

Finally, the provision requiring each party to put additional equity into Econergy in the event GFV exercised its option to purchase one-half of Deol's land, does not seem unreasonable, particularly when that additional equity would be used by Econergy to pay down Goel's loan. The sooner the construction loan was paid off, the sooner both Deol and GFV would begin receiving rent payments from Econergy and receiving profits from the plant.

As such, the Loan Agreement was not unconscionable as to Deol either.

### 4. Was the interest rate in the Loan Agreement usurious? If so, what remedy should flow from that fact?

It is undisputed that the 15% interest called for by the Loan Agreement was usurious under California law. The contested issues are: (1) whether the Loan Agreement should be reformed to call for a 10% rate because the parties acted in good faith and intended to select a lawful rate, and, (2) if not reformed, whether Econergy should receive something more than a cancellation of its interest obligation, such as treble damages under C. C. § 1916-3 for any interest it has paid under the Loan Agreement.

The elements of a claim for usury have been stated by he California Supreme Court as follows: "The essential elements of usury are: (1) The transaction must be a loan or forbearance; (2) the interest to be paid must exceed the statutory maximum; (3) the loan and interest must be absolutely repayable by the borrower; and (4) the lender must have a willful intent to enter into a usurious transaction." *Ghirardo v. Antonioli* (1994) 4 Cal.4[th] 791, 798.

Goel argues that because both parties assumed the agreed-upon interest rate was lawful, and there was no intent on Goel's part to enter into a usurious transaction. As

such, Goel asks that the Loan Agreement be reformed to provide for a lawful interest rate (10%), citing to *First American Title Insurance & Trust Co. v. Cook* (1970) 12 Cal.App.3d 592, in which the court reformed a loan agreement to make it non-usurious. Deol opposes reformation.

Goel's argument is rejected. First, the "willful intent" element of a usury claim does not require an intent to violate the law: "The element of intent is narrow. '[T]he intent sufficient to support the judgment [of usury] does not require a conscious attempt, with knowledge of the law, to evade it. The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete. (*Thomas v. Hunt Mfg. Co* (1954) 42 Cal.2d 734, 740, 269 P.2d 12.)'." *Ghirardo v. Antonioli, supra,* at 798. See, also, *Abbott v. Stevens* (1955) 133 Cal.App.2d 242, at 249 (if the instrument is plainly usurious on its face, "intent is presumed, implied, or ignored.") and *Denny v. Hartley* (1957) 154 Cal.App.2d 304 at 306 (". . . intent to execute a usurious rate of interest is conclusively presumed from a note or instrument which clearly shows on its face that it is usurious, and no evidence of intent or lack of such intent is required.").

Secondly, there is no clear case authority for the proposition that reformation should be available merely because the parties thought their agreed-upon rate was lawful. See, e.g., the cases discussed in "Reformation of Usurious Contract," 74 A.L.R.3d 1239. The main case relied upon by Goel, *First American Title Insurance & Trust Co. v. Cook* (1970) 12 Cal.App.3d 592, involved a very different situation than ours. In that case a third party scrivener erroneously and inadvertently inserted usurious provisions that the parties had neither requested nor intended. In that situation reformation to delete the unintended language was found proper. In our case, the parties discussed and fully intended to include the 15% interest provision; they just did not appreciate the fact that this provision was usurious. That lack of appreciation does not warrant reformation.

Under Goel's argument, virtually every usurious contract could be reformed to specify the legal rate, as it would be a rare case in which the parties would admit they intentionally selected a usurious rate. As noted by one writer: "An argument can easily be made that it is against public policy for a contracting-party creditor to write loan documents that are on their face usurious and then either collect the usurious interest or, if the debtor objects, collect the maximum interest permitted by law." Expert Series, 2 Cal. Affirmative Defenses at §37:13 "Usury."

As such, the Loan Agreement will not be reformed to call for a 10% interest rate, and thus no interest will be allowed under the Loan Agreement. However, this is not a case in which an award of treble damages under C. C. § 1916-3 is appropriate for whatever interest Econergy may have paid to date.

In sum, Goel will be permitted to recover the outstanding principal balance due under the Loan Agreement ($997,716.00), but without interest. However, that principal balance will be reduced for two credits given to Econergy, as follows:

Econergy is to be given a credit for the PSPCL revenue currently in the Axis Bank account, which amount will be repatriated to Goel in due course. That amount, as of March 31, 2017, was 15,188,169.87 Rupees, or $235,183.80 USD using the exchange rate in effect on June 15, 2017, the day before this Award was first issued [64.58 ₹/$].

Econergy will also receive a credit for the $71,731.04 placed by into Econergy's Morgan Stanley account in early 2013. Although the bulk of those funds apparently were from the two returned IREDA bank guarantees (and thus part of equity), it is deemed appropriate to now release those funds to Goel, and to give Econergy a credit against Goel's loan for that amount.

As such, the balance due from Econergy to Goel under the Loan Agreement is determined to be $690,801.16, and a partial final award in favor of Prabhakar Goel and against Econergy, Inc. will be entered in that amount below (Section VI).

## 5. Did Goel fail to complete the project in a timely manner?

Despite the fact that Econergy, while under Deol's sole control, took no steps to construct the plant during the first nine months following IREDA approval, Deol now argues that, after the Co-Development Agreement, Goel unreasonably delayed the construction and commissioning of the plant, causing Econergy to forfeit three of its IREDA bank guarantees and lose several months revenue from PSPCL. Specifically, he claims that Goel unreasonably delayed the project by slowly selecting an EPC contractor, slowly funding the project, and then by changing the PV panel manufacturer at the last minute.

Although both parties obviously shared the same financial incentive to complete the plant as expeditiously as possible, the Co-Development Agreement did not set a deadline for completion, and Deol offered no expert testimony on how long it should have taken to build this plant under the conditions then existing in India. There definitely was no persuasive evidence that a plant could have been built in just one hundred days, the time between the Co-Development Agreement and IREDA's one-year point. Indeed, the Staten bid, which Econergy had just received in May 2011, indicated that five months were needed. We also know, from looking at the completion dates for the seventy-one other projects in the initial RPSSGP program, that very few were completed within one year. Only eight made that one-year deadline, and many of the projects were not completed until early 2012, much like Econergy. [#141] Also, we do not know if any of these other projects waited nearly nine months following IREDA approval before even starting construction.

It does appear that Goel required nearly three months to find an EPC contractor. Although he started his search immediately after the Co-Development Agreement and had several prospective EPC contractors tour the plant within days of the Co-Development Agreement, those contractors did not work out, through no apparent fault on Goel's part. And, once again we do not have evidence that it was unreasonable, under the conditions then existing in India, to use ninety days to find a solar EPC contractor

37
**FURTHER PARTIAL FINAL AWARD**

who could handle this job and complete it by IREDA's mid-March 2012 deadline. Solar farms were relatively new in India at the time, and over seventy projects were competing for resources. Before liability can be imposed on Goel for his alleged delay, the burden was on Deol to demonstrate that the time frame here either violated Geol's duty of reasonable care as a director (Ca. Corp. Code § 309) or violated the terms of the Co-Development Agreement. For Deol to simply say that Goel should have done it faster, without more, does not satisfy his burden of proof.

Further, once Goel had an EPC contractor on board, the project moved quickly. The PV panels were ordered within days, and TIF's had its plans available in less than ten days following its hire. With those plans in hand, a civil works contractor was hired and materials ordered. Both owners had their on-site agents assisting in the process: Goel had his son Pooneet and Deol had his second cousin Surinder Singh.[26] There was no evidence that they did not work expeditiously to move the project forward once plans were available from TIF.

Additionally, it cannot be said that GFV was slow in funding the project. Before the EPC contractor had been hired and plans drawn, there was little need for funding. The civil works could not start until the site layout and the construction features were known. Similarly, the type and quantity of materials to order were unknown before plans were drawn. And, as soon as the EPC contractor was hired and plans drawn, GFV began infusing money into the project. By October, GFV had put in over $160,000 and had also obtained two short-term loans for another 4,100,000 Rupees (approximately $90,000). There was no evidence that, before the bank-funding crisis in November, any aspect of the construction process had been delayed due to a lack of funds. Also, although GFV did not immediately put in its full initial equity of $212,745, the Co-Development agreement had not placed a deadline for making that contribution (only the later Loan Agreement did that). There was no convincing evidence that the timing of GFV's equity infusions caused project delay.

Also, there was no evidence that Goel was deficient in his efforts to obtain bank funding for the construction costs. Goel and Deol were both attempting to find commercial financing, as was Vijay Goel, Econergy's C.A. Unfortunately, their efforts were not successful. However, this was not shown to have resulted from a lack of effort by any party. And, the absence of commercial funding did not become critical until late October or early November, at which time the parties discussed whether, because of this unanticipated funding crisis, the project should continue.

As to Deol's claim that Goel caused delay by his last-minute change in the vendor for the PV panels, that claim is rejected. It was Deol, in December of 2011, who initiated the discussion of whether the NexPower panels might be less expensive. In response, Goel asked TIF whether such a change was possible at that late stage. TIF said that it could be done, but would require design changes because the NexPower panels produced

---

[26] Neither of these were paid for their work by Econergy. This may be because, under Paragraph 10 of the Co-Development agreement, neither the directors nor their employees were to be paid, absent an agreement of all directors.

greater wattage and thus fewer were needed, which meant other structural changes were needed, too. At that point, Goel gave the approval for the change. However, irrespective of which party initiated the panel-change discussion, both agreed to make that change, and both bore equal responsibility for any delay that change may have caused.

Deol also argues that Goel was slow in advancing construction money under the Loan Agreement. However, the Loan Agreement called for Goel to advance funds "as requested by [Econergy]" "to service cash needs as they arise." We know that the Loan Agreement was entered into at the very end of November, and that Econergy had just received well over $600,000 of additional equity from the owners. Six weeks later, Goel advanced nearly three-quarters of a million dollars ($724,716). Without knowing when the $600,000 of additional equity was exhausted, it is not possible to know when Econergy next experienced "cash needs" or whether Goel unreasonably delayed in responding to those needs. In short, Deol has not shown that Goel delayed the completion of the project by the speed at which he met Econergy's construction cash needs under the Loan Agreement.

It should also be noted that, under the Co-Development agreement, it was not GFV's obligation to fund, *on a long-term basis*, the 70% or 80% of project costs that was expected to come from a commercial lender. The two owners (Deol and GFV) had anticipated putting in only 20% to 30% of the construction costs from their own money (i.e., the $812,745 called for by the Co-Development Agreement) and then securing the remaining $1.5 to $2 million commercially. Although the Co-Development Agreement did require GFV to make *short-term* loans as needed, it did not require GFV to assume the role of a long-term commercial lender in the event a commercial lender could not be found. Obviously, it would not have helped Econergy if, in November of 2011, GFV had lent Econergy the $1.6 M on a *short-term* basis; Econergy never would have been able to repay that amount in the short term.

In sum, Deol has not established that Goel unreasonably delayed the completion of the project.

### 6. Did Goel fail to execute the project "per IREDA and PEDA requirements"?

Deol argues that Goel breached the Co-Development Agreement because he did not execute the project per IREDA and PEDA requirements. He bases this argument on the assertion that TIF did not properly ground the panels, in violation of IREDA's specifications.

When the project was completed, TIF certified that the plant met all IREDA requirements. Also, PEDA and IREDA conducted detailed inspections before approving and commissioning the plant. And, neither agency has revoked or threatened to revoke their approvals based on any later-discovered construction defects.

Deol nonetheless argues that despite TIF's certification, and PEDA's and IREDA's approvals, the plant did not meet IREDA's requirements, as the frames for the panels were not properly grounded, causing a potential shock hazard and causing TCO corrosion in some of the panels. Because the PEDA and IREDA requirements include proper grounding measures, Deol asserts that Goel did not live up to his contractual obligation to "execute the project per PEDA and IREDA guidelines."

Deol, in making this argument, misinterprets the Co-Development Agreement. That Agreement made Goel "responsible for execution of the project per IREDA and PEDA requirements" and Goel satisfied that responsibility by obtaining the certificate of compliance from TIF followed by the approvals from PEDA and IREDA, all of which allowed the plant to be commissioned and connected to the grid. The plant has now been producing for over five years, and there is no indication that either PEDA or IREDA has any concerns over compliance with their technical requirements.

Even if Deol is correct in his argument that TIF did not properly ground the panels, there is no evidence that Goel was aware of that fact when he received the certificate of compliance from TIF or the approvals from PEDA and IREDA. Goel's job under the Co-Development Agreement was to see to it that the plant was built, and was approved by PEDA and IREDA. He did that.

If it later turned out that, despite its representation of compliance, TIF had not properly grounded the panels, TIF would be liable for that defect, not Goel. Under the Co-Development Agreement, Goel did not occupy the position of a general contractor, nor was he the guarantor of TIF's work. As one of Econergy's owners, he hired TIF as the EPC contractor, and there was no evidence that Goel was negligent in making that selection, or that he had any reason to question the accuracy of TIF's representation of compliance, or question PEDA's and IREDA's certification of the plant.

Obviously, if Goel had failed to obtain a certificate of compliance from TIF, or if the plant had failed certification by PEDA or IREDA, he would not have satisfied his contractual obligation to execute the project per PEDA and IREDA requirements. Here, however, he obtained the required approvals, in good faith, and the plant was commissioned and has been in operation for five years. It cannot be said that Goel breached the Co-Development Agreement because alleged construction defects, unbeknownst to him, may later have been discovered.

Also, as to the production numbers, no particular level of plant output was required for PEDA's and IREDA's certifications, and Goel did not represent to PEDA or IREDA that a particular level of production would be achieved. As such, it cannot be said that Goel failed to execute the project "per PEDA and IREDA requirements" simply based on the level of power output.

///////

7.　During construction, did Goel misappropriate Econergy's materials for use on his other projects?

Deol claims that Goel misappropriated some of Econergy's materials, particularly structural steel and cables, for use in his other projects, without proper reimbursement to Econergy. He bases this claim on the fact that, after the December 2011 plant redesign, Econergy did not need all the steel and all the cables that had been ordered, and Goel transferred some of the excess to his other projects. Deol believes that Econergy was not fully compensated for these reassigned materials. Although the dollar amount involved on this issue is relatively modest, the documentation regarding the disposition of the steel and the cables appears to contain some inconsistencies, and thus an accounting of these items will be ordered (see Section VI, below).

8.　Was Goel deficient in his director duties by making the decision to abandon the custom-made riveted nuts[27] at the German airport?

Deol faults Goel for making the decision to abandon the custom-made riveted nuts after the change in panel manufacturer. However, this decision appears to have been an appropriate business decision, as Econergy had no use for them, and there was no evidence that they had any resale value. As such, Goel's decision to avoid the airfreight expense, and avoid the need to store useless parts at the Ludhiana plant, was a reasonable business decision.

9.　Did Goel misallocate the work time of the shared project personnel?

Deol also complains that Goel made an inappropriate apportionment of Niraj Mehta's and Rajeev Ranjan's time between Goel's various projects, and thus he has caused Econergy to reject the costs allocated to it for these workers. On what information Deol bases his objection is not exactly clear, as he was not on-site from August of 2011 through January or February of 2012, and not in a good position to determine how much time the two spent at the Ludhiana site. In any event, Goel's allocation formula is deemed reasonable and not in breach of any duty he owed to Econergy, and thus Econergy is to pay the amount allocated to it for these individuals' time.

10.　During construction, did Goel fail to act in a consensus manner with Deol?

Deol complains that Goel did not always act in a consensus manner during the construction process, and that he made certain decisions on his own. Deol is correct that the Co-Development Agreement generally called for the two directors to act on a consensus basis with respect to corporate matters. However, the Agreement also gave Goel the task of getting the plant built, and specifically gave him the authority to "negotiate with vendors and contractors for completion of the project." Under normal

---

[27] The record is somewhat unclear as to whether the items were riveted nuts or riveted bolts, or both. For our issues, however, the exact nature of the items is immaterial.

rules of contract interpretation, this specific clause (giving Goel control over dealings with vendors and contractors) would take precedence over the general shared-governance clause.

Also, although both Deol and Goel were residents of Northern California, they each travelled extensively during the construction phase, and not just in India. Indeed, neither spent extensive time on site during construction, although Goel was there more than Deol. Most of their communications during the construction phase were by email; as such, we have a fairly extensive record of their interactions during that time, including the emails of Pooneet Goel, who was on-site for Goel. Looking at the emails, it does not appear that Goel, or his son, failed to keep Deol apprised of construction progress, or avoided Deol's input on major matters, such as whether to change the panel supplier.

As for Goel's selection of TIF as the EPC contractor, it appears that Goel may have made that selection without first seeking Deol's input. However, TIF was not unknown to Deol before being selected as the EPC contractor. In January of 2011, Goel had recommended TIF's services to Deol, and TIF was designated as the plant's designer in Staten's May 2011 EPC proposal to Econergy. [#1618] And, there was no evidence that Deol, even if he had been consulted in August of 2011 about TIF's hiring, would have voiced a negative opinion or would have suggested that Goel continue his search for an EPC contractor.

Even if Goel did not always act by consensus during the construction process, it is hard to determine how Deol was damaged. Indeed, involving Deol in every decision likely would have delayed the project, given Deol's busy travel schedule and his health issues. And, Goel brought the project to completion before the final IREDA deadline and did so under the anticipated cost.

## 11. Was Goel at fault if the plant produced below the parties' expectations?

Deol also argues that Goel should be held personally responsible for the fact that the plant's power output was below expectation. He argues that because Goel was responsible for getting the plant built, he should be responsible for its performance.

In 2012, the plant performed at about 25% below expectations, but then improved greatly in 2013, when production was only 13% below expectations. And, this plant's production is not out of line with the other 1MW plants constructed under the initial RPSSGP program. [#1813] Nonetheless, Deol believes Goel should be held responsible, in the form of past and future monetary damages, for any production levels that are below TIF's pre-construction projections.

However, Goel never made representations as to anticipated output, and specifically did not guarantee a particular output. Also, there was no persuasive evidence that the Ludhiana plant, as built, does not qualify as a "1 MW solar plant," and its output does not appear to be out of line with the other 1 MW plants operating in Punjab under the RPSSPG program. [#1813]

<div align="center">42</div>

At the start of its work on this project, TIF made a projection of plant output by using the "PVsyst" computer simulation program. That projection, however, was not a guarantee by TIF of a specific performance level, and Goel did not warrant a specific output level. As noted, there was no evidence that PEDA or IREDA considers this plant as not meeting its requirements for a 1 MW plant. And, of course, Deol is not the only party affected by the alleged under-performance; any diminished revenue falls equally on both owners. In short, Goel cannot be held to have personally guaranteed a particular level of production from this plant.

### 12. Did Goel properly perform his duties, as a director, in response to the plant performance issues that arose in 2012?

Deol argues that Goel did not adequately perform his duties, as a director, in response to the power output issue. In making this argument, Deol basically is saying that Goel was deficient in his duties because he and Deol did not agree on the cause of the power reduction, or the remedies Econergy should pursue. Specifically, by late 2012, Deol became convinced that the reduced power output was the result of TCO corrosion in some of the panels, and that this TCO corrosion was the result of inadequate grounding of the panels by TIF. Goel, on the other hand, was not convinced there was improper grounding, and attributed the 2012 production numbers to deficient plant maintenance (by Deol's on-site people) and to defective panels from NexPower. TIF's owner, Klaus Müller, agreed with Goel; Müller's two post-commissioning visits in 2012 revealed a number of operations and maintenance deficiencies, such a dirty panels, blown fuses, and corroded parts.[28] Müller was also of the opinion that the NexPower panels themselves were defective, allowing moisture intrusion that resulted in TCO corrosion.

In 2012 and early 2013, the two directors discussed these matters, and debated the actions Econergy should take. Deol wanted to pursue TIF; Goel was opposed. Econergy put in a warranty claim with NexPower for the TCO corroded panels, but this was rejected because NexPower maintained that the panels had not been properly grounded. Goel disagreed with NexPower's assessment, but also felt it was unproductive to pursue NexPower in arbitration, which would take place in Taiwan. Deol, at a point, accused Goel of having a conflict of interest with regard to pursuing TIF; in response, Goel voluntarily recused himself from any further decision regarding actions against TIF.

In essence, Deol's claim is that Goel was deficient in his duties as a director of Econergy in 2012 and 2013 because he had concluded that the TCO corrosion was due to defective NexPower panels and that this, combined with poor maintenance, was causing the production issues. Deol also faults Goel for not recommending that Econergy pursue TIF (at least in the time frame before Goel recused himself on that decision) and for recommended against pursuing NexPower in arbitration in Taiwan.

---

[28] Interestingly, after improvements in maintenance were implemented, power production increased, and in 2013 was only 13% below expectations.

However, it cannot be said that Goel was deficient in his duties as a director of Econergy in reaching his conclusions on the production issues in 2012 and early 2013. He based his conclusions on the then-available evidence, as well as his own knowledge as an electrical engineer. Under Corp. Code § 309, he cannot be held liable to the corporation just because another director disagreed with his conclusions or if his conclusions are ultimately found to have been in error. What is required is that he serve "in good faith, in a manner such director believes to be in the best interest of the corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances." Goel met this standard.[29]

### 13. Did either Goel or Deol fail to meet their obligations regarding obtaining a CLU for Deol's land?

Both Deol and Goel contend that the other breached the Loan Agreement by failing to obtain a change in land use (CLU) for Deol's land.

By September of 2011, the two directors realized that, despite Deol's prior representations to the contrary, a CLU was needed for the plant to be a lawful land use. As such, Deol, as the landowner, applied for that CLU on October 2, 2011. Then, because he had not completed this task by the time of the Loan Agreement, and because plant commissioning was due in ninety days, the Loan Agreement required him to obtain it within sixty days. Also, as the parties planned to replace Goel's construction loan with a longer-term bank loan, they knew a CLU would be required by any commercial lender.

Additionally, the Loan Agreement required Deol to give Goel a full power of attorney over Deol's land, so that Goel could obtain the CLU in the event Deol was unable. Deol, however, did neither: he did not obtain the CLU in 60 days, and did not give Goel the power of attorney that would have enabled Goel to obtain one.

Some seven months after the Loan Agreement, when GFV exercised its option to purchase one-half of the land, Deol still did not have the CLU. Goel, not being the landowner and not holding a power of attorney from the landowner, had no ability to obtain that CLU. And, every time Goel inquired as to the status of the CLU, Doel had an excuse as to why it had not been obtained.

It appeared that, after GFV's exercise of its option, Deol simply did not want to part with one-half of his land and was using the CLU as a means to avoid that sale.

---

[29] At the end of 2013, after their discussions had concluded, Deol received a report from a third party, GenSol, opining that the panels had been inadequately grounded. In response to that report, Deol added additional grounding in 2014. That work did not improve the plant's output; however, according to Deol, it did cut down on shocks to workers and did "stabilize" plant production. The information from GenSol was not part of the information available to the two directors when they discussed plant production issues in 2012 and 2013. Also, for whatever reason, Deol did not have Econergy pursue TIF for the expense of the additional grounding.

Indeed, at one point, he told Goel the he did not want to part with the land because it had sentimental value and on another occasion that it was worth more than the agreed-upon price. Deol then blamed the delay in obtaining the CLU on Goel, arguing that Goel should have asked him for the power of attorney.

By not obtaining the CLU, and not giving Goel a power of attorney, Deol not only delayed GFV's purchase of one-half of the land, but also caused Econergy to operate illegally for several years (at least until late 2014, when Deol apparently obtained a CLU [#301]). Deol's delay in obtaining the CLU not only prevented GFV from acquiring one-half of the land, but also prevented Econergy from receiving an additional nearly $600,000 of equity to pay down the loan from Goel.

In sum, Deol breached the Loan Agreement by not timely obtaining a CLU, and by not giving Goel a power of attorney to do so.

### 14. Did either party breach its obligations under the option to purchase after GFV exercised that option?

Similarly, both GFV and Deol claim that the other breached their contractual obligations following GFV's exercise of its option to purchase one-half of the land. On this issue, too, Goel has the better argument, as it is clear that the only reason the sale did not take place was because Deol did not want to honor the option and thus did not obtain the needed CLU.

In late 2012 and into 2013, GFV was ready, willing, and able to complete its purchase and repeatedly asked Deol to obtain the CLU so that sale could proceed; Deol resisted and delayed. As noted above, it appeared that Deol simply did not want to part with the land, and used various excuses for not following through on the sale. Then, in early 2013, he told Goel that the land transfer was now "moot" because he was unhappy with Goel's accounting of the plant's construction costs.

As will be discussed below, Deol's concerns over the accounting issues were not a valid excuse for his failure to honor his obligations under the option. Deol clearly breached the option agreement.

### 15. Did Deol adequately account for the $31,000 of claimed expenses for which he received a credit against his equity requirement?

Under the Loan Agreement, the two owners were to promptly complete their remaining equity contributions called for by the Co-Development Agreement. Deol was to contribute an additional $306,000; however it was agreed that he initially would contribute only $275,000 and then account, by December 31, 2011, for $31,000 of expenditures he had made between June 7th and November 28th, 2011. If the documented expenditures did not total $31,000, he was to make up the difference at that time.

Deol did not render any accounting by December 31, 2011. Some nine months later, on September 24, 2012, Surinder Singh gave Goel a listing of claimed cash expenditures through that date, with some receipts included.[30] [#1694] However, two of the larger claimed expenditures were incurred *before* the making of the Co-Development Agreement and Deol has already been compensated for these expenses by way of his "deemed equity."

With the removal of the two expenses that predated the Co-Development Agreement, Deol's accounting reveals that he expended 1,407,521 Rupees or $26,527 USD using the December 31, 2011, exchange rate [53.06 ₹/$]. As such, Deol is hereby ordered to pay to Econergy the balance due on his equity contribution, i.e., $4,473.

### 16. Is Deol liable to Econergy for the interest received on the IREDA bank guarantees?

The five bank guarantees represented equity contributions, either from Deol as part of his deemed equity, or from Goel as part of the $87,500 he forwarded to Deol in August of 2010 (which was acknowledged in the Co-Development Agreement as an equity contribution). Any interest earned on Econergy's equity would belong to Econergy. Deol has neither accounted for, nor delivered to Econergy, the interest earned on these bank guarantees and he will be ordered to do so, below.

### 17. Did Goel fail to adequately account to Econergy and Deol for construction costs and for the advances Goel made under the Loan Agreement?

Although Goel completed this project for significantly less than originally anticipated by Deol, and although Deol has presented no evidence of financial wrongdoing by Goel during the construction process, Deol nonetheless complains that Goel has not adequately accounted for the construction costs, including not adequately documenting advances made under the Loan Agreement and for expenditures during the construction process. However, other than as to the records for the purchase and reallocation of the structural steel and the cables (for which a further accounting will be ordered), this claim is rejected; the records and accounting furnished by Goel are deemed adequate and appropriate for this project.

### 18. Was Deol justified, because of any of Goel's actions, in taking the actions he took beginning in March of 2013, to take control over Econergy and cause Econergy to default on its loan payments to Goel?

It was clear that, by the Spring of 2013, Deol was unhappy with his earlier decisions regarding ownership and control of Econergy and wanted to take control of the corporation by excluding co-owner GFV, disavowing the construction loan from Goel,

---

[30] Also, more than a year after the December 31, 2011, deadline (in February of 2013), Deol listed expenditures he claimed for 2012 and for the first two months of 2013 [Exh. 131], but this listing does not include any expenses incurred in the June 7th to November 28th, 2011, timeframe.

FURTHER PARTIAL FINAL AWARD

and diverting the monthly payments from PSPCL from the lender's account to a new account under this control. Although Deol's unhappiness with his prior decisions may have been understandable,[31] his actions clearly were unjustified and wrongful.

To accomplish this takeover of the corporation, he (1) fired the corporate accountant and took the corporation's financial affairs to the accountant who had originally set up Econergy's Indian Project Office; (2) did not tell that accountant that the corporation was now co-owned and co-controlled; (3) did not tell that accountant that the corporation had borrowed nearly one million dollars for construction of its plant; (4) stopped depositing the monthly revenue payments from PSPCL into the "lender's account" at AxisBank; (5) opened a new account into which he deposited the plant revenue; (6) "accidentally" transferred some of Econergy's revenue to another of his Indian solar projects; (7) told Goel that the sale of one-half of the Ludhiana land was now "moot," and (8) instructed his U.S. accountant, when preparing Econergy's 2012 U.S. tax return, that he now was the 100% shareholder (despite the fact that the 2011 return had correctly shown GFV as a 49% shareholder).

In executing his takeover, Deol chose to ignore the fact that Goel had completed the project well under anticipated costs, and that without Goel's willingness to lend Econergy up to $1.6 million of his personal funds, the project likely would have gone under in late 2011 through no fault of either director. He also has chosen to ignore the fact that if he had promptly obtained the CLU, and had honored GFV's exercise of the option to purchase, much of Econergy's debt would have been paid off long ago. He also seems to discount the fact that, in 2013, the plant was performing better than in 2012, apparently due to improved maintenance.

The "justification" that Deol gave for his 2013 take-over was that he was dissatisfied with Goel's "plant accounting," and that he and Goel disagreed over why the plant was producing less electricity than expected and over remedies to pursue. In the course of this arbitration, Deol has raised many additional claims of purported wrongdoings by Goel, all offered as additional justification for his actions in 2013. These claims have been discussed above and, as seen, have been rejected as unsubstantiated, overblown, or simply wrong.

Deol, as an experienced businessperson with access to quality legal advice, knew he had appropriate ways to deal with his concerns in March of 2013. If dissatisfied with Goel's accountings to date, he had every right to obtain a full neutral accounting of Goel's handling of corporate financial affairs. And, as to any director deadlock over the remedies to pursue on the plant production issue, seeking the appointment of a third director to break that deadlock was always available.

---

[31] The corporation that originally was solely Deol's was now co-owned and co-controlled by another entity, GFV. Deol was also being required to sell one-half of his land to that other entity and, until the construction loan was paid off, Deol was not receiving any rent for his land and was not receiving any profits from the plant.

Importantly, too, even if the construction accountings rendered by Goel in 2012 and 2013 did not meet Deol's expectations, a further and complete accounting had little to do with Econergy's obligation to repay its loan. Deol knew that, as of May 2013, the first year's PSPCL revenue in the lender's account at Axis Bank totaled less than $275,000 USD. And, he knew that this was nowhere near the amount of Goel's outstanding loan. Even if Deol truly distrusted the loan records he had received from Goel, Deol himself had estimated that construction costs for this plant would be $2M to $3M, and he knew that the two owners, collectively, had put in equity of only $812,745.[32] He knew that the remainder of the construction money had come from one source: Goel's loan. Deol simply had no reasonable basis to think that Econergy might somehow over pay on Goel's loan.

Also, there was no urgency to any of Deol's concerns in mid-2013. At most, there were minor accounting matters that needed to be finalized and a decision made regarding which remedies to pursue on the plant performance issue. Seizing the corporation and diverting the plant's revenues were not among Deol's lawful options for dealing with those concerns.

### 19. Following the events of early 2013, has Deol engaged in actions that violated his fiduciary duties to Goel and to Econergy?

Subsequent to his takeover, and except when challenged by Goel's attorneys or ordered by the undersigned, Deol appears to have continued to treat Econergy as a solely owned business and his personal funding source.

Following Deol's takeover, Econergy has received over four years of revenue from PSPCL, amounting to more than $1 million dollars.[33] Annual operating costs for the plant were estimated to be approximately 1M Rupees (less than $25,000/year), and Econergy has paid no rent and made no payments on its construction loan during those four years. In short, Econergy should have accumulated a substantial sum during that time.[34]

Yet, Deol apparently now claims that the corporation has no funds. However, he has moved Econergy funds to other bank accounts within his exclusive control, both in India and the U.S., and in the past has transferred Econergy's money to one or more of his other solar ventures. As such, a full accounting of Deol's activities involving Econergy for the past four years is needed. Obviously, any misappropriated funds will be

---

[32] After entering into the Co-Development Agreement, Deol put in $306,000 (if one includes his $31,000 of claimed expenses) and Goel put in $506,745 ($212,745 plus $294,000), for a total of $812,745.

[33] The plant has produced at least 1.1M kwhs each year. With the guaranteed tariff of 17.91 Rupees per kwh, the plant has received revenue from PSPCL of approximately 80 million Rupees since Deol's takeover.

[34] As Deol's wrongful actions caused Goel to institute arbitration proceedings, that fact will be taken into consideration when determining who should be held responsible for the legal expenses incurred by Econergy over the past three and one-half years.

48

ordered returned to Econergy, with interest, and with sanctions where appropriate. Also, as part of that accounting Deol will be ordered to provide copies of any and all documents filed by, or on behalf of, Econergy with any other entity, public or private, whether in India, the U.S., or elsewhere

### E. Relief Ordered In The June 21, 2017, Partial Final Award

Based on the above findings and conclusions, the June 21, 2017, Partial Final Award ordered the following:

**1. Remedies for Econergy's and Deol's Breach of the Loan Agreement.**[35]

**a. For Econergy's Breach of the Loan Agreement:**

As of July 1, 2016, Goel's loan to Econergy had fully matured, with the outstanding balance due and owing at that time: "The unpaid portion of the principal amount of the loan will be paid as a balloon payment after 48 months from July 1, 2012." [Loan Agreement at §2.5.2.] Econergy then defaulted by not paying the outstanding balance within ninety (90) days of that maturity date, i.e., by October 1, 2016. [Loan Agreement at §2.5.3]

The amount advanced by Goel to Econergy under the Loan Agreement was shown to be $997,716. However, as noted above, Econergy will be granted a credit for the PSPCL revenue currently held in the Axis Bank account, i.e., 15,188,169.87 Rupees or $235,183.80 as of the June 15, 2017, exchange rate [64.58 ₹/$]. Econergy is also granted a credit for the $71,731.04 placed into Econergy's Morgan Stanley account in early 2013, and those funds may now be transferred to Goel as a partial repayment of loan principal.

As such, the unpaid loan principal is determined to be $690,801.16 and a Partial Final Award is hereby entered in favor of Prabhakar Goel, an individual, and against Econergy, Inc., a California corporation, for that amount.

As the funds in the Axis Bank account have not yet been repatriated, Deol and his agents, servants and employees, are hereby ordered to take no action to encumber, reduce, or in any way diminish or devalue the funds currently in the Axis Bank account, and they are ordered to cooperate fully in the repatriation of these funds to Goel in the United States.

////////

---

[35] Having determined that Goel has no individual liability to Deol on any of Deol's claims, and that Goel's only possible liability is to Econergy on a very minor issue (the steel and cables issue, which issue can be handled as part of the later overall accounting), the amount of both Econergy's and Deol's obligations under the Loan Agreement will be determined at this juncture, and relief ordered, apart from the parties' other liabilities, most of which will require a further accounting by an independent accountant.

**b. For Deol's Breach of his Guarantee under the Loan Agreement:**

As noted, irrespective of the money placed in the Axis Bank account in 2012 and 2013, and the money placed in the Morgan Stanley account in 2013, Econergy was in default under the Loan Agreement as of October 1, 2016. As such, under the provisions of his personal guarantee, Deol became liable at that time for prompt payment of 51% of that outstanding balance: " . . . Borrower and Guarantor will be respectively liable for prompt payment and Lender will be entitled to invoke any and all guarantees and possess any and all collateral provided as Security . . ." [Loan Agreement at §2.5.3).

Deol has made no payment to Goel under his personal guarantee, and thus a Partial Final Award is hereby entered in favor of Prabhakar Goel, an individual, and against guarantor Jaspal Singh Deol, an individual, in the amount of $352,308.59 (51%, of Econergy's current obligation under the Loan Agreement, as determined above).

Although Goel is also entitled, under the Loan Agreement, to immediate possession of the security for Deol's guarantee (Deol's Econergy shares and his land under the plant), Deol will be granted thirty days to make good on his personal guarantee, if he wishes to avoid a surrender of the pledged security. If the sum of $352,308.59 is paid within thirty days of the date of this Corrected Partial Final Award, Deol will be deemed to have satisfied his personal guarantee, and will not be required to turn over the pledged security. However, if this sum is not paid within thirty calendar days of the date of this Corrected Partial Final Award, Deol is ordered to immediately transfer to Goel the pledged security, i.e., his shares in Econergy and the land on which the plant is located. Deol shall be responsible for any costs associated with making those transfers. Goel shall cooperate in these transfers to the extent his cooperation is needed for Deol to effectuate them.[36]

Also, pending further order of the undersigned, Deol and his agents, servants, and employees are ordered to not transfer, encumber, hypothecate, or in any way diminish or decrease the value of either of the pledged securities.

Should Deol make good on his personal guarantee, Econergy will receive a credit, as a partial satisfaction of the above Award, for the amount paid by Deol.

/ / / / / / /

/ / / / / / /

/ / / / / / /

---

[36] If these two items of security are transferred to Goel, ultimately Deol will be entitled to receive a credit from Goel to the extent the fair market value of the land and of the shares (measured as of the date each is turned over) exceeds Deol's obligation under his personal guarantee. Any such credit will be determined and ordered as part of any Final Award issued herein.

### 2. Remedies for the Other Proven Breaches:

#### a. Deol's Liability to Econergy or to GFV:

##### (1) For Deol's Dealings with Econergy's Revenues and Assets:

The undersigned finds it difficult if not impossible to believe that, in the four years following Deol's May 2013 seizure of Econergy, all corporate revenue has been expended on normal and appropriate corporate needs. During those four years, PSPCL payments to Econergy totaled over $1M, and yet Econergy was not paying rent for the land and was not making payments on its construction loan.

A full and independent accounting of all of Deol's dealings, financial and otherwise, with or on behalf of Econergy, from May 2013 to date is hereby ordered. That accounting will include, of course, a determination of all PSPCL payments made to Econergy during that time, as well as all other revenue received by Econergy.[37] The accounting will also determine all corporate expenditures during that time (including, but not limited to, payments to Surinder Singh, Sanjay Arora & Associates, Amrita Kaur, and to attorneys for Econergy), the documentation for those expenditures, and will include the accountant's recommendations as to the appropriateness of those expenditures.

The independent accountant will have access to the agreed-upon exhibits from the arbitration hearing.[38] After reviewing those exhibits, the accountant may, but is not required to, request that Deol first render his own accounting of these matters. Also, the accountant may request additional information or documents from counsel. Any such request for additional information shall be directed to the Arbitrator for referral to counsel; if there is a disagreement among counsel as to whether the requested additional information should be furnished to the accountant, that dispute will be heard and resolved by the undersigned.

Ultimately, the accountant will issue a report (or reports) regarding the matters covered by the accounting. Counsel will be given the opportunity to comment, at a hearing, on the accountant's final report(s) and recommendations, before the undersigned makes final decisions regarding the same.

##### (2) Deol's Obligation to Pay Econergy $4,473.00 for the Balance Due on his Equity Contribution to Econergy:

As discussed above, the Co-Development Agreement allowed for a second capital call of $600,000, of which Deol was to contribute $306,000. That call was made, but the

---

[37] Deol also contends that, after December 31, 2011 (i.e., after the period covered by the $31,000 of expenditures covered by the Loan Agreement), he has paid additional Econergy expenses from his personal funds. Deol may account to the independent account for these claimed expenditures.

[38] Claimants/Counter Respondents have timely designated exhibits for the accountant to review; Respondents/Counter-Claimants have not designated any additional exhibits for the accountant's review.

Loan Agreement allowed Deol to contribute only $275,0000, provided he accounted for the $31,000 shortfall by December 31, 2011.

His accounting needed to document the corporate expenses he paid between the making of the Co-Development Agreement (June 7, 2011) and the time of the Loan Agreement (November 28, 2011). His belated accounting [#1694] revealed a shortfall of $4,473.00 on his $31,000 equity obligation. An award of that amount is hereby entered in favor of Econergy, Inc., against Jaspal Singh Deol, an individual.

### (3) For Deol's Obligation to GFV under the Option to Purchase:

If GFV exercised its option to purchase, Deol was obligated to transfer to GFV one-half of his land for $300,000. GFV timely exercised its option in June of 2012, and was ready, willing, and able to perform; Deol, however, did not perform.

If Deol satisfies his personal guarantee, as per §VI 1(b) above, and retains the land, GFV will then have an election of remedies for Deol's breach of the purchase option: GFV may either pursue breach of contract damages or it may request specific performance of its option. That election of remedies shall be made within thirty (30) days of when it is known whether Deol has made good on his personal guarantee and thereby retained the land.

If specific performance is elected, one half of the land will be ordered transferred to GFV, and GFV will then pay to Econergy, as additional equity, the $588,236 called for by the Loan Agreement ($300,000 on behalf of Deol and $288,236 on behalf of GFV to preserve their 51:49 equity ratio), which amount will then be applied to reduce Econergy's outstanding loan balance to Goel.

Should Deol not perform on the monetary portion of his personal guarantee and thus be required to transfer the pledged security to Goel, Deol will no longer be capable of specifically performing the option agreement, and GFV will be limited to a damages remedy.

### (4) For Deol's Obligation to Account to Econergy for any Interest Received on the IREDA Bank Guarantees:

Deol has yet to account to Econergy for the interest he received on the bank guarantees Econergy furnished to IREDA, whether earned during the time they were held by IREDA or after the return of two of the guarantees. He is hereby ordered to render an accounting to the neutral accountant of the sums he received as interest on the bank guarantees, and once the amount is established, to pay that amount to Econergy.

///////

///////

**b. Determining Goel's Liability to Econergy for Steel and Cables:**

An accounting of the purchase, delivery, and distribution of the structural steel and cables for the Ludhiana project is hereby ordered, with the assistance of the independent accountant, to determine whether Goel owes any monies to Econergy with regard to those items. If requested by the independent accountant, Goel is to render an initial accounting of the purchase, delivery, and distribution of the structural steel and cables for the Ludhiana project, as well as the payments made to Econergy by any of his other Indian solar projects for those materials.

**3. Appointment of the Independent Accountant:**

Joseph Anastasi of the Berkeley Research Group, LLC, is hereby appointed as the independent accountant to perform the accountings ordered above, and to make report(s) and recommendations to the undersigned. Goel and Deol are to sign the accountant's standard retainer agreement and share equally in the cost of that accountant's work, subject to later reallocation by the undersigned. Counsel and the parties are not to have contact with the accountant other than through the undersigned or as agreed upon by both counsel.

**F.   The Further Proceedings Ordered in June 21, 2017, Partial Final Award**

The June 21, 2017, Partial Final Award required that further proceedings be held on the following matters:

**1.   To Determine Deol's Performance of his Loan Guarantee:**

A hearing will be held in thirty days to determine whether Deol has performed his personal guarantee under the Loan Agreement. Should Deol make that $352,308.59 payment, he will not be required to turn over the security for that guarantee, and Econergy will receive a corresponding credit against its obligation to Goel under the Loan Agreement.

If the payment is made, GFV will then have thirty (30) days to elect its remedy (damages or specific performance) for Deol's breach of the land sale option

If the payment is not made, an immediate turn over of the security to Goel will be ordered, and, in that case, GFV will be limited to a damages remedy for Deol's breach of the option to purchase.

Also, if the security is turned over to Goel, Econergy will receive a credit against its obligation to Goel in the amount thereby satisfied under Deol's personal guarantee, i.e., $352,308.59 (assuming the value of the security is equal to, or exceeds, that amount).

FURTHER PARTIAL FINAL AWARD

**2. Regarding the Status of the Ordered Accountings:**

The hearing in thirty days will also include an initial status report from the neutral accountant.

**3. Following Completion of the Accountings:**

Once the independent accountant's work is completed, a further hearing will be held to determine the amount(s) due on the following liabilities, which amounts will be set forth in the next Partial Final Award. That next Partial Final Award will also determine whether any of the obligations should be offset against others:

    a.   What amounts, if any, Deol owes to Econergy for misappropriated corporate funds after May 2013, and whether interest and sanctions on those sums will be ordered. It will also determine whether any of the additional remedies requested by Goel and GFV (see Relief Requested at pages 26 and 27, above) are warranted under our facts;

    b.   What amount, if any, Goel owes to Econergy for surplus steel and cables rerouted to Goel's other Indian solar projects;

    c.   In the event Deol does not make good on his personal guarantee and the two securities are turned over to Goel, what amount Deol is entitled to receive from Goel as the excess value of those securities, i.e., the extent by which their value exceeded Deol's obligation ($352,308.59) under his personal guarantee;

    d.   Whether Deol is entitled to a credit against his obligations to Econergy for having paid, out of his personal funds, corporate expenses after January 1, 2012, and, if so, the amount of that credit.

    e.   The amount of deferred rent Deol is entitled to recover from Econergy;

    f.   The amount, if any, that Deol owes to GFV as breach of contract damages resulting from Deol's non-performance of the land purchase option (if specific performance of that option is not ordered);

    g.   What amount, if any, Deol owes to Econergy for interest received on the IREDA bank guarantees;

    h.   The amount Deol and/or Econergy should pay to Rajeev Ranjan and Niraj Mehta for work performed and for work-related expenses at the Econergy site;

    i.   Any other liabilities and damages not previously ruled upon; and

j. Which party or parties are deemed the prevailing parties in this arbitration and entitled to claim attorneys' fees and costs under the provisions of the Co-Development Agreement and the Loan Agreement, and JAMS Rules.

### III. PROCEEDINGS HELD SUBSEQUENT TO ISSUANCE OF THE JUNE 21, 2017, PARTIAL FINAL AWARD AND PRIOR TO MARCH 16, 2018, FINAL HEARING

Following issuance of the June 21, 2017, Partial Final Award, the following proceedings took place:

**A. August 4, 2017, Hearing to Determine Deol's Performance of his Loan Guarantee:**

The June 21, 2017, Partial Final Award granted Deol thirty days to make good on his personal guarantee under the Loan Agreement by paying $352,308.59 to Goel, and thereby avoiding an order to turn over the property he had pledged as part of his personal guarantee, i.e., the land under Econergy's Ludhiana solar farm and his 51% shareholder interest in Econergy, Inc.

A hearing was held on August 4, 2017, to determine whether Deol had performed on his guarantee. At that hearing it was determined that he had not made the required monetary payment, and that he did not intend to make that payment. As such, on August 4, 2017, the undersigned ordered Deol to turn over to Goel the pledged land and the shares. [See "Orders Following August 4, 2017, Hearing," Attachment A hereto.] Subsequently, Deol asked for reconsideration and modification of the August 4, 2017 orders; the modification request was denied on October 10, 2017. [See "Orders on Request for Modification," Attachment B hereto.]

**B. August 16, 2017, Hearing on Claimants' Request for Injunctive Relief regarding Deol's Legal Action in India:**

On or about August 14, 2017, Claimants filed a request for injunctive relief regarding a lawsuit Deol was pursuing in India. Specifically, Claimants contended that Deol was engaged in litigation in India, purportedly on behalf of both Econergy, Inc. and himself, which sought to re-litigate the very issues that had been heard and ruled upon in this arbitration. A telephonic hearing was held on August 16, 2017, regarding the requested injunctive relief. From the evidence presented, including a copy of the pleadings in the India action, the undersigned concluded that Deol indeed was attempting to litigate the same claims that he had pursued in this arbitration. As those claims were encompassed by the mandatory arbitration clauses in the Co-Development Agreement and in the Loan Agreement, the undersigned issued certain orders enjoining Deol from further pursuit of that Indian action. [See "Order Enjoining Actions Undertaken by Jaspal Singh Deol in Violation of Orders Issued in this Proceeding," issued August 16, 2017, Attachment C hereto.]

**C.  December 18, 2017, and January 12, 2018, Hearings to Determine Value of Deol's Land and his Econergy, Inc. Shares:**

The August 4, 2017, Order [Attachment A hereto] required Deol to transfer to Geol the Ludhiana land and his 51% shareholder interest in Econergy, Inc., in satisfaction of Deol's personal guarantee under the Loan Agreement.  As the value of those two items could exceed the amount Deol owed under his guarantee ($352,308.59), it was necessary for the undersigned to determine the value of the transferred items, and to grant any credit that might be due to Deol.  Each party submitted briefs and expert valuation reports on each of the items, and hearings were held on December 18, 2017, and January 12, 2018. The parties stipulated that the items were to be valued as of October, 2017.

On February 20, 2018, the undersigned issued his rulings on the value of the two transferred items.  ["Further Partial Final Award Determining Value of Jaspal Deol's Interest in Econergy, Inc., and Value of Ludhiana Land," Attachment D hereto.]  The February 20, 2018, Award determined that the value of the two transferred items exceeded the amount of Deol's guarantee by $624,291.41, and that Deol was entitled to a credit of that amount in this proceeding.

**D.  January 12, 2018, Hearing on Goel's Request for Further Injunctive Relief:**

On or about December 17, 2017, Claimants/Counter-Respondents filed a request for additional injunctive relief regarding the legal action being pursued by Deol in India, as well as regarding Deol's alleged non-compliance with the August 4, 2017, turn-over orders for the pledged property.  These matters were argued during the January 12, 2018, hearing.  Based on good cause shown, the undersigned issued orders on February 20, 2018, further enjoining Deol's pursuit of his legal action in India and ordering Deol to take certain actions to complete the transfer of the two pledged items.  ["Further Injunctive Orders Directed to Jaspal Singh Deol," Attachments E hereto.]

### IV.  INCORPORATION OF ALL AWARDS AND ORDERS ENTERED SUBSEQUENT TO THE JUNE 21, 2017, PARTIAL FINAL AWARD AND PRIOR TO MARCH 16, 2018, FINAL HEARING

The above-described orders and awards issued subsequent to the June 21, 2017, Partial Final Award (Attachments A through E hereto) are incorporated into this Further Partial Final Award and made a part of the orders herein.

///////

///////

## V.   THE MARCH 16, 2018, FINAL HEARING
### AND FURTHER PARTIAL FINAL AWARD

A further hearing on all remaining issues (other than the amount of attorneys' fees and costs to be awarded to the prevailing party) was held on March 16, 2018, at JAMS Silicon Valley Resolution Center.   Robert J. Yorio, Esq., of Carr & Ferrell LLP, appeared on behalf of Claimants/Counter-Respondents Prabhakar Goel and Goel Family Ventures I, LP.  Eliezer M. Cohen, Esq., of Gavrilov & Brooks, appeared on behalf of Respondents/Counter-Claimants Jaspal Singh Deol and Econergy, Inc.  Prabhakar Goel was personally present and gave testimony; Jaspal Singh Deol appeared and testified telephonically.  The proceedings were reported and transcribed.

The following matters were heard and submitted for decision:

a.  **What amount, if any, Goel owes to Econergy for surplus steel and cables allegedly diverted to Goel's other Indian solar projects**

During the 2016 hearings, Deol alleged that Goel had misappropriated or otherwise diverted construction materials, belonging to Econergy, to Goel's other Indian solar projects.  Although the bulk of these claims were rejected in the June 21, 2017, Partial Final Award, the evidence revealed some minor accounting issues with regard to the structural steel and the cables purchased for this project.  As a result, the June 21, 2017, Partial Final Award ordered the following: "An accounting of the purchase, delivery, and distribution of the structural steel and cables for the Ludhiana project is hereby ordered, with the assistance of the independent accountant, to determine whether Goel owes any monies to Econergy with regard to those items.  If requested by the independent accountant, Goel is to render an initial accounting of the purchase, delivery, and distribution of the structural steel and cables for the Ludhiana project, as well as the payments made to Econergy by any of his other Indian solar projects for those materials."

Goel made the ordered accounting to the satisfaction of the independent accountant.  The accountant concluded that all was in order, and that indeed Econergy had realized a small gain ($1,227.00) on the re-sale of cables to Goel's other plants and that, at most, $511 of structural steel was not accounted for.   Given these findings, which are hereby adopted, no further orders are needed with regard to the steel and cables.

b.  **Whether Deol is entitled to a credit against his obligations to Econergy for having paid, out of his personal funds, corporate expenses after January 1, 2012, and, if so, the amount of that credit.**

Deol has maintained that, during the period of January 1, 2012, to September of that same year, he made "out of pocket" cash expenditures on behalf of Econergy, Inc. and should be reimbursed by Econergy for those expenditures.  Deol contends that those expenditure totaled $78,769.40 and he requests a credit in that amount from Econergy.

Goel, however, questions whether those expenses were indeed made, and, if so, the source of the funds. The undersigned had intended for the independent accountant to examine this claim and review whatever documentation Deol could provide regarding the claimed payments; however, that expectation was not conveyed to the accountant. As such, the independent accountant did not review any documentation for these claimed expenditures and did not make recommendations as to whether they appeared to be appropriate corporate expenses and whether they were paid from Deol's own funds.

Exhibit 1694 lists Deol's alleged cash expenditures, including those made during the January 1, 2012, to September 1, 2012, time frame. However, Exhibit 1695, a September 25, 2012, email from Niraj Mehta, indicates that only some of the cash for these payments came from Deol and that the bulk came from Econergy's IDBI bank account: "For around 39 lacs [lakhs] its IDBI account, some 11-12 lacs [lakhs] amount has been paid from Jaspal's account."

Deol has not demonstrated that the corporation was short on available cash at that time. Indeed, pursuant to the Co-Development Agreement, the two principals had just infused additional cash (their remaining capital contributions) of over $600,000 in November and December of 2011, and on January 13, 2012, Goel had made his first loan advance of $724,716. And, he infused another $150,000 on January 18, 2012. In short, it appears that the corporation had available funds and that a large portion of these cash payments came from Econergy's IDBI account. We did not have persuasive evidence that the funds in this IDBI account were Deol's funds, as opposed to Econergy's.

As such, Deol's request for additional reimbursement for cash expenditures allegedly made from personal funds in the January 2010 through September 2012 time frame is denied. It should be noted, too, that Deol has already received a credit (toward his equity contribution that was due in late 2011) for more than the twelve lakhs of cash mentioned by Mehta. [See p. 46, above.]

**c. The amount of deferred rent Deol is entitled to recover from Econergy**

Under the Co-Development Agreement, Deol was entitled to receive rent from Econergy for its use of his land. He was to receive rent of ₹ 1,865,220/year for the first five years, with a 5% increase starting with year six.

Under the Loan Agreement, Econergy's rent obligation would commence once the plant was commissioned, but, under the later Loan Agreement, payments would be deferred until after Econergy had repaid Goel's loan. The plant was commissioned on March 2, 2012; Goel's loan has yet to be repaid.

Deol remained owner of the land until the undersigned ordered him to transfer it to Goel as part of Deol's loan guarantee. That turn-over order was made on August 4, 201 (Attachment A); however, the parties agreed that, for valuation purposes, the transfer date for the property would be October 2017. For consistency, that same date (October 2017) will be used as the end date of Deol's right to receive rent.

Although, under the Loan Agreement, Deol is not entitled to receive the deferred rent until Goel's loan is paid off (i.e., when Goel recovers the balance of his loan from Econergy), the undersigned will determine the rent owing to Deol and will grant him a credit for that amount at this time, as part of the overall "true up" process in this Further Partial Final Award.

The first five years for which rent accrued (March 2, 2012 to March 2, 2017) were at the initial rate of ₹1,865,220/year, for a total of ₹9,326,100. Then, as of March 1, 2017, the rent increased to ₹1,958,481/year. Deol is entitled to seven months of rent (March 1, 2017 through October 1, 2017) at this increased rate for an additional ₹1,142,447. As such, a total rent credit of ₹10,468,547 ($163,357.04) is granted to Deol.

**d. The amount, if any, that Deol owes to GFV as breach of contract damages resulting from Deol's non-performance of the land purchase option**

Given the fact that the land has now been ordered transferred to Goel, and given the fact that GFV would have overpaid for the land if Deol had honored the option, Deol's breach of that option did not financially harm GFV I, LP. As such, no damages are awarded to GFV I, LP on this issue.

**e. What amount, if any, does Deol owe to Econergy for interest he received on Econergy's IREDA bank guarantees?**

There was a conflict in the evidence as to whether the bank guarantees furnished to IREDA drew interest while they were being held by the bank (i.e., before they were either forfeited to IREDA or returned to Econergy), and, if so, what amount of interest was earned, and was it turned over to Econergy?

The five guarantees, each for ten lakhs (1 million Rupees each), were deposited in August of 2010. Three of these were forfeited to IREDA (two in 2011 and one in early 2012), and the remaining two were returned to Econergy on June 11, 2012 [Exh. 25.]

At the March 16, 2018, hearing, Deol testified that interest was not paid on these guarantees while they were being held by the bank pending IREDA's decision to forfeit or return, and that the only interest earned came after the two were returned (i.e., from June 2012 to January 2013). Deol also testified that the $36,500 he placed into Econergy's Morgan Stanley account on January 23, 2013, included all interest he had received on the two guarantees following their release by IREDA.

Deol's former counsel, Ms. Finnerty, apparently told the independent accountant that these guarantees indeed did draw interest while awaiting forfeiture or return. And, the two returned guarantees seem to verify this fact; these two guarantees were for a total of 2 million Rupees, yet the bank returned more than that; it returned ₹2,071,290. The reasonable assumption is that the extra ₹71,290 represented interest earned while they were being held before their return.

We, however, did not have evidence as to the specific rate of interest that was paid on any of these guarantees prior to their forfeiture or return, or the period during which that interest accrued. On the returned guarantees, the amount added was ₹71,290, which is about 3.6% of the face value of those two guarantees, but, again, we do not know the period of time over which that interest accrued, i.e., was it from their initial deposit in August of 2010, or from some later date?

Once returned, the money from the two guarantees drew interest in Deol's own bank account until he transferred the funds to Econergy in January of 2013; that seven months of interest was shown to be ₹18,084.

The amount placed by Deol into Econergy's Morgan Stanley account on January 23, 2013, was $36,500. With the exchange rate then in effect (53.664730 ₹/$), this represented a deposit of slightly less than 2 million Rupees, i.e., ₹1,958,762.6. Obviously, Deol's did not turn over to Econergy any interest he had earned on these two bank guarantees.

The undersigned is satisfied that the bank guarantees drew some rate of interest while being held by the bank awaiting either forfeiture or return to Econergy, and also that the two returned guarantees drew additional interest while being held in Deol's account before he returned them to Econergy. Yet, this interest was not transferred to Econergy.

Deol is ordered to pay to Econergy, Inc. the sum of $3,000.00 as and for reasonable interest earned on Econergy's bank guarantees.[39]

### f.   The amount Deol and/or Econergy should pay to Rajeev Ranjan and Niraj Mehta for work performed and for work-related expenses they incurred on behalf of Econergy

Whatever amounts are currently owed these two individuals are obligations of Econergy, Inc. and should be paid by Econergy, Inc. These amounts are relatively modest, and will not affect the undersigned's earlier determination of the value of Deol's 51% shareholder interest in Econergy.

### g.   What amounts, if any, Deol owes to Econergy for misappropriated corporate funds after May 2013, and whether interest and sanctions on those sums would be ordered

The undersigned, in his June 21, 2017, Partial Final Award, expressed great skepticism regarding Deol's claim that all plant revenue generated during the preceding four years (totaling well over $1 million), had been expended for normal and reasonable corporate needs.

---

[39] The undersigned is not willing to assume, without more evidence, that all the funds residing in Deol's personal account prior to the return of the two guarantees (i.e., ₹307,608) represented interest that he had received from the bank on the guarantees.

In the Loan Agreement, the parties had agreed that operating costs "would be capped at Indian Rupees 1 Million each year," and that "[a]ny extraordinary operating costs over and above the aforesaid cap will require prior written approval from [Goel]." [Loan Agreement at § 2.5.1]  Thus, under the Loan Agreement, the operating costs for those four years should not have exceeded 4 million Rupees (approximately $62,500) without Goel's prior written approval; that approval was neither sought nor obtained.

In an effort to document Econergy's revenue stream and to verify Deol's expenditures, the June 21, 2017, Partial Final Award ordered "[a] full and independent accounting of all of Deol's dealings, financial and otherwise, with or on behalf of Econergy, from May 2013 to date . . . That accounting will include, of course, a determination of all PSPCL payments made to Econergy during that time, as well as all other revenue received by Econergy. The accounting will also determine all corporate expenditures during that time (including, but not limited to, payments to Surinder Singh, Sanjay Arora & Associates, Amrita Kaur, and to attorneys for Econergy), the documentation for those expenditures, and will include the accountant's recommendations as to the appropriateness of those expenditures."

Following his appointment, the accountant attempted to perform the ordered accounting but was frustrated by the information provided by Deol.  For example, in his report[40] he notes that "the presentation of 'inflows' in [Deol's schedule of personal bank transactions] is incomplete [p. 6]" and that "the overwhelming majority of the reported 'outflows' appear to lack a clearly defined business purpose [p. 7]."  When the accountant requested additional information from Deol on various matters, he often found the information inadequate: "this explanation does not reconcile the two accounts"[p. 20] and "[t]his analysis is incomplete" [p. 20].  He also reported that "[t]o date, and not withstanding my requests of Mr. Deol, Mr. Deol has not furnished the cross-referenced documentation in support of the *Compiled Deol Income Statements* [p.13]."  As such, the accountant was unable to determine whether Deol's claimed expenditures were indeed incurred and, if so, were they incurred for proper corporate expenses.

However, the accountant was able to verify the following: (1) that Deol took cash distributions from Econergy's bank accounts in India totaling $452,872[41] and (2) that he removed an additional $578,748 from monies Econergy had repatriated to the U.S.  In total, Deol's cash withdrawals in India and his removal of funds in the U.S. totaled $1,031,620.[42]

---

[40] "Findings of Independent Accountant, Joseph Anastasi," dated November 16, 2017 ("Accountant's Report").

[41] Deol withdrew $526,768, but this sum has been reduced by $73,896 to account for the 4 million Rupees Deol withdrew in early 2013 for one of his other projects, but which he returned to Econergy in 2015.

[42] According to Deol, after taxes and operating expenses, the corporation had available cash of only $819,230 [Schedule 4(A) to Accountant's Report].  Yet, he clearly withdrew at least $200,000 more than that amount, i.e., $1,031,620.

According to Deol's own accounting [Schedule 4(A) to Accountant's Report], during those four years (May of 2013 through June of 2017), Econergy had total gross revenue of ₹91,795,105 or over $1.43 million (using an average conversion rate of 64 ₹/$). This revenue inflow was verified by the accountant. Also according to Deol, the corporation paid taxes totaling ₹11,718,706 or approximately $183,105 during those same four years.[43] This means, in general terms, the corporation had, after taxes, approximately $1.25 million of available funds, of which Deol withdrew $1,031,620, meaning that the corporation had at least $215,000 available for its operational expenses. That amount is over three times the amount the parties agreed would be needed for operating expenses during those four years.

Further, Deol's listing of the "operating expenses" allegedly incurred by the corporation in those four years [Schedule 4(A)] was also problematic. For example, he shows a 3 million Rupee expense in 2013 for "Invocation of Bank Guarantee." However, these bank guarantees (the purchase of which Goel funded in 2010 as part of his equity contribution) were forfeited to IREDA in late 2011 and January of 2012. Why they were considered a corporate "expense" in the latter half of 2013 was not clear. Also, Deol's expense records show Econergy paying him rent on his land, despite the fact that no rent was to be paid until after Goel's loan was repaid. Also very troubling is that his claimed operating expenses on Schedule 4(A) were twice what he reported on Econergy's tax returns, at least during the May 2013 through March 2015 time frame. [See Table 4 of Accountant's Report.]

Deol also stated in the March 16, 2018, hearing that all of the $578,748 he had removed from the repatriated Econergy funds went toward legal expenses, and that even some of his Indian cash distributions went toward legal expenses. However, he did not give a breakdown of what portion of the Indian distributions allegedly had gone toward legal expenses.

When examining the propriety of Deol's use of corporate funds for legal expenses, it bears repeating that these legal proceedings likely never would have occurred if Deol had not unilaterally commandeered the corporation and caused it to stop making loan payments to Goel. If Econergy had continued its loan payments (which were required only when Econergy had available funds), and if Deol had continued to involve Goel in corporate affairs, all the other issues (such as what to do about plant performance) likely would have been resolved without the need for "scorched earth" arbitration.

Despite his precipitous actions that prompted this arbitration, Deol now argues that up to three-quarters of the corporate funds he expended on legal matters should be deemed a proper Econergy expense. Not surprisingly, Goel disputes this argument and

---

[43] The actual tax returns show a lesser amount of taxes paid.

requests that *all* claimed legal expenses be deemed Deol's personal responsibility, without apportionment made between personal and corporate legal expenses.[44]

On balance, the undersigned deems it appropriate to treat one-half of Deol's withdrawals from the repatriated Econergy funds as incurred for allowable corporate legal expenses. A total of $578,748 was removed by Deol from the repatriated funds; as such, $289,374 will be allowed as a corporate expense.

As for the cash distributions Deol took in India ($452,872), none of these withdrawals are deemed to have been for proper corporate expenses. And, as to the expenses that were paid directly from the non-withdrawn funds in the two Indian bank accounts, all amounts above the parties' agreed-upon 1 million Rupees per year are disallowed.

In sum, it is determined that Deol improperly took cash distributions of $452,872 from Econergy in India and also improperly took a personal distribution of one-half of the funds he removed from the repatriated Econergy funds in the U.S. (i.e., that he took improper cash distributions of $289,374 from Econergy's repatriated funds). As for allowable operating expenses in India, it is deemed that the corporation required 1 million Rupees per year for the four years in question; expenditures above that amount are also deemed to have been improper distributions taken by Deol. The amount of funds reasonably available to the corporation after payment of taxes and after Deol's cash withdrawals was roughly $215,000. After allowing for 1 million Rupees per year for four years (i.e., $62,500) as reasonable operating expenses for those four years, the balance ($152,500) is deemed to have been another improper distribution taken by Deol. As such, the total distributions improperly taken by Deol is determined to be $894,746.

However, as ownership of the corporation has now been ordered transferred to Goel, and as the value of the corporation at the time of the ordered transfer has already been determined, rather than order Deol to return the misappropriated funds to Econergy, it is deemed appropriate to treat those distributions as having been taken on behalf of *both* shareholders, which were to be allocated between the shareholders based on their respective interests in the corporation at the time of those distributions (i.e., Deol at 51% and GFV at 49%). As such, Deol is ordered to pay to GFV 49% of the improper distributions he took from Econergy, i.e., $438,425.54.

GFV is also awarded interest, at the legal rate, on its delayed receipt of these distributions, i.e., from the time each distribution was taken by Deol (and not shared with GFV) to the time of the Final Award herein. Claimants' counsel is to propose that interest calculation in conjunction with its moving papers on its fees and costs motion; Respondents may make their arguments regarding that calculation in their opposition papers.

[44] Goel made repeated attempts earlier in this matter to require Deol to reveal what portion of his legal expenses was being incurred on behalf of his individual claims and what portion was being incurred on behalf of Econergy. That information was not forthcoming in a timely fashion, and, ultimately, was precluded, as a discovery sanction.

Claimants' request that additional monetary penalties be imposed on Deol is denied.

**h. Which, if any, of the additional remedies requested by Goel and GFV (see Relief Requested at pages 27 and 28, above) are warranted under our facts?**

During the March 16, 2018, hearing, Goel and GFV requested two additional remedies: (1) that a constructive trust be imposed on the assets of one of Deol's other Indian power companies, Allianz Ecopower Private Ltd. ("Allianz Ecopower"), and (2) that an order issue requiring Deol to indemnify Goel, GFV, and Econergy for interest and/or penalties that may be imposed on them by U.S. and/or California taxing authorities as a result of Deol's failure to timely file tax returns on behalf of Econergy.

The following orders are made:

1. The request for imposition of a constructive trust on the assets of Allianz Ecopower is denied, without prejudice;

2. The request for an order requiring Deol to indemnify Goel, GFV, or Econergy in the event they are subject to interest payments and/or tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017 is granted, and the undersigned will retain jurisdiction to determine the amount of any such indemnification, if needed.

**i. Which party or parties are deemed the prevailing parties in this arbitration and entitled to recover attorneys' fees and costs under the provisions of the Co-Development Agreement and the Loan Agreement.**

Prabhakar Goel and Goel Family Ventures I, LP, having obtained the greater relief in this matter, including having been awarded the bulk of the relief they requested and having defeated virtually every claim tendered by Jaspal Singh Deol and Econergy, Inc., are deemed the prevailing parties in this matter. As such, they may recover from Deol and Econergy their reasonable attorneys' fees and costs incurred in the matter. The amount of those attorneys' fees and costs will be determined by the process outlined in Section VI, below.

**j. Summary of monetary awards to date in this matter:**

The final true-up and set-off of the various amounts awarded in this arbitration will need to await the determination of attorneys' fees, costs, and interest; however, the monetary awards made to date in this matter may be summarized as follows:

1. Goel is to pay Deol $624,291.41 for the excess value of the properties (land and corporate shares) Goel received from Deol under Deol's personal

guarantee. [Attachment D] However, said payment will not become due until completion of the transfers of the land and the shares to Goel;

2. Econergy is to pay Deol $163,571.04 as and for deferred rent under its lease with Deol [p. 59 above];

3. Deol is to pay to GFV the sum of $438,425.54, representing 49% of the distributions that Deol improperly received from Econergy, plus interest on those distributions at the legal rate [p. 63 above].

4. Deol is to pay Econergy $3,000.00 as and for interest he received on the bank guarantees purchased by Econergy for its IREDA application [p. 60 above];

5. Deol is to pay Econergy $4,473.00 as the balance due on his equity contribution that was required in late 2011 [pp. 51-52 above];

6. Econergy owes Geol $690,801.16 under the Loan Agreement, i.e., the balance due on Geol's loan following application of Deol's personal guarantee [Attachment D].

**k. Summary of specific performance and injunctive relief ordered to date:**

The June 21, 2017, Partial Final Award ordered Deol to perform on the personal guarantee he had given to Goel as part of the Loan Agreement. Although Deol was already in default on this guarantee by the time of the June 21, 2017, Partial Final Award, that Award gave him an additional thirty days to perform on his guarantee.

Deol, however, refused to make the monetary payment, and thus the undersigned ordered Deol to turn over to Goel the property he had pledged as part of that guarantee (his shares in Econergy and his land underlying the Econergy solar farm). [See "Order Following August 4, 2017, Hearing," Attachment A hereto].

Deol has not complied with the August 16, 2017, orders [Attachment A] and has also pursued litigation in India, on behalf of both Econergy and himself, seeking to re-litigate the matters arbitrated and ruled upon in this proceeding.

As a result, the undersigned has issued subsequent and more specific orders requiring Deol to comply with his obligations in this matter (including turning over to Goel the operations of the solar plant and the land thereunder), and to refrain from attempting to collaterally attack the rulings herein by way of legal action in India. [Attachments C and E hereto].

As of the writing of this Further Partial Final Award, Deol has not fully complied with the above-described orders. Enforcement through the courts appears needed.

FURTHER PARTIAL FINAL AWARD

**k.  Judicial enforcement of this Partial Final Award:**

As the remaining matters in this arbitration involve only attorneys' fees, costs, and interest (see Section VI, immediately below), and as Deol's non-compliance with the orders and awards herein appears on-going, it is the intention of the undersigned that all orders and awards issued to date in this matter, as now incorporated into this Further Partial Final Award, be subject to proceedings under Code of Civil Procedure § 1285 at this time.  See, e.g., *EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058 (confirmation of Partial Final Award, followed by later confirmation of fees and costs award, procedurally appropriate).

## VI.  REMAINING PROCEEDINGS: ATTORNEYS' FEES, COSTS, AND INTEREST

Claimants/Counter-Respondents shall have twenty (20) days from the date of this Partial Final Award within which to submit their claimed fees and costs, and Respondents/Counter-Claimants shall have ten (10) days from receipt thereof to file opposition, if any.  Claimants/Counter-Respondents shall then have the right to make a reply within five (5) days of receipt of any opposition.  Once these papers are received by the Arbitrator, the Arbitrator will deem the fees and costs issue submitted for decision on the papers, unless any party, in its papers, requests a hearing.

Claimants/Counter-Respondents, in their moving papers, may also propose a calculation of the interest that is owing to GFV for its delayed receipt of its portion of the distributions that were taken by Deol.  Opposition and reply shall be on the same schedule as with the fees and costs motion.

Once attorneys' fees, costs, and interest are determined, the amounts awarded will be incorporated in a Final Award herein.

Dated: April 30, 2018.[45]

_____
Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator

---

[45] This Partial Final Award was ready for issuance within thirty (30) days of the March 16, 2018, hearing; however, its release was delayed pending the parties' payment of outstanding JAMS fees.

# EXHIBIT G

1  ROBERT J. YORIO (SBN 93178)
   yorio@carrferrell.com
2  ILENE H. GOLDBERG (SBN 168051)
   igoldberg@carrferrell.com
3  CARR & FERRELL LLP
   120 Constitution Drive
4  Menlo Park, California 94025
   Telephone No.: (650) 812-3400
5  Facsimile No.: (650) 812-3444

6  Attorneys for Plaintiffs
   ECONERGY, INC., PRABHAKAR GOEL and
7  GOEL FAMILY VENTURES I LP

**(ENDORSED)**
**FILED**
JAN 1 0 2019

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY

R. ARAGON

8

9

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 IN AND FOR THE COUNTY OF SANTA CLARA

12                            UNLIMITED JURISDICTION

13  ECONERGY, INC., a California          )   CASE NO. 17- CV-314877
    corporation; GOEL FAMILY             )
14  VENTURES I LP, a partnership, and    )   [PROPOSED] ORDER TO CONFIRM   TCZ
15  PRABHAKAR GOEL, an individual,       )   FINAL ARBITRATION AWARD
                                          )
16              Plaintiffs,                )   Date:    **January 10, 2019**
                                          )   Time:    **9:00 a.m.**
17         v.                             )   Dept.:   **6**
                                          )   Judge:   **Honorable Theodore C. Zayner**
18  JASPAL SINGH DEOL, an individual;    )
19  and DOES I through XX, inclusive,    )   Date Action Filed: August 22, 2017
                                          )   Trial Date: Not Yet Set
20              Defendants.               )
                                          )
21                                        )

22

23         This matter came on for hearing on Thursday, January 10, 2019, on the Motion of Plaintiffs

24  Goel Family Ventures I LP and Prabhakar Goel for an Order to Confirm the Final Arbitration

25  Award in the Arbitration entitled *Goel, et al. v. Econergy, et al.*, JAMS Case No. 1110016363,

26  entered on November 16, 2018. After consideration of oral argument by counsel and the briefs

27  submitted by the parties, and good cause appearing therefor,

28         IT IS HEREBY ORDERED that:

**135**

1

2                          **FINAL ARBITRATION AWARD**

3          The Petition to Confirm the Final Arbitration Award of Plaintiffs Goel Family Ventures I

4    LP and Prabhakar Goel is GRANTED and the November 16, 2018 Final Arbitration Award is

5    hereby confirmed as a Judgment;

6                              **MONETARY RELIEF**

7          1.       Plaintiff Prabhakar Goel is awarded $690,716 against Econergy, Inc. for the balance

8    due under the Loan Agreement as of June 21, 2017.  Plaintiff Prabhakar Goel is awarded

9    $97,078.71 in interest from the time of the initial Partial Final Award (June 21, 2017) (Final Award,

10   Section II.A);

11         2.       Defendant Jaspal Deol is awarded $624,291.41 against Plaintiff Prabhakar Goel

12   representing the value of Defendant Jaspal Deol's interest in Econergy's shares and the Ludhiana

13   land payable once the land and shares have been fully transferred to Plaintiff Prabhakar Goel  after

14   being offset by an amount of $352,308.59 which is the amount awarded against Deol to Goel for

15   the Deol's guarantee on the defaulted loan (Final Award, Section II.B);

16         3.       Plaintiff Goel Family Ventures I LP is awarded $438,425.54 against Defendant

17   Jaspal Deol representing 49% of the dividends Defendant Jaspal Deol wrongfully took and withheld

18   from Goel Family Ventures, plus interest of $74,046.93 (Final Award, Section II.C);

19         4.       Plaintiffs Prabhakar Goel and Goel Family Ventures are awarded $985,788.72 in

20   attorneys' fees against Defendant Jaspal Deol and Econergy jointly and severally (Final Award,

21   Section IV);

22         5.       Plaintiffs Prabhakar Goel and Goel Family Ventures are awarded $232,869.66 in

23   costs (including expert fees and arbitration fees) against Defendant Jaspal Deol and Econergy

24   jointly and severally (Final Award, Section IV);

25         6.       Defendant Jaspal Deol is awarded $163,357.04 against Econergy for rent due from

26   Econergy for its use of the Ludhiana land from the time of plant commissioning (March 2, 2012) to

27   October 1, 2017 (the valuation date for Defendant Jaspal Deol's transfer of the land to Plaintiff

28   Prabhakar Goel) (Final Award, Section II.D);

7.    Plaintiff Econergy, Inc. is awarded $4,473 against Defendant Jaspal Deol for the balance due from Defendant Jaspal Deol on Econergy's second capital call in late 2015 (Final Award, Section II.E); and

8.    Plaintiff, Econergy, Inc. is awarded $3,000 against Defendant Jaspal Deol for the interest Defendant Jaspal Deol received on bank guarantees Econergy had deposited with IREDA (Final Award, Section II.F).

9.    Defendant Jaspal Deol is required to indemnify Plaintiffs Prabhakar Goel, Goel Family Ventures and Econergy in the event they are subject to interest payments and/or tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017, and the JAMS Arbitrator retains jurisdiction to determine the amount of any such indemnification, if needed (Final Award, Further Partial Final Award, Section IV.b at p. 64).

## INJUNCTIVE RELIEF

A.    Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

1.    Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

2.    Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

3.    Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.    Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

1.    Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

2.    Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff

---

[1]  The land consists of eleven parcels totaling approximately 10.2 acres, described as Khasra No. 67/20/2, 21, 68/23, 24, 25, 74/3, 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

Prabhakar Goel, or his designee, three (3) original properly executed powers of attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or his designee;

3. Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar power plant and its operations, including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and ( c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

4. Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business and its dealing with PEDA, IREDA and PSPCL, including all tax returns (and supporting documents therefor) filed in the U.S. and all documents pertaining to Econergy in India, and (b) original documents regarding Deol's purchase and operation of the land underlying the Econergy Ludhiana plant;

5. Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five (5) days, three fully-executed and notarized originals of the Affidavit which is attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated February 20, 2018; and

6. To immediately instruct Surinder Singh Sandhu to refrain from accessing or attempting to access Econergy, Inc.'s bank accounts.

C. Regarding Defendant Jaspal Deol's Indian Court Actions:

1. Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's

Ludhiana solar power plant;

2. Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in Econergy, Inc.; that he no longer has the legal capacity to pursue actions on behalf of Econergy, Inc., and that any individual claims he possesses from the planning, development, and operation of Econergy's Ludhiana solar plant are matters that he is required to submit to binding arbitration in lieu of any court action; and

3. Defendant Jaspal Deol, and any person or persons acting at his behest or on his behalf, including agents, employees, representative, and all persons acting in concert or participating with them, are ordered to forthwith instruct any Indian counsel acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith withdraw or dismiss the entire action pending in the court of Sh. K. K. Kareer Commercial Court Ludhiana, Punjab, India, including all claims on behalf of Econergy, Inc. and claims on behalf of himself individually regarding the planning, development, and operation of Econergy's Ludhiana solar plant.

IT IS SO ORDERED.

DATED: **JAN 1 0 2019** _____

**Theodore C. Zayner**
_____
JUDGE OF THE SUPERIOR COURT

[PROPOSED] ORDER TO CONFIRM FINAL ARBITRATION AWARD (CASE NO. 17-CV-314877)

# EXHIBIT H

# JAMS ARBITRATION
## Case No. 1110016365

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

<div align="center">Claimants,</div>

vs.

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

<div align="center">Respondents.</div>

_____/

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

<div align="center">Counter-Claimants,</div>

vs.

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

<div align="center">Counter-Respondents.</div>

_____/

<div align="center">

**FINAL AWARD**

</div>

THE UNDERSIGNED, having been duly appointed as the arbitrator in this matter, and having examined the submissions, proofs, and allegations of the parties, finds, concludes, and issues this Final Award, resolving all issues presented in this matter.

The Final Award consists of these eight pages, together with (1) the attached Further Partial Final Award dated April 30, 2018 and (2) the attached Order on Attorneys' Fees, Costs and Interest, dated November 16, 2018.

## I.    SUMMARY OF AWARDS AND ORDERS INCORPORATED HEREIN

The following is a description of the previous Orders and Awards issued in this matter. These Orders and Awards are attached hereto and hereby incorporated into this Final Award. The relief granted in those previous awards is now made part of this Final Award; that relief is summarized in Sections II, III, and IV, below.

### A.   The "Partial Final Award," issued June 21, 2017:

The initial evidentiary hearings consumed eleven days in 2016 and 2017, and resulted in the issuance of a Partial Final Award ("PFA") on June 21, 2017. That PFA determined, *inter alia*:

1. That Econergy, Inc. ("Econergy") had defaulted on the loan it had received from Prabhakar Goel ("Goel") under the Loan Agreement and that Econergy owed Goel $690,801.16 on that loan;

2. That Jaspal Singh Deol ("Deol") had personally guaranteed 51% of that loan and, because Econergy was in default, Deol owed Goel $352,308.59 under his guarantee. Deol was given thirty days to make good on his guarantee or run the risk of a turnover order for the shares and land he had pledged as part of his guarantee;

3. That an independent accountant was appointed to help determine, *inter alia*, whether Deol had improperly taken funds from Econergy after May of 2013 (when Deol wrongfully took control on Econergy), and whether Goel Family Ventures I, LP ("GFV") had fully accounted for the steel and cables it had ordered for the Ludhiana solar plant;

4. That Deol owed Econergy $4,473.00 as the balance due on his portion of the equity call Econergy made in late 2011;

5. That Deol owed Econergy reimbursement for the interest he had received on the bank guarantees Econergy had deposited with IREDA, with Deol to account for that interest;

6. That Deol had defaulted on the land purchase option he had given GFV in the Co-Development Agreement (confirmed in the Loan Agreement), and thus GFV was given the right to elect between specific performance (if Deol continued to own the land) or damages for Deol's non-performance of the option;

The facts, issues, and findings of the PFA were subsequently fully incorporated into the Further Partial Final Award ("FPFA") issued on April 30, 2018, and attached hereto.

**B. Orders Re: Deol's Performance of his Loan Guarantee ("Order Following August 4, 2017, Hearing," issued August 4, 2017 and "Orders on Request for Modification," issued October 11, 2017):**

The Partial Final Award granted Deol thirty days to make good on the personal guarantee he had given Goel as part of the Loan Agreement. A hearing was held on August 4, 2017, to determine if Deol had done so. At that time, it was determined that Deol had not made the monetary payment called for by his guarantee, and thus he was ordered to turn over to Goel the shares and the land he had pledged under his guarantee. [See "Order Following August 4, 2017, Hearing," Attachment "A" to the FPFA]. Deol, with new counsel, subsequently requested reconsideration of the turnover order; the request was rejected in October 2017. [See "Orders on Request for Modification," Attachment "B" to the FPFA].

**C. Initial Injunctive Relief regarding Deol's legal actions in India ("Order Enjoining Actions Undertaken by Jaspal Singh Deol in Violation of Orders Issued in this Proceeding," issued August 16, 2017):**

On August 16, 2017, a telephonic hearing was held regarding the legal action(s) being pursued by Deol in India, which action(s) sought to re-litigate the issues already determined in the PFA. The undersigned ordered Deol to cease and desist from taking actions on behalf of Econergy and to notify the court in India that he no longer held an interest in Ecocnergy. [See "Order Enjoining Actions Undertaken by Jaspal Singh Deol in Violation of Orders Issued in this Proceeding," Attachment "C" to the FPFA].

**D. Order Valuing Land and Shares to be Transferred under Deol's Loan Guarantee ("Further Partial Final Award Determining Value of Jaspal Deol's Interest in Econergy, Inc., and Value of Ludhiana Land," issued February 20, 2018):**

Hearings were held on December 18, 2017 and January 12, 2018, to determine the fair market value of the shares and the land that Deol had been ordered to transfer to Goel under the loan guarantee. It was determined that the shares had a value of $634,600.00 and that the land had a value of $342,000.00. As the combined value of those two items exceeded Deol's monetary obligation under his guarantee, Deol was awarded a credit from Goel of $624,291.41, with that credit conditioned upon Deol transferring the two

items to Goel [See "Further Partial Final Award Determining Value of Jaspal Deol's Interest in Econergy, Inc., and Value of Ludhiana Land," Attachment "D" to FPFA].

**E. Further Injunctive Relief re Deol's Indian action and Dealings with Econergy, Inc. ("Further Injunctive Orders Directed to Jaspal Singh Deol," issued February 20, 2018):**

At the January 12, 2018 hearing, it was also determined that Deal had not complied with the undersigned's prior orders regarding Deol's legal actions in India. As a result, further injunctive orders were issued on February 20, 2018. [See "Further Injunctive Orders Directed to Jaspal Singh Deol," Attachment E to FPFA]

**F. "Further Partial Final Award," issued April 30, 2018:**

A final evidentiary hearing on remaining issues was held on March 16, 2018. That hearing resulted in the attached FPFA, issued on April 30, 2018. That FPFA resolved all remaining issues other than attorneys' fees, costs, and the amount of interest to be awarded to GFV on the distributions wrongfully taken and withheld by Deol.

**G. "Order on Attorneys Fees, Costs, and Interest," dated November 16, 2018:**

Following issuance of the FPFA on April 30, 2018, the only remaining issues were attorneys' fees, costs, and interest on wrongfully withheld distributions. These issues were briefed and submitted for decision as of June 13, 2018. One week later, on June 20, 2018, Deol filed Chapter 13 Bankruptcy proceedings. As a result, issuance of any further orders in this arbitration was stayed. The automatic stay was lifted (for this arbitration) by Order of the Bankruptcy Court, dated October 31, 2018. The lifting of the stay was effective as of November 15, 2018, per Fed. R. Bankr. P. 4001(a)(3).

The undersigned's Order on Attorneys' Fees, Costs, and Interest was issued on November 16, 2018, a copy of which is attached to this Final Award.

## II. FINAL AWARD (MONETARY RELIEF)

As contained in the Orders and Awards previously issued in this matter, the following monetary relief is hereby awarded in this Final Award:

A. Prabhakar Goel, individually, is awarded $690,716.00 against Econergy, Inc., as and for the balance due under the Loan Agreement as of June 21, 2017. Goel is also awarded interest (at the 10% legal rate for contracts) on this sum from the time of the initial Partial Final Award, June 21, 2017, to the date of this Final Award, in the amount of $97,078.71.

B. As noted in Section III (A) and (B), below, Jaspal Singh Deol has been ordered to transfer all of his interest in Econergy, Inc. as well as his interest in the Ludhiana land, to Prabhakar Goel, individually, as performance of Deol's loan guarantee. Once the land and shares have been fully transferred to Goel, then Jaspal Singh Deol is awarded $624,291.41 against Prabhakar Goel for the excess value of the two transferred items. Also, once the land and shares are fully transferred to Goel, Econergy's loan balance to Goel [see II(A), above] shall be reduced by $352,308.59, the amount that Deol will have paid Goel under his loan guarantee;

C. Goel Family Ventures I, LP is awarded $438,425.54, against Jaspal Singh Deol, individually, representing 49% the dividends Deol wrongfully took and withheld from GFV, plus interest thereon of $74,046.93 (at the 7% rate for tort recoveries);

D. Jaspal Singh Deol, individually, is awarded against Econergy, Inc., the sum of $163,357.04 as and for rent due from Econergy for its use of Deol's Ludhiana land from the time of plant commissioning (March 2, 2012) to October 1, 2017 (the valuation date for Deol's transfer of the land to Goel);

E. Econergy, Inc., is awarded $4,473.00 against Jaspal Singh Deol, individually, as the balance due from Deol on Econergy's second capital call in late 2015;

F. Econergy, Inc. is awarded $3,000.00 against Jaspal Singh Deol, individually, for the interest Deol received on the bank guarantees Econergy had deposited with IREDA; and

### III. FINAL AWARD (INJUNCTIVE RELIEF)

The following injunctive relief has been ordered in this matter, and, as of this Final Award, has not been fully complied with. That injunctive relief is now ordered in the form of a permanent injunction in this Final Award:

#### A. Regarding Transfer of Deol's Ownership Interest in Econergy, Inc.:

1. Jaspal Singh Deol is ordered to transfer to Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Goel;

2. Until his ownership interest is fully transferred, Jaspal Singh Deol is ordered to fully preserve and protect the assets of Econergy, Inc;

3. If not previously done, Jaspal Singh Deol is ordered to immediately resign as a director of Econergy, Inc.; and

4. Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

**B. Regarding the Transfer of Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:**

    1. Jaspal Singh Deol is ordered to transfer to Prabhakar Goel his interest in the land under Econergy, Inc.'s Ludhiana solar power plant;[1]

    2. Jaspal Singh Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Prabhakar Goel, including, but not limited to, furnishing to Goel, or his designee, three (3) original properly-executed powers of attorney granting to Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Goel or his designee;

    3. Jaspal Singh Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar power plant and its operations, including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and (c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

    4. Jaspal Singh Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business and its dealing with PEDA, IREDA and PSPCL, including all tax returns (and supporting documents therefor) filed in the U.S. and all documents pertaining to Econergy in India, and (b) original documents regarding Deol's purchase and operation of the land underlying the Econergy Ludhiana plant;

    5. Jaspal Singh Deol is ordered to deliver to Prabhakar Goel, within five (5) days, three fully-executed and notarized originals of the Affidavit which is attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated February 20, 2018 [part of Attachment E to the Further Partial Final Award attached hereto];

    6. To immediately instruct Surinder Singh Sandhu to refrain from accessing or attempting to access Econergy, Inc.'s bank accounts.

---

[1] The land consists of eleven parcels totaling approximately 10.2 acres, described as Khasra No. 67/20/2, 21, 68/23, 24, 25, 74/3, 4, 7, 8, 13, and 14,Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

**C. Regarding Deol's Indian Court Actions:**

1. Jaspal Singh Deol is ordered to immediately cease and desist from pursing any legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy Inc. or on behalf of Deol's individual interests, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's Ludhiana solar power plant;

2. Jaspal Singh Deol is ordered to forthwith advise any court(s) in which he has filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in Econergy, Inc.; that he no longer has the legal capacity to pursue actions on behalf of Econergy, Inc., and that any individual claims he possesses from the planning, development, and operation of Econergy's Ludhiana solar plant are matters that he is required to submit to binding arbitration in lieu of any court action;

3. Prabhakar Goel, and the Goel Family Ventures I, LP, may file this Final Award, as well as any previous orders entered in this arbitration, with any court or in any other proceeding, including any proceeding in which Jaspal Singh Deol purports to act on behalf of Econergy, Inc.; and

4. Jaspal Singh Deol, and any person or persons acting at his behest or on his behalf, including agents, employees, representative, and all persons acting in concert or participating with them, are ordered to forthwith instruct any Indian counsel acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith withdraw or dismiss the entire action pending in the court of Sh. K K. Kareer Commercial Court Ludhiana, Punjab, India, including all claims on behalf of Econergy, Inc. and claims on behalf of himself individually regarding the planning, development, and operation of Econergy's Ludhiana solar plant.

## IV. ATTORNEYS' FEES AND COSTS

Prabhakar Goel and Goel Family Ventures I, LP, are awarded the following as against Jaspal Singh Deol and Econergy, Inc. jointly and severally:

    a. Reasonable attorneys' fees:       **$985,788.72**

    b. Costs:

        JAMS arbitration costs
        (through and including this
        Final Award):             $65,005.77

| | |
|---|---|
| Non-JAMS costs (other than expert costs) | $62,171.77 |
| Expert costs | $105,692.12 |
| Total Costs Awarded: | $232,869.66 |

This Final Award disposes of all issues presented for resolution in this arbitration proceeding.

Dated: November 16, 2018.

Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator

# EXHIBIT I

**Fill in this information to identify the case:**

Debtor 1    JASPAL SINGH DEOL

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of California

Case number   18-23885

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:   Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | Prabhakar Goel and Goel Family Ventures I L.P. | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? | |

| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? <br><br> St. James Law, P.C. <br> Name <br> 22 Battery Street, Suite 888 <br> Number   Street <br> San Francisco   CA   94111 <br> City   State   ZIP Code <br><br> Contact phone 415-391-7566 <br> Contact email michael@stjames-law.com <br><br> Uniform claim identifier for electronic payments in chapter 13 (if you use one): | Where should payments to the creditor be sent? (if different) <br><br> Prabhakar Goel <br> Name <br> 98 Ridgeview Drive <br> Number   Street <br> Atherton   CA   94027 <br> City   State   ZIP Code <br><br> Contact phone <br> Contact email |

| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ <br> MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ | |

Official Form 410       Proof of Claim       page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**    $ _____1,439,631.94_. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attachment

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☑ Other. Describe:    Right of setoff

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $ 185,865.87

Amount of the claim that is secured:    $ 185,865.87

Amount of the claim that is unsecured: $ 1,253,766.07 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

**11. Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: See attachment _____

Official Form 410       Proof of Claim       page 2

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ **No** | |
|---|---|---|
| | ☐ **Yes.** *Check one:* | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    08/28/2018
                    MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| Name | Prabhakar Goel | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Individually, and as General Partner | | |
| Company | Goel Family Ventures I L.P. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 98 Ridgeway Drive | | |
| | Number        Street | | |
| | Atherton | CA | 94027 |
| | City | State | ZIP Code |
| Contact phone | | Email | |

## ATTACHMENT TO PROOF OF CLAIM

Claimants were participants in an arbitration proceeding and subsequent superior court lawsuit against the Debtor. Those proceedings resulted in Orders for specific performance requiring the Debtor to turn over certain property to claimants and subsequent injunctions to implement those Orders. Those Orders have been largely implemented. See, generally, Dkt #49-56.

Orders for specific performance are not an appropriate subject for a proof of claim. See *In re Shearin Family Investments, LLC,* 418 B.R. 584, 588 (Bankr. E.D.N.C. 2009) ("Because the right to specific performance is not a claim, the obligation of the debtor to perform is not a 'debt' and is not dischargeable. Instead, the obligation to deliver the condominium units simply survives the bankruptcy proceeding."); *In re Ter Bush,* 273 B.R. 625, 628-29 (Bankr. S.D. Cal. 2002) ("The Court concludes that the arbitrator's award for specific performance is not a claim within the meaning of the Code because the underlying breach in this case does not give rise to a right to the payment of money damages."); *In re Indian River Estates, Inc.,* 293 B.R. 429, 435 (Bankr. N.D. Ohio 2003) ("[Movant's] right to receive specific performance is not a claim, and thus by implication, the right of specific performance is not a debt that may be discharged in bankruptcy."); *In re Pribonic,* 70 B.R. 596, 602 (Bankr. W.D. Pa. 1987) ("an aggrieved land contract vendee who holds a decree for specific performance has an equitable remedy that does *not* give rise to a right to payment. Therefore, such vendees do not and technically cannot hold a 'claim' for bankruptcy purposes."); *In re Acevedo,* 441 B.R. 428, 437 (Bankr. S.D.N.Y. 2010) ("Nor can the Trustee discharge the obligation under the State Court Orders in bankruptcy, as that obligation does not constitute a claim against the estate. The Trustee cannot avoid the equitable remedy of specific performance and must comply with the Orders of the State Court.").

Prior to the commencement of this case, the Arbitrator determined that Claimants were the prevailing parties and as such were entitled to an award of attorney's fees. Claimants' Application for attorney's fees, interest and other monetary awards was submitted to the arbitrator and are awaiting determination when the bankruptcy case was filed. The monetary Claim set forth in that Application, a copy of which is attached hereto, is the subject of the instant Proof of Claim. The supporting papers are voluminous and are not attached hereto, but are available upon request.

The amount sought in the Application is $1,439,631.94. The Arbitrator determined that the Debtor would have an aggregate credit against that obligation in the amount of $191,865.87, calculated as follows:

| | | |
|---|---|---|
| Goel pay to Deol | Excess Collateral Value, FPFA 64 | $ 624,291.41 |
| Deol pay to Goel / GVF | 49% of improper distributions, FPFA 65 | $ (438,425.54) |
| Net to Deol | Available for Set Off | $ 185,865.87 |

The instant Claim is therefore secured by a right of offset in the amount of the credit, $185,865.87, and unsecured for the balance of the amount owed, $1,253,766.07.

In addition to the foregoing liquidated amounts, the Debtor must also indemnify Claimants and Econergy for state and federal tax liabilities arising out of his failure to file returns or incorrect returns filed for Econergy.

# EXHIBIT J

Fill in this information to identify the case:

Debtor 1   Jaspal Singh Deol

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of California

Case number   18-23885-C-11

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Prabhakar Goel <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? <br><br> Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| | Thomas G. Mouzes, Boutin Jones Inc. <br> Name | Prabhakar Goel <br> Name |
| | 555 Capitol Mall, Suite 1500 <br> Number   Street | 98 Ridgeview Drive <br> Number   Street |
| | Sacramento    CA    95814 <br> City      State      ZIP Code | Atherton    CA    94027 <br> City      State      ZIP Code |
| | Contact phone 916-321-4444 | Contact phone _____ |
| | Contact email tmouzes@boutinjones.com | Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☐ No <br> ☑ Yes. Claim number on court claims registry (if known) 6-1     Filed on 08/28/2018 <br>                                                MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---------|----|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?** $_____1,218,658.38___. Does this amount include interest or other charges?

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attachment. In addition to above, there is a contingent claim.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:       Setoff and recoupment.

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:       $_____

Amount of the claim that is secured:       $____624,291.41____

Amount of the claim that is unsecured: $____594,366.97____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:       $_____

Annual Interest Rate (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.       $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: See attachment. _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3: Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  09 27 2019
             MM / DD / YYYY

*Signature*

Print the name of the person who is completing and signing this claim:

| Name | Prabhakar Goel | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Individual | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 98 Ridgeview Drive | | |
| | Number    Street | | |
| | Atherton | CA | 94027 |
| | City | State | ZIP Code |
| Contact phone | | Email | |

<u>Attachment to Amended Proof of Claim</u>

Prabhakar Goel ("<u>Goel</u>") submits this attachment to his amended proof of claim. Goel and Goel Family Ventures I, L.P. ("<u>GFV</u>") are collectively referred to as "<u>Claimants</u>". The following is a summary only. This proof of claim is based on information currently available and is subject, from time to time, to changes, amendments and/or modifications.

Claimants and Econergy, Inc. ("<u>Econergy</u>") were participants in a JAMS arbitration proceeding ("<u>Arbitration</u>") and action filed in the Superior Court of the State of California, County of Santa Clara, in the case entitled *Econergy, Inc. et al. v. Jaspal Deol*, Case No. 17-CV-314877 (the "<u>State Court Action</u>") against Debtor Jaspal Deol ("<u>Deol</u>" or "<u>Debtor</u>"). Among other things, those proceedings resulted in decisions, Orders for specific performance in favor of Goel and GFV including, requiring Debtor to turn over certain property to Goel and subsequent injunctions to implement those various Orders. Those Orders have been largely implemented. See generally, Doc. No. 38-46, 49-56.

Long before the filing of this bankruptcy case by Debtor, the Arbitrator in the Arbitration unequivocally transferred all of the ownership of Debtor's stock in Econergy ("<u>Stock</u>") to Goel effective August 16, 2017, and the ownership of the land in Ludhiana, India on which the solar plant is built (the "<u>Land</u>") effective October 1, 2017, in satisfaction of then existing secured debt of $352,308.59 due Goel, and removed Debtor as a director of Econergy effective August 16, 2017, which orders were confirmed in the orders and judgment of the State Court in the State Court Action. In the Arbitration and during June 2017, Deol was given the clear option to repay his 51% share of the unpaid construction loan owed to Goel under the applicable loan agreement/guaranty, and to retain the Stock and the Land securing that loan by paying his portion of the secured debt determined by the Arbitrator in the amount of $352,308.59, after the application of various credits. That said, Deol knowingly and intentionally elected not to repay his share of the debt and opted instead to have the Stock and the Land transferred to Goel in satisfaction of that secured debt, and to thereafter have the Stock and the Land valued by the Arbitrator following the submission of expert valuation reports submitted by the parties. The Stock and Land are the property of Goel.

Prior to the filing of this bankruptcy case, the relevant orders and decisions in the Arbitration and the Superior Court in the State Court Action included, without limitation, the following:

1.      Partial Final Award (Corrected) dated June 21, 2017.

2.      Arbitrator's Orders Following August 4, 2017, Hearing.

3.      Arbitrator's Order Enjoining Actions Undertaken By Jaspal Singh Deol In Violation Of Orders Issued In This Proceeding dated August 16, 2017.

4.      Superior Court Order filed September 11, 2017 (injunction).

5.      Arbitrator's Further Injunctive Orders Directed To Jaspal Singh Deol dated February 20, 2018.

<div align="center">1</div>

6.    Further Partial Final Award Determining Value dated February 20, 2018.

7.    Arbitrator's email Order dated March 19, 2018.

8.    Further Partial Final Award dated April 30, 2018.

9.    Superior Court Order After Hearing On Motions To Vacate February 20, 2018
      Arbitration Awards.   See Doc. No. 44–46 for copies of these documents. These
      documents, along with the loan agreement/guaranty, are also available upon request.

Prior to the commencement of this case, the Arbitrator determined that Claimants were
the prevailing parties and as such were entitled to an award of attorney fees and costs.
Claimants' Application for attorney fees, interest and other monetary awards was submitted to
the Arbitrator and was awaiting determination when Debtor's bankruptcy case was filed.  The
supporting papers of the Application are voluminous and are not attached hereto, but are also
available upon request.

On October 31, 2018, this Court granted the motion for stay relief of Claimants including
to conclude and confirm the existing arbitration award in favor of Claimants and for the entry of
judgment in the State Court Action.  (See Doc. No. 87.)

On November 16, 2018, the Arbitrator issued his Order On Attorneys' Fees, Costs And
Interest On Distribution, a copy of which is attached hereto as <u>Exhibit 1</u> and incorporated herein.
The Order provides in part that:

1.    GFV was awarded $74,046.93 against Debtor for interest on distributions wrongfully
      taken by Debtor from Econergy and withheld from GFV.

2.    Goel and GFV were awarded against Debtor and Econergy, jointly and severally,
      attorney fees of $985,788.72 and costs of $232,869.66, for a total of <u>$1,218,658.38</u>.

On January 10, 2019, the Superior Court in the State Court Action confirmed the
arbitration awards and the specific performance and injunctive relief in favor of Claimants.  A
copy of the Order To Confirm Final Arbitration Award is attached hereto as <u>Exhibit 2</u> and
incorporated herein.

On January 10, 2019, the Superior Court in the State Court Action entered its judgment
confirming the arbitration award including for monetary relief, specific performance and
injunctive relief in favor of Claimants.  A copy of the Judgment is attached hereto as <u>Exhibit 3</u>
and incorporated herein.

The Judgment fully affirmed the Final Arbitration Award.  The Judgment contained an
award of monetary relief as follows:

## MONETARY RELIEF

1.    Plaintiff Prabhakar Goel is entitled to Judgment in the amount of $787,794.71
      against Econergy, Inc.;

2

1037495.1B ATTACHMENT TO GOEL AMENDED CLAIM

2.      Defendant Jaspal Deol is entitled to Judgment in the amount of $624,291.41 against Plaintiff Prabhakar Goel for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred to Plaintiff Prabhakar Goel;

3.      Plaintiff Goel Family Ventures I LP is entitled to Judgment in the amount of $512,472.47 against Defendant Jaspal Deol;

4.      Plaintiffs Prabhakar Goel and Goel Family Ventures are entitled to Judgment in the amount of $1,218,658.38 against Defendant Jaspal Deol and Econergy, jointly and severally;

6.      Defendant Jaspal Deol is entitled to Judgment in the amount of $155,884.01 against Econergy, Inc.; and

7.      Plaintiffs Econergy, Inc., Goel and Goel Family Ventures are entitled to Judgment against Defendant Jaspal Deol requiring Defendant Jaspal Deol to indemnify them in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

As to monetary relief, the Judgment reflects the following concerning to Debtor:

1.      Goel to pay Debtor $624,291.41 for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred by Debtor to Goel.

2.      Debtor to pay GFV $512,472.47.

3.      Debtor to pay Goel and GFV $1,218,658.38.

4.      Econergy to pay Debtor $155,884.01.

5.      Debtor to indemnify Econergy, Goel and GFV in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

Excluding the indemnity obligations of Debtor which are unknown at this time and discussed below, the monetary amount due Goel from Debtor under the Judgment is $1,218,658.38.  The monetary obligations of Goel to Debtor of $624,291.41 are subject to setoff and/or recoupment. This claim of Goel is secured to the extent of his rights of setoff and/or recoupment in the amount of $624,291.41. The balance of $594,366.97 is unsecured. ($1,218,658.38-$624,291.41=$594,366.97.)

3

The Judgment contained specific performance and injunctive relief as follows:

## INJUNCTIVE RELIEF

A.  Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

1.  Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

2.  Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

3.  Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.      Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

1.  Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

2.  Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff Prabhakar Goel, or his designee, three (3) original properly executed powers of attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or his designee;

3.  Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar plant and its operations including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and (c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

4.  Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business and its dealing with PEDA, IREDA and PSPCL, including all tax returns; (and

---

[1]  The land consists of eleven parcels totaling approximately 10.2 acres, described as Khasra No. 67/20/2, 21, 68/23, 24, 25, 74/3, 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

supporting documents therefor) filed in the U.S. and all documents pertaining to Econergy in India, and (b) original documents regarding Deol's purchase and operation of land underlying the Econergy Ludhiana plant;

5. Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five (5) days, three fully-executed and notarized originals of the Affidavit which is attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated February 20, 2018; and

6. To immediately instruct Surinder Singh Sandhu to refrain from accessing or attempting to access Econergy, Inc.'s bank accounts.

C.      Regarding Defendant Jaspal Deol's Indian Court Actions:

1. Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's Ludhiana solar power plant;

2. Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in Econergy Inc., that he no longer has the legal capacity to pursue actions on behalf of Econergy Inc., and that any individual claims he possesses from the planning, development, and operation of Econergy's Ludhiana solar plant are matters that he is required to submit to binding arbitration in lieu of any court action; and

3. Defendant Jaspal Deol, and any person or persons acting at his behest or on his behalf, including agents, employees, representative, and all persons acting in concert or participating with them, are ordered to forthwith instruct any Indian counsel acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith withdraw or dismiss the entire action pending in the court of Sh. K K. Kareer Commercial Court Ludhiana, Punjab, India, including all claims on behalf of Econergy, Inc. and claims on behalf of himself individually regarding the planning, development, and operation of Econergy's Ludhiana solar plant.

Goel is informed Debtor has not complied with the injunctive orders and judgment of the Arbitrator and/or the State Court.

Orders for specific performance are not an appropriate subject for a proof of claim. See In re Shearin Family Investments, LLC, 418 B.R. 584, 588 (Bankr. E.D. N.C. 2009) [Because the right to specific performance is not a claim, the obligation of the debtor to perform is not a debt and is not dischargeable. Instead, the obligation survives the bankruptcy proceeding.]; In re Ter Bush, 273 B.R. 625, 628-29 (Bankr. S.D. Cal. 2002) [The arbitrator's award for specific performance is not a claim within the meaning of the Bankruptcy Code because the underlying breach does not give rise to a right to the payment of money damages.]; In re Indian River Estates, Inc., 293 B.R. 429, 435 (Bankr. N.D. Ohio 2003) [Movant's right to receive specific

5

performance is not a claim, and the right of specific performance is not a debt that may be discharged in bankruptcy.]; In re Pribonic, 70 B.R. 596, 602 (Bankr. W.D. Pa. 1987) [Aggrieved land contract vendee who holds a decree for specific performance has an equitable remedy that does *not* give rise to a right to payment. Therefore, such vendees do not and technically cannot hold a claim for bankruptcy purposes.]; In re Acevedo, 441 B.R. 428, 437 (Bankr. S.D.N.Y. 2010) [The trustee cannot discharge the obligation under the state court orders in bankruptcy, as that obligation does not constitute a claim against the estate. The trustee cannot avoid the equitable remedy of specific performance and must comply with the orders of the state court.].

Debtor must indemnify Goel, GFV and Econergy for state and federal tax liabilities arising out of his failure to file returns or incorrect returns filed for Econergy. This amount is unknown at this time and is subject to amendment from time to time. As a result, the claim of Goel includes a contingent and unliquidated claim including for indemnity.

Goel reserves the right to amend, modify and/or supplement this proof of claim, from time to time, including, without limitation, to set forth any indemnity obligations of Debtor or any other claim of Geol. Goel also asserts any and all rights he has or may have to setoff and/or recoupment, and to amend, modify and/or supplement this claim from time to time to further set forth such matters as additional information is obtained.

Nothing herein nor in any other appearance, pleading, claim, suit, motion, complaint, or any other writing or conduct shall constitute a waiver of any procedural and/or substantive rights, remedies and/or defenses including, without limitation: (a) the right to have any and all final orders in any and all matters entered only after de novo review by a United States District Court Judge; (b) the right to have any matter heard and tried before an Article III court; (c) the right to have the reference of this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; (d) other rights, claims, actions, remedies, defenses or other matters to which Goel is entitled; or (e) the right to be served directly with pleadings commencing an adversary proceeding, contested matter and/or lawsuit.

Nothing herein nor in any other pleading or paper filed by Goel is or is to be construed as any waiver of the right or ability to demand or require alternative dispute resolution, mediation, arbitration, or similar process available under the applicable agreements, law or otherwise. Nothing herein nor in any other pleading or paper filed by Goel shall limit or impair any right, remedy, claim or interest, whether legal or equitable, including under the applicable law or otherwise, including against any person or entity. Goel reserves the right to attach or rely upon additional documents or evidence in support of this Proof of Claim including if, as, and when such additional documents or evidence become available.

All of the above rights and/or remedies are hereby expressly reserved. The filing of this Proof of Claim or participating in the bankruptcy case shall not be deemed to constitute a concession or admission of jurisdiction in the case or cases or before this Court or any other court. Nor does Goel waive and specifically preserves any procedural and/or substantive defenses to any claim that may be asserted against Goel by Debtor, by any trustee of Debtor's estate, by any official committee appointed in this case, or by any other party, person, entity or group. The filing of this Proof of Claim shall not constitute an election of remedies or choice of law or a waiver of any such rights relating thereto. Nothing contained in this Proof of Claim

6

1037495.1B ATTACHMENT TO GOEL AMENDED CLAIM

shall limit any right of Goel to commence or continue any proceeding or take any action to the extent permitted by the Bankruptcy Code, applicable non-bankruptcy law, or order of a court of competent jurisdiction.

1037495.1B  ATTACHMENT TO GOEL AMENDED CLAIM

# EXHIBIT 1

 
## JAMS ARBITRATION
### Case No. 1110016365

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

                        Claimants,

  vs.

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

                       Respondents.
_____/

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

                     Counter-Claimants,

  vs.

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

                     Counter-Respondents.
_____/

### ORDER ON ATTORNEYS' FEES, COSTS,
### AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 1 of 15

 
## PROCEDURAL BACKGROUND TO THIS MOTION

The Further Partial Final Award ("FPFA") that was issued herein on or about April 30, 2018, resolved all issues in this arbitration other than the amount of attorneys' fees and costs to be awarded to the prevailing parties, Prabhakar Goel ("Goel") and Goel Family Ventures I, LP ("GFV")[1] and the amount of interest Deol owed to GFV on improperly converted distributions.

Specifically, the FPFA included the following findings and orders regarding attorneys' fees, costs, and interest on distributions:

A. Attorneys' Fees and Costs:

"Prabhakar Goel and Goel Family Ventures I, LP, having obtained the greater relief in this matter, including having been awarded the bulk of the relief they requested and having defeated virtually every claim tendered by Jaspal Singh Deol and Econergy, Inc., are deemed the prevailing parties in this matter. As such, they may recover from Deol and Econergy their reasonable attorneys' fees and costs incurred in the matter." [FPFA at p. 64]

B. Interest on Improper Distributions Taken by Deol:

"GFV is also awarded interest, at the legal rate, on its delayed receipt of [its share of Deol's improper] distributions, i.e., from the time each distribution was taken by Deol (and not shared with GFV) to the time of the Final Award herein." [FPFA at p. 63]

The FPFA, in Section VI ("Remaining Proceedings: Attorneys' Fees, Costs, and Interest"), established the procedure for determining the amount of attorneys' fees and costs, as well as the amount of interest to be awarded. Thereafter, the parties briefed these issues. No party requested oral argument, and thus these matters were deemed submitted for decision upon the filing of Claimants' reply papers on June 13, 2018. Shortly thereafter, however, Deol filed for Chapter 13 bankruptcy[2] and this arbitration was stayed until the Bankruptcy Judge's Order of October 31, 2018, lifting the automatic stay on the remaining phases of this arbitration. More than fourteen days have passed since the Order lifting the stay. [Fed. R. Bankr. P. 4001(a)(3)].

Having read and considered the moving, opposition, and reply papers, and good cause appearing, the undersigned makes the following findings and issues the following orders:

---

[1] In this Order, Goel and GFV may, at times, be referred to collectively as "Claimants."

[2] In re Jaspal S. Deol, Debtor, Case No. 18-23885-C-13, U.S. District Court for the Eastern District of California, filed October 20, 2018.

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 2 of 15



<center>DISCUSSION</center>

**A. Attorneys' Fees:**

    1. Basis for Attorneys' Fees Award:

    Respondents/Counter-Claimants Jaspal Singh Deol and Econergy, Inc. (collectively "Deol") object to the undersigned's ruling, in the FPFA, that Claimants may recover their attorneys' fees. Deol argues there is no legal basis, in statute or contract, for any award of fees to these prevailing parties.

    Although there is no statute providing for fees in this case, Deol is incorrect in arguing that ". . . neither the loan agreement nor the co-development agreement contains a clause providing attorney fees to the prevailing party." [Opposition Memorandum of Points and Authorities ("Opposition Ps & As") at 3:26-27]. Rather, as pointed out by Claimants, Article 6 ("Indemnity") of the parties' Loan Agreement provides:

> "Borrower [Econergy] and Guarantor [Deol] shall jointly
> and severally indemnify and keep indemnified the Lender
> [Goel] and its representative, officers, employees and agents
> from and against any and all claims, liabilities, damages,
> demands, losses including but not limited to *any legal or
> other expenses incurred or suffered by the Lender due to delay
> in the repayment of the Loan or anything contrary to this Agreement.*"
> [italics added]

    This arbitration began as the result of Econergy's decision, orchestrated by Deol, to stop performing its obligations under the Loan Agreement, i.e., by stopping all repayments to Goel on his $1 million loan to Econergy. That non-payment was transformed into a rather complex matter as Deol sought to justify Econergy's non-payment by alleging a litany of misdeeds by Goel, which allegedly warranted not only stopping the loan payments, but which entitled Econergy to treat the loan as void *ab initio* or fully repaid. Other issues in the case also directly involved the Loan Agreement, included Deol's alleged default on his personal guarantee under that Agreement, and his default on the land purchase option he had given to GFV, which option was confirmed in the Loan Agreement. Indeed, Deol acknowledges that the Loan Agreement was at the core of the case: "[t]he primary claims in this case, [are] for breach of the Loan Agreement . . ." [Opposition Ps & As, at 9:9].

    As such, Claimants are correct in arguing that "nearly all of the asserted claims (and cross-claims) implicated disputes (with the same underlying facts) involving the Loan Agreement (breach or default, excuse for non-repayment, loan already repaid, unenforceability, duress, rescission and setoff) . . ." [Reply brief at 2:18-20]. They are also correct that the Loan Agreement and the Co-Development Agreement "may be construed as one contract and the attorneys' fees clause in the Loan Agreement applie[d]

<center>3</center>

Exhibit 1 to
Proof of Claim
Page 3 of 15

 
to claims under the Co-Development Agreement as well." [Claimants' Reply Brief at 3:7-9].

Deol should not be surprised that attorneys' fees are available to the prevailing parties in this case. From the start, *all* parties have treated this case as one in which fees would be awarded to the prevailing party. Deol's first "pleading" in this arbitration, his counter-claim dated December 9, 2014, requested an award of attorneys' fees. [Cross-Complaint dated December 9, 2014, at 11:21]. And, shortly thereafter, on January 5, 2015, in the Claimants' First Amended Complaint in Arbitration, they specifically referenced the indemnity provisions of Article 6 of the Loan Agreement and requested "[a]ll costs of suit, including legal and other expenses incurred or suffered by Plaintiffs due to delay in repayment of the Loan or anything contrary to the Loan Agreement as provided by Article [6], titled 'Indemnity,' of the Loan Agreement." [Claimants' First Amended Complaint in Arbitration at 11:21-23]

The fact that all parties requested fees does not necessarily make them awardable in the absence of a contract or statute;[3] however, their mutual requests for fees can be viewed as evidence that they interpreted the language of their agreements as allowing for an award of fees to the prevailing party.

The undersigned hereby reaffirms his determination, announced in the FPFA, that Claimants, as the prevailing parties, are entitled to recover their reasonable attorneys' fees and costs.

1. Use of Lodestar Method to Determine Reasonable Fees:

"California Courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3rd 999, 1004-1005. As such, " . . . the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095. "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id*, at p. 1095. "Among the factors that may be considered by the trial court in adjusting the lodestar are the contingent nature of the fee award, the novelty and difficulty of the questions involved, and the skill displayed in presenting them." *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488.

---

[3] At least one case has held that if a party requests fees under a contract, that party will be judicially estopped from contesting the other party's right to fees even if the contract has no fees provision. *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1187-1189. However, later cases have rejected this judicial estoppel argument and held that fees should not be awarded unless a contract or statute so provides. See, e.g., *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, at 899.

---

4

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 4 of 15



Both sides argue for use of the lodestar method, and the undersigned finds that method appropriate for determining reasonable fees in this arbitration.

Claimants contend that their attorneys' and paralegals' rates were reasonable, as were the number of hours they spent on the case; they request a lodestar award of $985,788.72. They also request an additional $44,373.77 for legal work done in the Santa Clara County Superior Court to enforce the earlier arbitration orders and an additional $31,333.57 related to defending against the legal action undertaken by Deol in India ("the Indian action") to re-litigate some of the issues of this case.

Deol rejoins that the hourly rates claimed by the attorneys and paralegals are excessive and unreasonable, and similarly that the time they spent on the case was excessive and unreasonable. As such, Deol argues for a large reduction in the lodestar amount. Deol also argues that it would be improper to award fees and costs to Claimants for their work in the Superior Court and in the Indian action. Neither side argues for an upward or downward modification of the lodestar amount, once it is determined

3. Are the Hourly Rates Reasonable?

Claimants submitted the declaration of lead attorney, Robert J. Yorio, Esq. ("Yorio"), giving the hourly rates billed by each attorney and paralegal working on this case. The hourly rates for the attorneys were as follows: for Yorio: $450/hr. (down from his usual fee of $900/hr.); for co-lead attorney Christine Watson: $350/hr. to $445/hr.; for all other attorneys: $375/hr. to $445/hr. The hourly rates for the paralegals ranged from $140/hr. to $210/hr.

Whether an attorney's hourly rate is reasonable is to determined by reference to the "market value" of those services: "[t]he reasonable market value of the attorney's services is the measure of a reasonable hourly rate." *Nemeck & Cole v. Horn* (2012) 208 Cal.App.4th 641, at p. 651. And, reasonable market value is determined by reference to the prevailing rate charged for similar work in the community where the proceedings took place. See, e.g., *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691.

Yorio, in his opening declaration, stated: "I am familiar with prevailing market rates for skilled attorneys experienced in commercial and intellectual property litigation. The rates charged to Claimants in this matter for partners, associates and paralegals (other than me) are consistent with rates charged by comparable attorneys at firms in San Francisco, San Jose and Silicon Valley. My billing rate charged to Claimants in this matter of $450.00 is substantially below that charged by commercial and intellectual property litigation attorneys with comparable skill and experience." [Initial Declaration of Robert J. Yorio at 3:15-21]

Yorio further declared: "I . . . have reviewed the hourly rates charged by all of the attorneys and paralegals in this matter and their respective experience levels. In addition, it is my responsibility as a litigation partner at Carr & Ferrell to regularly review and set billing rates for the members of our litigation practice group. In my opinion, the rates

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 5 of 15




charged to Claimants for representation in this matter are reasonable and well within the market range for comparably qualified and experienced attorneys and paralegals handling comparable litigation in the Bay Area." [Initial Declaration of Robert J. Yorio at 3:22-28]

Deol's objects to Yorio's declaration as "self-serving," and complains that none of the other attorneys and paralegals submitted declarations as to the reasonableness of their rates.[4] Deol also complains that Claimants did not produce declarations "from anyone else in the legal community as to standard community rates for lead counsel, associates, or paralegals." [Opposition Ps & As, at 5:1-2]

Interestingly, Deol did not submit a single declaration in opposition to this motion, and thus did not contradict Claimants' evidence as to the reasonableness of their attorneys' and paralegals' rates. Similarly, Deol did not reveal the hourly rates charged by his attorneys for work on this case. As such, Deol has not effectively challenged Yorio's declaration regarding the reasonableness of the rates charged. This situation is similar to that in *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010, where "[moving party's] counsel submitted evidence supporting his hourly rate and [opposing party] did not submit evidence of current rates contradicting this rate." The Court of Appeal concluded "the trial court did not abuse its discretion when it used the [unopposed hourly rate]." 215 Cal.App.4th at 1010.

Based on the uncontroverted evidence, as well as the undersigned's knowledge of attorney and paralegal rates in the San Francisco Bay Area generally (and in Silicon Valley in particular),[5] the requested attorney and paralegal rates are indeed reasonable market rates for attorneys and paralegals possessing their levels of experience and working on a case of this complexity. The hourly rates of the attorneys and paralegals are hereby found reasonable.

Indeed, Deol should be thankful that Yorio requested his fees only at the greatly discounted rate he gave this particular client. Yorio easily could have asked for the *reasonable hourly value* of his time, irrespective of this discount given the client. The law is clear that, when determining the reasonableness of an attorney's fees, the fee arrangement between that attorney and the client is irrelevant. See, e.g., *Nemeck & Cole v. Horn* (2012) 208 Cal.App.4th 641: "The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]" 208 Cal. App.4th at 651.

---

[4] Why Deol would discount Yorio's declaration as "self-serving" yet complain that there were no similar self-serving declarations from the other attorneys and paralegals, was not explained.

[5] "The court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009.

6

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 6 of 15



**4. Was the Time Spent on the Case Excessive or Unreasonable?**

According the Yorio's declaration, Claimants' attorneys and paralegals spent the following hours on this case: Yorio: 924.10 hours; Christine Watson: 812.60 hours; all other attorneys: 163.5 hours; paralegal Julia Burillo: 1,147.65 hours; all other paralegals: 9.15 hours.

Deol challenges these hours as excessive and unreasonable. He alleges both overstaffing and excessive time spent on certain tasks. He complains that (1) two attorneys participated in the depositions of Jaspal Deol, Prabhakar Goel, Vijay Goel, and Neelkant Gargya; (2) two attorneys participated in a telephonic case management conference held on August 13, 2014; (3) one paralegal (Ms. Burillo) attended all evidentiary hearings; (4) the attorneys spent time setting up and attending board meetings with their clients; and (5) the paralegals spent allegedly excessive time on handing documents and deposition transcripts. Deol also complains that the redactions on several of the invoices made it hard, if not impossible, to determine and challenge the work done.

Deol also challenges the awarding of any attorneys' fees incurred by Claimants in the Superior Court action seeking to enforce certain arbitration orders, as well as the fees incurred in India defending against Deol's actions there. [See Exhibits F and G to Yorio's Initial Declaration.]

Deol's attack on the time spent by Claimants' counsel and paralegals on specific tasks has been shown, by way of Yorio's reply declaration, not to be well taken. That evidence demonstrated why two attorneys participated in certain crucial depositions, why it was necessary and appropriate for the lead paralegal to be present during the evidentiary hearings, and explained the paralegals' entries regarding time spent handling documents and deposition transcripts.

Interestingly, too, despite making his "overstaffing" argument, Doel does not bother to mention that he had two attorneys attending six of the eleven days of hearings.[6] He also does not reveal, for comparison purposes, the number of hours his attorneys worked on this case.

When determining the reasonableness of time spent on a case, the opposing party's litigation conduct is always a relevant factor. In our case, Deol vigorously pursued every aspect of this matter, including making a number of rather personal attacks on Goel (alleging unethical behavior). Of course, "[a party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [other party] in response." *Int'l Longshoremen's and Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 304.

Having presided over this arbitration for several years now, the undersigned is well aware that this was a detailed, convoluted, and hard-fought matter. It involved

---

[6] Deol's attorneys Finnerty and Edgeworth both participated in the arbitration hearings on June 13, 14, 29, and 30, and July 21 and 22, 2016.

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 7 of 15



claims of several million dollars and a battle for control of a corporation and a solar power plant in India. The underlying events spanned several years, and their recounting involved witness from the U.S., India, and Spain.

If this fees motion were in court, the trial judge would not be required to engage in an overly "granular" review of the various tasks undertaken by the attorneys and opine as to the reasonableness of the time spent on each task. "We find no California case law analogue to [CCP] section 632 [regarding statements of decision] requiring trial courts to explain their decisions on all motions for attorneys fees and costs or even requiring an express acknowledgement of the lodestar amount." *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67. As such, trial judges need not perform an "item by item" justification for any reductions they might make to requested fees: "trial courts are not required to specify each and every claimed item found to be unsupported or unreasonable." *Gorman v. Tassajara Development Corp., supra*, at 67. Rather, a simple statement that the court finds the "amount of fees requested is reasonable" is deemed a sufficient explanation. *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1178.

Although the undersigned has been notified of Deol's bankruptcy filing, the financial status of a losing party is not a factor to be used when determining and awarding reasonable fees under a contract. See, e.g., *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, at 372 - 373: ". . . we conclude it is inappropriate to consider the losing party's financial status as an equitable factor in assessing contractual attorney fees," and thus "a losing party's financial condition should not be considered in the setting the amount of such an award." Also, as noted above, Deol has already greatly benefitted in this motion from the fact that Claimants' lead attorney (Yorio) only asked for fees at the rate he billed his client (one-half his normal rate), not the reasonable value of his time.

The amount requested for attorney and paralegal time is hereby determined to be reasonable and appropriate, without reduction: $985,788.72 is awarded as and for Claimants' reasonable attorneys' fees in this arbitration.

As for Claimants' request to also recover the fees and costs incurred in the Superior Court, that request is denied. Those fees and costs are matters for determination and award by the Superior Court. C.C.P. § 1293.2 provides: "The court shall award costs upon any judicial proceeding under this title as provided in Chapter 6 (commencing with Section 1021) of Title 14 of Part 2 of this code." As such, "[a] court must award costs in a judicial proceeding to confirm, correct, or vacate an arbitration award. [citations omitted] Attorney fees are recoverable as costs if authorized by contract. (Code Civ. Proc. § 1033.5, subd. (a)(10)(A).)" *Corona v. Amherst Partners* (2003) 107 Cal.App.4TH 701, at 707. Similarly, Claimants' request for an award of the fees and costs incurred in dealing with Deol's Indian court actions is rejected.

///////

 

**B. Costs:**

The costs requested by Claimants total $231,679.11, and fall into three categories: (1) JAMS costs (case management fees, hearing fees, and arbitrator's fees) of $63,813.22; (2) non-JAMS costs, other than expert costs, of $62,171.77; and (3) expert costs of $105,692.12.

     1.   JAMS Costs (i.e., JAMS Case Management Fees, Hearing fees, and the Arbitrator's Fees:

Even without Article 6 of the Loan Agreement, these costs are recoverable by the prevailing parties. The parties agreed to arbitrate this matter through JAMS, and thus the JAMS arbitration rules become part of the parties' agreement to arbitrate. [See JAMS Comprehensive Arbitration Rule 1(b).]

Rule 24(f) of JAMS Comprehensive Rules provides: "The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, *unless such an allocation is expressly prohibited by the Parties' Agreement.*" [Italics added.] Here, neither of the contracts "expressly prohibits" an allocation of arbitration costs, and thus the JAMS costs are properly awardable to the prevailing parties.

The Rule 24(f) costs include JAMS' (a) case management fees, (b) hearing fees, and (c) arbitrator's fees. Claimants have claimed these costs as being $63,813.22, which includes the fees Claimants advanced on behalf of Deol in order to secure the issuance of certain orders.

Deol challenges these JAMS costs as excessive and unsupported by adequate documentation. However, Yorio's reply declaration supplies the invoices for these JAMS charges. Also, these amounts are easily verifiable by Deol, who has received JAMS invoices for his one-half of these same costs. Additionally, the undersigned has verified the amount that has been paid to JAMS by Claimants through and including the issuance of this Order and the Final Award. The total amount Claimants have paid, including the $3,122.03 recently advanced on behalf of Deol to secure the issuance of this Order and the Final Award,[7] is $65,005.77.[8]

The undersigned finds the JAMS costs paid by Claimants have been adequately documented and are recoverable. That amount ($65,055.77) is awarded to Claimants, as part of their allowable costs.

---

[7] JAMS Comprehensive Rule 31(c) provides that "[i]n the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration."

[8] The previous advances made by Claimants on behalf of Deol were later paid by Deol, and thus JAMS has returned those funds to Claimants' account in this matter.



2. Non-JAMS Costs (other than expert fees): $62,173.77

The non-JAMS, non-expert, costs requested by Claimants were as follows:

| | | |
|---|---|---|
| Courier fees (FedEx) | | $479.16 |
| Court reporter fees for depositions and arbitration hearing; | | $52,342.16 |
| Online research costs | | $1,379.43 |
| Document production service | | $4,886.71 |
| Travel expenses | | $884.11 |
| Service of Subpoenas | | $1,391.91 |
| Miscellaneous | | $808.29 |
| | Total: | $62,171.77 |

Deol objects to these costs. First, Deol argues that none should be recovered, as there is no contract allowing for their recovery. This argument is rejected: JAMS Comprehensive Rule 24(g) allows the arbitrator to "allocate fees *and expenses* . . . if provided by the Parties' Agreement . . ," and, as discussed above, Article 6 of the parties' Loan Agreement provides for the recovery of "any legal *or other expenses incurred or suffered* by the Lender *due to* delay in the repayment of the Loan or *anything contrary to this Agreement*." [Italics added.]

Deol also argues that many of the claimed costs, even if allowed under the parties' contract, have not been properly documented. This is rejected; they have been properly documented, including by way of Yorio's declarations and the exhibits thereto.

Finally, Deol argues that even if allowed by contract, and even if properly documented, many of these costs would not have been recoverable in a court proceeding, pursuant to the provisions of C.C.P. §1033.5, *et seq*. However, allowable costs in arbitration is not governed by these C.C.P. provisions: "Allocation of costs in arbitration proceedings is governed by the parties agreement or the rules governing the arbitration proceeding. The provisions of the Code of Civil Procedure for allocation of costs of suit (CCP §1032 et seq.) do not control arbitration awards." Cal. Practice Guide, Alternative Dispute Resolution, (The Rutter Group 2018) at ¶ 5:434.1, citing to *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1106 [fn. 9]; and *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1815.

All of the requested non-JAMS, non-expert, costs are found to be reasonable, adequately documented, and allowable under the parties' contract. They are awarded as requested: $62,171.77

///////

///////

///////

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 10 of 15

 
3.  Costs of Experts: $105,692.12:

Claimants employed several experts in their preparation of this case,[9] and each provided testimony and/or supplied documentary evidence. Also, the undersigned appointed a neutral forensic accountant[10] to perform work in this matter, and the parties were required to share in the cost of that expert; that expert's costs are included in Claimants' request.

Deol argues that none of these expert costs are allowable under the C.C.P. and, even if allowable, they have not been properly documented. Once again, the provisions of the C.C.P. regarding costs do not apply to this motion. And each expert's work was directly relevant to the issues presented in this arbitration, and the cost of each is found to be a normal and reasonable expense incurred in preparing and presenting a case of this complexity. As such, they are part of the "expenses incurred or suffered by the Lender due to delay in the repayment of the Loan or anything contrary to this Agreement." These expenses have been adequately documented; they are awarded as requested: $105,692.12.

## C. Interest on Distributions Taken by Deol:

The FPFA allowed GFV to recover interest on 49% of the distributions that Deol improperly took from Econergy and withheld from GFV. Deol challenges the allowance of any pre-award interest on GFV's delayed receipt of these distributions, arguing that the amount was unliquidated until issuance of the FPFA. Deol also argues that, if interest is to be awarded, it must be at the 7% rate for tort actions under Civil Code § 3288, and not at the 10% rate for contract actions under Civil Code §3287(a).

Here, the amount Deol took out of Econergy's Indian bank accounts and out of repatriated funds was clearly known to him; he was the one making the withdrawals. He also knew that those withdrawals were done without the co-owner's involvement or consent. Deol also knew that GFV was a 49% owner of Econergy, and entitled to 49% of any distributions made by the corporation to its shareholders.

Deol's taking of these distributions was both a breach of the Loan Agreement and a tort, i.e., a breach of his fiduciary duty to the company's co-owner, GFV. The undersigned considers Deol's conduct with regard to these distributions as primarily tortious, and notes that "Civil Code section 3288 permits the trier of fact to award interest in tort actions . . . When, by virtue of fraud or breach of fiduciary duty of the defendant, a

---

[9] These included ArrowBeach LLC-Evidentia Consulting (Monica Ip) – tax/accounting; Eric Sundheim of Teknos Associates LLC for valuation of Deol's interest in Econergy; Colliers International was used for valuation of the land transferred under Deol's loan guarantee; Surinder Bedi was used for electrical engineering issues regarding PV Panel and grounding issues; and Sanli Pastore & Hill (the court reporters for the deposition of Deol's expert, Forest Vickery).

[10] Joseph Anastasi, CPA, of the Berkeley Research Group.

 

plaintiff has been deprived of the use of his money or property and is obligated to resort to litigation to recover it, the inclusion of interest in the award is necessary in order to make the plaintiff whole." *Nordahl v. Franzalia* (1975) 48 Cal.App.3d 657, 665. Further, the fact that the precise amount of those improper distributions was not determined until the arbitration award does not bar recovery of interest on those sums: "[t]he fact that the sum is unliquidated does not remove the discretion to award interest in such instances." *Baker v. Pratt* (1986) 176 Cal.app.3d 370, 383.

As such, GFV is awarded interest at 7% per annum on its 49% share of each of the distributions taken by Deol, from the date of each distribution to the date of this Order. The calculations are as follows:

### Distributions Taken from Econergy's Indian Bank Accounts

| Source Bank and Date of Distribution | 49% of the Distribution Taken by Deol | Daily Interest at 7% on this 49% of Distribution | Total Days from Distribution to this Order | Total Interest to 11/16/18 |
|---|---|---|---|---|
| IDBI   12/24/14 | $11,565.47 | $2.218 | 1422 | $3,153.99 |
| IDBI   12/24/14 | 46,175.64 | 8.856 | 1422 | 12,593.23 |
| IDBI   01/02/15 | 3,872.47 | 0.743 | 1413 | 1,049.86 |
| HDFC 01/02/15 | 7,744.45 | 1.485 | 1413 | 2,098.32 |
| IDBI   01/27/15 | 11,583.11 | 2.221 | 1388 | 3,084.14 |
| IDBI   03/24/15 | 15,704.99 | 3.012 | 1332 | 4,011.98 |
| IDBI   04/20/15 | 7,768.95 | 1.490 | 1305 | 1,944.45 |
| HDFC 05/11/15 | 153.37 | 0.029 | 1284 | 37.24 |
| HDFC 05/11/15 | 11,491.48 | 2.203 | 1284 | 2,828.65 |
| IDBI   06/11/15 | 11,496.87 | 2.204 | 1253 | 2,761.61 |
| IDBI   07/04/15 | 5,423.81 | 1.040 | 1230 | 1,279.20 |
| IDBI   07/10/15 | 11,605.65 | 2.225 | 1224 | 2,723.40 |
| IDBI   08/26/15 | 7,411.74 | 1.421 | 1177 | 1,672.51 |
| HDFC 09/29/15 | (14,871.01) | (2.852) | 1143 | (3,259.83) |
| Operating Expenses in Excess of Those Allowed under the Agreements: A midpoint start date of 05/31/15 is used | 74,725.00 | 14.331 | 1264 | 18,114.38 |
| | | | TOTAL | $54,093.13 |

///////

///////

///////

**ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS**

Exhibit 1 to
Proof of Claim
Page 12 of 15

**Distributions Taken from Repatriated Econergy Funds**

| Date Funds Withdrawn by Deol | 49% of the Distribution to Deol | Daily Interest at 7% on this 49% of Distribution | Total Days from Distribution to Date of this Order | Total Interest to 11/16/18 |
|---|---|---|---|---|
| 02/7/14 | $34,300.00 | $6.578 | 1742 | $11,458.88 |
| 12/12/14 | 857.50 | .164 | 1434 | 235.18 |
| 9/25/15 | 980.00 | .188 | 1147 | 215.64 |
| 9/30/15 | 9,555.00 | 1.832 | 1142 | 2,092.14 |
| 10/21/15 | 6,860.00 | 1.315 | 1121 | 1,474.12 |
| 11/10/15 | 1,225.00 | .235 | 1101 | 258.74 |
| 11/13/15 | 1,225.00 | .235 | 1098 | 258.03 |
| 12/01/15 | 2,450.00 | .469 | 1080 | 506.52 |
| 12/02/15 | 1,470.00 | .282 | 1079 | 304.28 |
| 12/17/15 | 3,675.00 | .705 | 1064 | 750.12 |
| 01/06/16 | 612.50 | .117 | 1044 | 122.15 |
| 01/14/16 | 3,185.00 | .611 | 1036 | 632.99 |
| 02/01/16 | 980.00 | .188 | 1018 | 191.38 |
| 02/23/16 | 3,307.00 | .634 | 996 | 631.46 |
| 07/25/16 | 767.06 | .147 | 844 | 124.07 |
| 09/21/16 | 1,895.32 | .363 | 786 | 285.32 |
| 10/18/16 | 1,102.50 | .211 | 759 | 160.15 |
| 12/15/16 | 1,078.00 | .207 | 701 | 145.11 |
| 05/05/17 | 998.63 | .192 | 560 | 107.52 |
| | | | TOTAL | $19,953.80 |

As such, GFV is awarded a total of $74,046.93 as and for interest on the distributions wrongfully taken, and withheld, by Deol.

**D. Which Parties Should be Held Liable for the Fees and Costs Awarded Above?**

Lastly, Claimants argue that any fees and costs awarded in this matter should be borne solely by Deol, and not jointly with Econergy; Deol objects.

As discussed above, the basis for awarding fees and costs (other than the JAMS costs) is the contractual indemnity provision (Article 6) of the Loan Agreement. That Article provides that "Borrower [Econergy] and Guarantor [Deol] *shall jointly and severally indemnify and keep indemnified the Lender* [Goel] . . ."

The parties agreed to a joint and several indemnity obligation, and the undersigned is not persuaded that cause exists to rewrite that agreement. As such, the fees and costs are deemed a joint and several obligation of the indemnitors, Deol and Econergy.





## ORDERS

Based on the above findings and conclusions, the following is ordered:

1. Goel Family Ventures I, LP is awarded **$74,046.93** against Jaspal Singh Deol, as and for interest on the distributions wrongfully taken by Deol from Econergy, Inc. and withheld from GFV;

2. Claimants/Counter-Respondents Prabhakar Goel and Goel Family Ventures I, LP, are awarded the following as against Respondents/Counter-Claimants Jaspal Singh Deol and Econergy, Inc. jointly and severally:

|  |  |  |
|---|---|---|
| a. Reasonable attorneys fees: | | **$985,788.72** |
| b. Costs: | | |
| | JAMS arbitration costs (through and including this Order and the Final Award): | $65,005.77 |
| | Non-JAMS costs (other than expert costs) | $62,171.77 |
| | Expert costs | $105,692.12 |
| | Total Costs Awarded: | **$232,869.66** |

The above amounts will be included in the Final Award, issued herewith.

Dated: November 16, 2018.

Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator

---

 
### PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Goel, Prabhakar vs. Econergy, Inc., et al.
Reference No. 1110016365

I, Jason Clark, not a party to the within action, hereby declare that on  December 03, 2018, I served the attached Order on Attorneys' Fees, Costs, and Interest on Distributions on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Jose, CALIFORNIA, addressed as follows:

Robert J. Yorio Esq.
Christine Watson Esq.
Carr & Ferrell, LLP
120 Constitution Drive
Menlo Park, CA  94025
Phone: 650-812-3400
yorio@carrferrell.com
cwatson@carrferrell.com
    Parties Represented:
    Prabhakar Goel

Ognian Gavrilov Esq.
Eliezer M. Cohen Esq.
Gavrilov & Brooks
2315 Capitol Ave.
Sacramento, CA  95816
Phone: (916) 504-0529
info@gavrilovlaw.com
ecohen@gavrilovlaw.com
    Parties Represented:
    Econergy, Inc.
    Jaspal Singh Deol

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Jose, CALIFORNIA on  December 03, 2018.

Jason Clark
JClark@jamsadr.com

Exhibit 1 to
Proof of Claim
Page 15 of 15

 
# EXHIBIT 2



1    ROBERT J. YORIO (SBN 93178)
     yorio@carrferrell.com
2    ILENE H. GOLDBERG (SBN 168051)
     igoldberg@carrferrell.com
3    CARR & FERRELL LLP
     120 Constitution Drive
4    Menlo Park, California 94025
     Telephone No.: (650) 812-3400
5    Facsimile No.: (650) 812-3444

6    Attorneys for Plaintiffs
     ECONERGY, INC., PRABHAKAR GOEL and
7    GOEL FAMILY VENTURES I LP

8

9

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                 IN AND FOR THE COUNTY OF SANTA CLARA

12                          UNLIMITED JURISDICTION

13   ECONERGY, INC., a California          )   CASE NO. 17- CV-314877
     corporation; GOEL FAMILY             )
14   VENTURES I LP, a partnership, and     )   [PROPOSED] ORDER TO CONFIRM
15   PRABHAKAR GOEL, an individual,        )   FINAL ARBITRATION AWARD
                                           )
16              Plaintiffs,                )   Date:   January 10, 2019
                                           )   Time:   9:00 a.m.
17        v.                               )   Dept.:  6
                                           )   Judge:  Honorable Theodore C. Zayner
18   JASPAL SINGH DEOL, an individual;     )
19   and DOES I through XX, inclusive,     )   Date Action Filed: August 22, 2017
                                           )   Trial Date: Not Yet Set
20              Defendants.                )
                                           )
21                                         )

22

23        This matter came on for hearing on Thursday, January 10, 2019, on the Motion of Plaintiffs

24   Goel Family Ventures I LP and Prabhakar Goel for an Order to Confirm the Final Arbitration

25   Award in the Arbitration entitled *Goel, et al. v. Econergy, et al.*, JAMS Case No. 1110016363,

26   entered on November 16, 2018. After consideration of oral argument by counsel and the briefs

27   submitted by the parties, and good cause appearing therefor,

28        IT IS HEREBY ORDERED that:

 
## FINAL ARBITRATION AWARD

The Petition to Confirm the Final Arbitration Award of Plaintiffs Goel Family Ventures I LP and Prabhakar Goel is GRANTED and the November 16, 2018 Final Arbitration Award is hereby confirmed as a Judgment;

### MONETARY RELIEF

1.     Plaintiff Prabhakar Goel is awarded $690,716 against Econergy, Inc. for the balance due under the Loan Agreement as of June 21, 2017.  Plaintiff Prabhakar Goel is awarded $97,078.71 in interest from the time of the initial Partial Final Award (June 21, 2017) (Final Award, Section II.A);

2.     Defendant Jaspal Deol is awarded $624,291.41 against Plaintiff Prabhakar Goel representing the value of Defendant Jaspal Deol's interest in Econergy's shares and the Ludhiana land payable once the land and shares have been fully transferred to Plaintiff Prabhakar Goel  after being offset by an amount of $352,308.59 which is the amount awarded against Deol to Goel for the Deol's guarantee on the defaulted loan (Final Award, Section II.B);

3.     Plaintiff Goel Family Ventures I LP is awarded $438,425.54 against Defendant Jaspal Deol representing 49% of the dividends Defendant Jaspal Deol wrongfully took and withheld from Goel Family Ventures, plus interest of $74,046.93 (Final Award, Section II.C);

4.     Plaintiffs Prabhakar Goel and Goel Family Ventures are awarded $985,788.72 in attorneys' fees against Defendant Jaspal Deol and Econergy jointly and severally (Final Award, Section IV);

5.     Plaintiffs Prabhakar Goel and Goel Family Ventures are awarded $232,869.66 in costs (including expert fees and arbitration fees) against Defendant Jaspal Deol and Econergy jointly and severally (Final Award, Section IV);

6.     Defendant Jaspal Deol is awarded $163,357.04 against Econergy for rent due from Econergy for its use of the Ludhiana land from the time of plant commissioning (March 2, 2012) to October 1, 2017 (the valuation date for Defendant Jaspal Deol's transfer of the land to Plaintiff Prabhakar Goel) (Final Award, Section II.D);

 
7.      Plaintiff Econergy, Inc. is awarded $4,473 against Defendant Jaspal Deol for the balance due from Defendant Jaspal Deol on Econergy's second capital call in late 2015 (Final Award, Section II.E); and

8.      Plaintiff, Econergy, Inc. is awarded $3,000 against Defendant Jaspal Deol for the interest Defendant Jaspal Deol received on bank guarantees Econergy had deposited with IREDA (Final Award, Section II.F).

9.      Defendant Jaspal Deol is required to indemnify Plaintiffs Prabhakar Goel, Goel Family Ventures and Econergy in the event they are subject to interest payments and/or tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017, and the JAMS Arbitrator retains jurisdiction to determine the amount of any such indemnification, if needed (Final Award, Further Partial Final Award, Section IV.b at p. 64).

## INJUNCTIVE RELIEF

A.    Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

     1.      Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

     2.      Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

     3.      Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.    Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

     1.      Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

     2.      Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff

---

[1]   The land consists of eleven parcels totaling approximately 10 .2 acres , described as Khasra No. 67/20/2, 21, 68/23, 24, 25 , 74/3 , 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon , Dist. Ludhiana, Punjab, India.

 
Prabhakar Goel, or his designee, three (3) original properly executed powers of attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or his designee;

3.   Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar power plant and its operations, including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and (c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

4.   Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business and its dealing with PEDA, IREDA and PSPCL, including all tax returns (and supporting documents therefor) filed in the U.S. and all documents pertaining to Econergy in India, and (b) original documents regarding Deol's purchase and operation of the land underlying the Econergy Ludhiana plant;

5.   Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five (5) days, three fully-executed and notarized originals of the Affidavit which is attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated February 20, 2018; and

6.   To immediately instruct Surinder Singh Sandhu to refrain from accessing or attempting to access Econergy, Inc.'s bank accounts.

C.   Regarding Defendant Jaspal Deol's Indian Court Actions:

1.   Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's

 
1    Ludhiana solar power plant;

2.   Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has
     filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in
     Econergy, Inc.; that he no longer has the legal capacity to pursue actions on behalf of
     Econergy, Inc., and that any individual claims he possesses from the planning,
     development, and operation of Econergy's Ludhiana solar plant are matters that he is
     required to submit to binding arbitration in lieu of any court action; and

3.   Defendant Jaspal Deol, and any person or persons acting at his behest or on his
     behalf, including agents, employees, representative, and all persons acting in concert
     or participating with them, are ordered to forthwith instruct any Indian counsel
     acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith
     withdraw or dismiss the entire action pending in the court of Sh. K. K. Kareer
     Commercial Court Ludhiana, Punjab, India, including all claims on behalf of
     Econergy, Inc. and claims on behalf of himself individually regarding the planning,
     development, and operation of Econergy's Ludhiana solar plant.

IT IS SO ORDERED.

DATED:  **JAN 1 0 2019**                          Theodore C. Zayner
                                        _____
                                        JUDGE OF THE SUPERIOR COURT

[PROPOSED] ORDER TO CONFIRM FINAL ARBITRATION AWARD (CASE NO. 17-CV-314833)

 

# EXHIBIT 3




ROBERT J. YORIO (SBN 93178)
yorio@carrferrell.com
ILENE H. GOLDBERG (SBN 168051)
igoldberg@carrferrell.com
CARR & FERRELL LLP
120 Constitution Drive
Menlo Park, California 94025
Telephone No.: (650) 812-3400
Facsimile No.: (650) 812-3444

Attorneys for Plaintiffs
ECONERGY, INC., PRABHAKAR GOEL and
GOEL FAMILY VENTURES I LP



(ENDORSED)
**FILED**
JAN 1 0 2019

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____H. ARAGON_____DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

UNLIMITED JURISDICTION

| | |
|---|---|
| ECONERGY, INC., a California corporation; GOEL FAMILY VENTURES I LP, a partnership, and PRABHAKAR GOEL, an individual,<br><br>        Plaintiffs,<br><br>v.<br><br>JASPAL SINGH DEOL, an individual; and DOES I through XX, inclusive,<br><br>        Defendants. | CASE NO. 17- CV-314877<br><br>JUDGMENT |

The Court having entered its Order confirming the Final Arbitration Award issued in the JAMS arbitration proceeding between the parties, JUDGMENT is entered as follows:

### FINAL ARBITRATION AWARD

The Petition to Confirm the Final Arbitration Award of Plaintiffs Goel Family Ventures I LP and Prabhakar Goel is GRANTED and the November 16, 2018 Final Arbitration Award is hereby confirmed as a Judgment;



## MONETARY RELIEF

1. Plaintiff Prabhakar Goel is entitled to Judgment in the amount of $787,794.71 against Econergy, Inc.;

2. Defendant Jaspal Deol is entitled to Judgment in the amount of $624,291.41 against Plaintiff Prabhakar Goel for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred to Plaintiff Prabhakar Goel;

3. Plaintiff Goel Family Ventures I LP is entitled to Judgment in the amount of $512,472.47 against Defendant Jaspal Deol;

4. Plaintiffs Prabhakar Goel and Goel Family Ventures are entitled to Judgment in the amount of $1,218,658.38 against Defendant Jaspal Deol and Econergy jointly and severally;

6. Defendant Jaspal Deol is entitled to Judgment in the amount of $155,884.01 against Econergy, Inc.; and

7. Plaintiffs Econergy, Inc., Goel and Goel Family Ventures are entitled to Judgment against Defendant Jaspal Deol requiring Defendant Jaspal Deol to indemnify them in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

## INJUNCTIVE RELIEF

A. Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

 1. Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

 2. Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

 3. Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B. Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

 1. Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest

Exhibit 3 Page 2
Proof of Claim
Page 2 of 4

 

in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

2.   Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff Prabhakar Goel, or his designee, three (3) original properly executed powers of attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or his designee;

3.   Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar power plant and its operations, including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and ( c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

4.   Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business and its dealing with PEDA, IREDA and PSPCL, including all tax returns (and supporting documents therefor) filed in the U.S. and all documents pertaining to Econergy in India, and (b) original documents regarding Deol's purchase and operation of the land underlying the Econergy Ludhiana plant;

5.   Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five (5) days, three fully-executed and notarized originals of the Affidavit which is attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated February 20, 2018; and

6.   To immediately instruct Surinder Singh Sandhu to refrain from accessing or

---

[1]   The land consists of eleven parcels totaling approximately 10 .2 acres , described as Khasra No. 67/20/2, 21, 68/23, 24, 25 , 74/3 , 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

 
           attempting to access Econergy, Inc.'s bank accounts.

C.     Regarding Defendant Jaspal Deol's Indian Court Actions:

     1.     Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's Ludhiana solar power plant;

     2.     Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in Econergy, Inc.; that he no longer has the legal capacity to pursue actions on behalf of Econergy, Inc., and that any individual claims he possesses from the planning, development, and operation of Econergy's Ludhiana solar plant are matters that he is required to submit to binding arbitration in lieu of any court action; and

     3.     Defendant Jaspal Deol, and any person or persons acting at his behest or on his behalf, including agents, employees, representative, and all persons acting in concert or participating with them, are ordered to forthwith instruct any Indian counsel acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith withdraw or dismiss the entire action pending in the court of Sh. K. K. Kareer Commercial Court Ludhiana, Punjab, India, including all claims on behalf of Econergy, Inc. and claims on behalf of himself individually regarding the planning, development, and operation of Econergy's Ludhiana solar plant.

DATED:   JAN 1 0 2019                                 

                                  Theodore C. Zayner

                                  JUDGE OF THE SUPERIOR COURT

# EXHIBIT K

Fill in this information to identify the case:

Debtor 1     Jaspal Singh Deol

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:  Eastern District of California

Case number   18-23885-C-11

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | Goel Family Ventures I, L.P. |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor _____ |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes.  From whom? _____ |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Thomas G. Mouzes, Boutin Jones Inc. | Prabhakar Goel |
| | Name | Name |
| | 555 Capitol Mall, Suite 1500 | 98 Ridgeview Drive |
| | Number      Street | Number      Street |
| | Sacramento          CA        95814 | Atherton          CA        94027 |
| | City                State      ZIP Code | City              State      ZIP Code |
| | Contact phone 916-321-4444 | Contact phone _____ |
| | Contact email tmouzes@boutinjones.com | Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | |

| 4. Does this claim amend one already filed? | ☐ No |
| --- | --- |
| | ☑ Yes.  Claim number on court claims registry (if known) 6-1     Filed on 08/28/2018 |
| | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No |
| --- | --- |
| | ☐ Yes.  Who made the earlier filing? _____ |

Official Form 410                     Proof of Claim                          page 1

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

| 6. | Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |
|---|---|---|

| 7. | How much is the claim? | $ _____1,731,130.85_ . Does this amount include interest or other charges?<br>☐ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br>See attachment.  In addition to above, there is a contingent claim. |
|---|---|---|

| 9. | Is all or part of the claim secured? | ☐ No<br>☐ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**         $_____<br>**Amount of the claim that is secured:**  $_____<br><br>**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**  $_____<br><br>**Annual Interest Rate (when case was filed)** _____ %<br>☐ Fixed<br>☐ Variable |
|---|---|---|

| 10. | Is this claim based on a lease? | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____ |
|---|---|---|

| 11. | Is this claim subject to a right of setoff? | ☐ No<br>☐ Yes. Identify the property: See attached.  Reservation of setoff and recoupment. _____ |
|---|---|---|

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

                                                                            Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).      $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).      $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).      $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).      $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).      $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.      $_____

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

**Part 3: Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/27/2019
                       MM / DD / YYYY

_Signature_

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Prabhakar Goel |
| | First name      Middle name      Last name |
| Title | General Partner |
| Company | Goel Family Ventures I, L.P. |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 98 Ridgeview Drive |
| | Number      Street |
| | Atherton      CA      94027 |
| | City      State      ZIP Code |
| Contact phone | _____      Email _____ |

### Attachment to Amended Proof of Claim

Goel Family Ventures I, L.P. ("GFV") submits this attachment to its amended proof of claim. Prabhakar Goel ("Goel") and GFV are collectively referred to as "Claimants". The following is a summary only. This proof of claim is based on information currently available and is subject, from time to time, to changes, amendments and/or modifications.

Claimants and Econergy, Inc. ("Econergy") were participants in a JAMS arbitration proceeding ("Arbitration") and action filed in the Superior Court of the State of California, County of Santa Clara, in the case entitled *Econergy, Inc. et al. v. Jaspal Deol*, Case No. 17-CV-314877 (the "State Court Action") against Debtor Jaspal Deol ("Deol" or "Debtor"). Among other things, those proceedings resulted in decisions, Orders for specific performance in favor of Goel and GFV including, requiring Debtor to turn over certain property to Goel and subsequent injunctions to implement those various Orders. Those Orders have been largely implemented. See generally, Doc. No. 38-46, 49-56.

Long before the filing of this bankruptcy case by Debtor, the Arbitrator in the Arbitration unequivocally transferred all of the ownership of Debtor's stock in Econergy ("Stock") to Goel effective August 16, 2017, and the ownership of the land in Ludhiana, India on which the solar plant is built (the "Land") effective October 1, 2017, in satisfaction of then existing secured debt of $352,308.59 due Goel, and removed Debtor as a director of Econergy effective August 16, 2017, which orders were confirmed in the orders and judgment of the State Court in the State Court Action. In the Arbitration and during June 2017, Deol was given the clear option to repay his 51% share of the unpaid construction loan owed to Goel under the applicable loan agreement/guaranty, and to retain the Stock and the Land securing that loan by paying his portion of the secured debt determined by the Arbitrator in the amount of $352,308.59, after the application of various credits. That said, Deol knowingly and intentionally elected not to repay his share of the debt and opted instead to have the Stock and the Land transferred to Goel in satisfaction of that secured debt, and to thereafter have the Stock and the Land valued by the Arbitrator following the submission of expert valuation reports submitted by the parties. The Stock and Land are the property of Goel.

Prior to the filing of this bankruptcy case, the relevant orders and decisions in the Arbitration and the Superior Court in the State Court Action included, without limitation, the following:

1.      Partial Final Award (Corrected) dated June 21, 2017.

2.      Arbitrator's Orders Following August 4, 2017, Hearing.

3.      Arbitrator's Order Enjoining Actions Undertaken By Jaspal Singh Deol In Violation Of Orders Issued In This Proceeding dated August 16, 2017.

4.      Superior Court Order filed September 11, 2017 (injunction).

5.      Arbitrator's Further Injunctive Orders Directed To Jaspal Singh Deol dated February 20, 2018.

1

6.    Further Partial Final Award Determining Value dated February 20, 2018.

7.    Arbitrator's email Order dated March 19, 2018.

8.    Further Partial Final Award dated April 30, 2018.

9.    Superior Court Order After Hearing On Motions To Vacate February 20, 2018
      Arbitration Awards.  See Doc. No. 44-46 for copies of these documents. These
      documents, along with the loan agreement/guaranty, are also available upon request.

Prior to the commencement of this case, the Arbitrator determined that Claimants were the prevailing parties and as such were entitled to an award of attorney fees and costs. Claimants' Application for attorney fees, interest and other monetary awards was submitted to the Arbitrator and was awaiting determination when Debtor's bankruptcy case was filed. The supporting papers of the Application are voluminous and are not attached hereto, but are also available upon request.

On October 31, 2018, this Court granted the motion for stay relief of Claimants including to conclude and confirm the existing arbitration award in favor of Claimants and for the entry of judgment in the State Court Action. (See Doc. No. 87.)

On November 16, 2018, the Arbitrator issued his Order On Attorneys' Fees, Costs And Interest On Distribution, a copy of which is attached hereto as <u>Exhibit 1</u> and incorporated herein. The Order provides in part that:

1.    GFV was awarded $74,046.93 against Debtor for interest on distributions wrongfully
      taken by Debtor from Econergy and withheld from GFV.

2.    Goel and GFV were awarded against Debtor and Econergy, jointly and severally,
      attorney fees of $985,788.72 and costs of $232,869.66, for a total of <u>$1,218,658.38.</u>

On January 10, 2019, the Superior Court in the State Court Action confirmed the arbitration awards and the specific performance and injunctive relief in favor of Claimants. A copy of the Order To Confirm Final Arbitration Award is attached hereto as <u>Exhibit 2</u> and incorporated herein.

On January 10, 2019, the Superior Court in the State Court Action entered its judgment confirming the arbitration award including for monetary relief, specific performance and injunctive relief in favor of Claimants. A copy of the Judgment is attached hereto as <u>Exhibit 3</u> and incorporated herein.

The Judgment fully affirmed the Final Arbitration Award. The Judgment contained an award of monetary relief as follows:

### MONETARY RELIEF

1.    Plaintiff Prabhakar Goel is entitled to Judgment in the amount of $787,794.71
      against Econergy, Inc.;

2

2.      Defendant Jaspal Deol is entitled to Judgment in the amount of $624,291.41 against Plaintiff Prabhakar Goel for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred to Plaintiff Prabhakar Goel;

3.      Plaintiff Goel Family Ventures I LP is entitled to Judgment in the amount of $512,472.47 against Defendant Jaspal Deol;

4.      Plaintiffs Prabhakar Goel and Goel Family Ventures are entitled to Judgment in the amount of $1,218,658.38 against Defendant Jaspal Deol and Econergy, jointly and severally;

6.      Defendant Jaspal Deol is entitled to Judgment in the amount of $155,884.01 against Econergy, Inc.; and

7.      Plaintiffs Econergy, Inc., Goel and Goel Family Ventures are entitled to Judgment against Defendant Jaspal Deol requiring Defendant Jaspal Deol to indemnify them in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

As to monetary relief, the Judgment reflects the following concerning to Debtor:

1.      Goel to pay Debtor $624,291.41 for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred by Debtor to Goel.

2.      Debtor to pay GFV $512,472.47.

3.      Debtor to pay Goel and GFV $1,218,658.38.

4.      Econergy to pay Debtor $155,884.01.

5.      Debtor to indemnify Econergy, Goel and GFV in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

Excluding the indemnity obligations of Debtor to GFV which are unknown at this time and discussed below, the monetary amount due GFV from Debtor under the Judgment is $1,731,130.85 ($1,218,658.38 + $512,472.47). GFV has no monetary obligations to Debtor under the Judgment.

3

The Judgment contained specific performance and injunctive relief as follows:

## INJUNCTIVE RELIEF

A.   Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

1. Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

2. Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

3. Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.      Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

1. Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

2. Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff Prabhakar Goel, or his designee, three (3) original properly executed powers of attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or his designee;

3. Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar plant and its operations including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and (c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

4. Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business and its dealing with PEDA, IREDA and PSPCL, including all tax returns; (and

---

[1] The land consists of eleven parcels totaling approximately 10.2 acres, described as Khasra No. 67/20/2, 21, 68/23, 24, 25, 74/3, 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

supporting documents therefor) filed in the U.S. and all documents pertaining to
Econergy in India, and (b) original documents regarding Deol's purchase and operation
of land underlying the Econergy Ludhiana plant;

5. Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five (5)
days, three fully-executed and notarized originals of the Affidavit which is attached as
Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated
February 20, 2018; and

6. To immediately instruct Surinder Singh Sandhu to refrain from accessing or attempting
to access Econergy, Inc.'s bank accounts.

C.      Regarding Defendant Jaspal Deol's Indian Court Actions:

1. Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any
legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy Inc. or
on behalf of Defendant Jaspal Deol individual interests, involving the affairs of
Econergy, Inc., including the planning, development, and operation of Econergy's
Ludhiana solar power plant;

2. Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has filed
actions on behalf of Econergy, Inc., that he no longer holds any legal interest in Econergy
Inc., that he no longer has the legal capacity to pursue actions on behalf of Econergy Inc.,
and that any individual claims he possesses from the planning, development, and
operation of Econergy's Ludhiana solar plant are matters that he is required to submit to
binding arbitration in lieu of any court action; and

3. Defendant Jaspal Deol, and any person or persons acting at his behest or on his behalf,
including agents, employees, representative, and all persons acting in concert or
participating with them, are ordered to forthwith instruct any Indian counsel acting on his
behalf, including Damanbir Singh Sobti, in writing, to forthwith withdraw or dismiss the
entire action pending in the court of Sh. K. K. Kareer Commercial Court Ludhiana,
Punjab, India, including all claims on behalf of Econergy, Inc. and claims on behalf of
himself individually regarding the planning, development, and operation of Econergy's
Ludhiana solar plant.

   GFV is informed Debtor has not complied with the injunctive orders and judgment of the
Arbitrator and/or the State Court.

   Orders for specific performance are not an appropriate subject for a proof of claim. See
In re Shearin Family Investments, LLC, 418 B.R. 584, 588 (Bankr. E.D. N.C. 2009) [Because
the right to specific performance is not a claim, the obligation of the debtor to perform is not a
debt and is not dischargeable. Instead, the obligation survives the bankruptcy proceeding.]; In re
Ter Bush, 273 B.R. 625, 628-29 (Bankr. S.D. Cal. 2002) [The arbitrator's award for specific
performance is not a claim within the meaning of the Bankruptcy Code because the underlying
breach does not give rise to a right to the payment of money damages.]; In re Indian River

5

1037516.1A ATTACHMENT TO GOEL FAMILY VENTURES I, L.P. AMENDED CLAIM

<u>Estates, Inc.</u>, 293 B.R. 429, 435 (Bankr. N.D. Ohio 2003) [Movant's right to receive specific performance is not a claim, and the right of specific performance is not a debt that may be discharged in bankruptcy.]; <u>In re Pribonic</u>, 70 B.R. 596, 602 (Bankr. W.D. Pa. 1987) [Aggrieved land contract vendee who holds a decree for specific performance has an equitable remedy that does *not* give rise to a right to payment. Therefore, such vendees do not and technically cannot hold a claim for bankruptcy purposes.]; <u>In re Acevedo</u>, 441 B.R. 428, 437 (Bankr. S.D.N.Y. 2010) [The trustee cannot discharge the obligation under the state court orders in bankruptcy, as that obligation does not constitute a claim against the estate. The trustee cannot avoid the equitable remedy of specific performance and must comply with the orders of the state court.].

       Debtor must indemnify Goel, GFV and Econergy for state and federal tax liabilities arising out of his failure to file returns or incorrect returns filed for Econergy. This amount is unknown at this time and is subject to proof and amendment from time to time. As a result, the claim of GFV includes a contingent and unliquidated claim including for indemnity.

       GFV reserves the right to amend, modify and/or supplement this proof of claim, from time to time, including, without limitation, to set forth any indemnity obligations of Debtor or any other claim of GFV. GFV also asserts any rights it has or may have to setoff and/or recoupment, and to amend, modify and/or supplement this claim from time to time to further set forth such matters as additional information is obtained.

       Nothing herein nor in any other appearance, pleading, claim, suit, motion, complaint, or any other writing or conduct shall constitute a waiver of any procedural and/or substantive rights, remedies and/or defenses including, without limitation: (a) the right to have any and all final orders in any and all matters entered only after de novo review by a United States District Court Judge; (b) the right to have any matter heard and tried before an Article III court; (c) the right to have the reference of this matter withdrawn by the United States District Court in any matter or proceeding subject to mandatory or discretionary withdrawal; (d) other rights, claims, actions, remedies, defenses or other matters to which GFV is entitled; or (e) the right to be served directly with pleadings commencing an adversary proceeding, contested matter and/or lawsuit.

       Nothing herein nor in any other pleading or paper filed by GFV is or is to be construed as any waiver of the right or ability to demand or require alternative dispute resolution, mediation, arbitration, or similar process available under the applicable agreements, law or otherwise. Nothing herein nor in any other pleading or paper filed by GFV shall limit or impair any right, remedy, claim or interest, whether legal or equitable, including under the applicable law or otherwise, including against any person or entity. GFV reserves the right to attach or rely upon additional documents or evidence in support of this Proof of Claim including if, as, and when such additional documents or evidence become available.

       All of the above rights and/or remedies are hereby expressly reserved. The filing of this Proof of Claim or participating in the bankruptcy case shall not be deemed to constitute a concession or admission of jurisdiction in the case or cases or before this Court or any other court. Nor does GFV waive and specifically preserves any procedural and/or substantive defenses to any claim that may be asserted against GFV by Debtor, by any trustee of Debtor's estate, by any official committee appointed in this case, or by any other party, person, entity or group. The filing of this Proof of Claim shall <u>not</u> constitute an election of remedies or choice of

law or a waiver of any such rights relating thereto. Nothing contained in this Proof of Claim shall limit any right of GFV to commence or continue any proceeding or take any action to the extent permitted by the Bankruptcy Code, applicable non-bankruptcy law, or order of a court of competent jurisdiction.

 
# EXHIBIT 1

 
# JAMS ARBITRATION
## Case No. 1110016365

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

           Claimants,

   vs.

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

           Respondents.

_____/

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

           Counter-Claimants,

   vs.

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

           Counter-Respondents.

_____/

## ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

 

## PROCEDURAL BACKGROUND TO THIS MOTION

The Further Partial Final Award ("FPFA") that was issued herein on or about April 30, 2018, resolved all issues in this arbitration other than the amount of attorneys' fees and costs to be awarded to the prevailing parties, Prabhakar Goel ("Goel") and Goel Family Ventures I, LP ("GFV")[1] and the amount of interest Deol owed to GFV on improperly converted distributions.

Specifically, the FPFA included the following findings and orders regarding attorneys' fees, costs, and interest on distributions:

A. Attorneys' Fees and Costs:

"Prabhakar Goel and Goel Family Ventures I, LP, having obtained the greater relief in this matter, including having been awarded the bulk of the relief they requested and having defeated virtually every claim tendered by Jaspal Singh Deol and Econergy, Inc., are deemed the prevailing parties in this matter. As such, they may recover from Deol and Econergy their reasonable attorneys' fees and costs incurred in the matter." [FPFA at p. 64]

B. Interest on Improper Distributions Taken by Deol:

"GFV is also awarded interest, at the legal rate, on its delayed receipt of [its share of Deol's improper] distributions, i.e., from the time each distribution was taken by Deol (and not shared with GFV) to the time of the Final Award herein." [FPFA at p. 63]

The FPFA, in Section VI ("Remaining Proceedings: Attorneys' Fees, Costs, and Interest"), established the procedure for determining the amount of attorneys' fees and costs, as well as the amount of interest to be awarded. Thereafter, the parties briefed these issues. No party requested oral argument, and thus these matters were deemed submitted for decision upon the filing of Claimants' reply papers on June 13, 2018. Shortly thereafter, however, Deol filed for Chapter 13 bankruptcy[2] and this arbitration was stayed until the Bankruptcy Judge's Order of October 31, 2018, lifting the automatic stay on the remaining phases of this arbitration. More than fourteen days have passed since the Order lifting the stay. [Fed. R. Bankr. P. 4001(a)(3)].

Having read and considered the moving, opposition, and reply papers, and good cause appearing, the undersigned makes the following findings and issues the following orders:

---

[1] In this Order, Goel and GFV may, at times, be referred to collectively as "Claimants."

[2] *In re Jaspal S. Deol, Debtor*, Case No. 18-23885-C-13, U.S. District Court for the Eastern District of California, filed October 20, 2018.

2

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 2 of 15

 

## DISCUSSION

### A. Attorneys' Fees:

1. Basis for Attorneys' Fees Award:

Respondents/Counter-Claimants Jaspal Singh Deol and Econergy, Inc. (collectively "Deol") object to the undersigned's ruling, in the FPFA, that Claimants may recover their attorneys' fees. Deol argues there is no legal basis, in statute or contract, for any award of fees to these prevailing parties.

Although there is no statute providing for fees in this case, Deol is incorrect in arguing that ". . . neither the loan agreement nor the co-development agreement contains a clause providing attorney fees to the prevailing party." [Opposition Memorandum of Points and Authorities ("Opposition Ps & As") at 3:26-27]. Rather, as pointed out by Claimants, Article 6 ("Indemnity") of the parties' Loan Agreement provides:

> "Borrower [Econergy] and Guarantor [Deol] shall jointly
> and severally indemnify and keep indemnified the Lender
> [Goel] and its representative, officers, employees and agents
> from and against any and all claims, liabilities, damages,
> demands, losses including but not limited to *any legal or
> other expenses incurred or suffered by the Lender due to delay
> in the repayment of the Loan or anything contrary to this Agreement*."
> [italics added]

This arbitration began as the result of Econergy's decision, orchestrated by Deol, to stop performing its obligations under the Loan Agreement, i.e., by stopping all repayments to Goel on his $1 million loan to Econergy. That non-payment was transformed into a rather complex matter as Deol sought to justify Econergy's non-payment by alleging a litany of misdeeds by Goel, which allegedly warranted not only stopping the loan payments, but which entitled Econergy to treat the loan as void *ab initio* or fully repaid. Other issues in the case also directly involved the Loan Agreement, included Deol's alleged default on his personal guarantee under that Agreement, and his default on the land purchase option he had given to GFV, which option was confirmed in the Loan Agreement. Indeed, Deol acknowledges that the Loan Agreement was at the core of the case: "[t]he primary claims in this case, [are] for breach of the Loan Agreement . . ." [Opposition Ps & As, at 9:9].

As such, Claimants are correct in arguing that "nearly all of the asserted claims (and cross-claims) implicated disputes (with the same underlying facts) involving the Loan Agreement (breach or default, excuse for non-repayment, loan already repaid, unenforceability, duress, rescission and setoff) . . ." [Reply brief at 2:18-20]. They are also correct that the Loan Agreement and the Co-Development Agreement "may be construed as one contract and the attorneys' fees clause in the Loan Agreement applie[d]

---

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 3 of 15

 

to claims under the Co-Development Agreement as well." [Claimants' Reply Brief at 3:7-9].

Deol should not be surprised that attorneys' fees are available to the prevailing parties in this case. From the start, *all* parties have treated this case as one in which fees would be awarded to the prevailing party. Deol's first "pleading" in this arbitration, his counter-claim dated December 9, 2014, requested an award of attorneys' fees. [Cross-Complaint dated December 9, 2014, at 11:21]. And, shortly thereafter, on January 5, 2015, in the Claimants' First Amended Complaint in Arbitration, they specifically referenced the indemnity provisions of Article 6 of the Loan Agreement and requested "[a]ll costs of suit, including legal and other expenses incurred or suffered by Plaintiffs due to delay in repayment of the Loan or anything contrary to the Loan Agreement as provided by Article [6], titled 'Indemnity,' of the Loan Agreement." [Claimants' First Amended Complaint in Arbitration at 11:21-23]

The fact that all parties requested fees does not necessarily make them awardable in the absence of a contract or statute;[3] however, their mutual requests for fees can be viewed as evidence that they interpreted the language of their agreements as allowing for an award of fees to the prevailing party.

The undersigned hereby reaffirms his determination, announced in the FPFA, that Claimants, as the prevailing parties, are entitled to recover their reasonable attorneys' fees and costs.

1. Use of Lodestar Method to Determine Reasonable Fees:

"California Courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3rd 999,1004-1005. As such, ". . . the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095. "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id*, at p. 1095. "Among the factors that may be considered by the trial court in adjusting the lodestar are the contingent nature of the fee award, the novelty and difficulty of the questions involved, and the skill displayed in presenting them." *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488.

---

[3] At least one case has held that if a party requests fees under a contract, that party will be judicially estopped from contesting the other party's right to fees even if the contract has no fees provision. *International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1187-1189. However, later cases have rejected this judicial estoppel argument and held that fees should not be awarded unless a contract or statute so provides. See, e.g., *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, at 899.

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 4 of 15



Both sides argue for use of the lodestar method, and the undersigned finds that method appropriate for determining reasonable fees in this arbitration.

Claimants contend that their attorneys' and paralegals' rates were reasonable, as were the number of hours they spent on the case; they request a lodestar award of $985,788.72. They also request an additional $44,373.77 for legal work done in the Santa Clara County Superior Court to enforce the earlier arbitration orders and an additional $31,333.57 related to defending against the legal action undertaken by Deol in India ("the Indian action") to re-litigate some of the issues of this case.

Deol rejoins that the hourly rates claimed by the attorneys and paralegals are excessive and unreasonable, and similarly that the time they spent on the case was excessive and unreasonable. As such, Deol argues for a large reduction in the lodestar amount. Deol also argues that it would be improper to award fees and costs to Claimants for their work in the Superior Court and in the Indian action. Neither side argues for an upward or downward modification of the lodestar amount, once it is determined

### 3. Are the Hourly Rates Reasonable?

Claimants submitted the declaration of lead attorney, Robert J. Yorio, Esq. ("Yorio"), giving the hourly rates billed by each attorney and paralegal working on this case. The hourly rates for the attorneys were as follows: for Yorio: $450/hr. (down from his usual fee of $900/hr.); for co-lead attorney Christine Watson: $350/hr. to $445/hr.; for all other attorneys: $375/hr. to $445/hr. The hourly rates for the paralegals ranged from $140/hr. to $210/hr.

Whether an attorney's hourly rate is reasonable is to determined by reference to the "market value" of those services: "[t]he reasonable market value of the attorney's services is the measure of a reasonable hourly rate." *Nemecek & Cole v. Horn* (2012) 208 Cal.App.4[th] 641, at p. 651. And, reasonable market value is determined by reference to the prevailing rate charged for similar work in the community where the proceedings took place. See, e.g., *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691.

Yorio, in his opening declaration, stated: "I am familiar with prevailing market rates for skilled attorneys experienced in commercial and intellectual property litigation. The rates charged to Claimants in this matter for partners, associates and paralegals (other than me) are consistent with rates charged by comparable attorneys at firms in San Francisco, San Jose and Silicon Valley. My billing rate charged to Claimants in this matter of $450.00 is substantially below that charged by commercial and intellectual property litigation attorneys with comparable skill and experience." [Initial Declaration of Robert J. Yorio at 3:15-21]

Yorio further declared: "I . . . have reviewed the hourly rates charged by all of the attorneys and paralegals in this matter and their respective experience levels. In addition, it is my responsibility as a litigation partner at Carr & Ferrell to regularly review and set billing rates for the members of our litigation practice group. In my opinion, the rates

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 5 of 15

charged to Claimants for representation in this matter are reasonable and well within the market range for comparably qualified and experienced attorneys and paralegals handling comparable litigation in the Bay Area." [Initial Declaration of Robert J. Yorio at 3:22-28]

Deol's objects to Yorio's declaration as "self-serving," and complains that none of the other attorneys and paralegals submitted declarations as to the reasonableness of their rates.[4] Deol also complains that Claimants did not produce declarations "from anyone else in the legal community as to standard community rates for lead counsel, associates, or paralegals." [Opposition Ps & As, at 5:1-2]

Interestingly, Deol did not submit a single declaration in opposition to this motion, and thus did not contradict Claimants' evidence as to the reasonableness of their attorneys' and paralegals' rates. Similarly, Deol did not reveal the hourly rates charged by his attorneys for work on this case. As such, Deol has not effectively challenged Yorio's declaration regarding the reasonableness of the rates charged. This situation is similar to that in *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010, where "[moving party's] counsel submitted evidence supporting his hourly rate and [opposing party] did not submit evidence of current rates contradicting this rate." The Court of Appeal concluded "the trial court did not abuse its discretion when it used the [unopposed hourly rate]." 215 Cal.App.4th at 1010.

Based on the uncontroverted evidence, as well as the undersigned's knowledge of attorney and paralegal rates in the San Francisco Bay Area generally (and in Silicon Valley in particular),[5] the requested attorney and paralegal rates are indeed reasonable market rates for attorneys and paralegals possessing their levels of experience and working on a case of this complexity. The hourly rates of the attorneys and paralegals are hereby found reasonable.

Indeed, Deol should be thankful that Yorio requested his fees only at the greatly discounted rate he gave this particular client. Yorio easily could have asked for the *reasonable hourly value* of his time, irrespective of this discount given the client. The law is clear that, when determining the reasonableness of an attorney's fees, the fee arrangement between that attorney and the client is irrelevant. See, e.g., *Nemeck & Cole v. Horn* (2012) 208 Cal.App.4th 641: "The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]" 208 Cal. App.4th at 651.

---

[4] Why Deol would discount Yorio's declaration as "self-serving" yet complain that there were no similar self-serving declarations from the other attorneys and paralegals, was not explained.

[5] "The court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009.

6

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 6 of 15

 
### 4. Was the Time Spent on the Case Excessive or Unreasonable?

According the Yorio's declaration, Claimants' attorneys and paralegals spent the following hours on this case: Yorio: 924.10 hours; Christine Watson: 812.60 hours; all other attorneys: 163.5 hours; paralegal Julia Burillo: 1,147.65 hours; all other paralegals: 9.15 hours.

Deol challenges these hours as excessive and unreasonable. He alleges both overstaffing and excessive time spent on certain tasks. He complains that (1) two attorneys participated in the depositions of Jaspal Deol, Prabhakar Goel, Vijay Goel, and Neelkant Gargya; (2) two attorneys participated in a telephonic case management conference held on August 13, 2014; (3) one paralegal (Ms. Burillo) attended all evidentiary hearings; (4) the attorneys spent time setting up and attending board meetings with their clients; and (5) the paralegals spent allegedly excessive time on handing documents and deposition transcripts. Deol also complains that the redactions on several of the invoices made it hard, if not impossible, to determine and challenge the work done.

Deol also challenges the awarding of any attorneys' fees incurred by Claimants in the Superior Court action seeking to enforce certain arbitration orders, as well as the fees incurred in India defending against Deol's actions there. [See Exhibits F and G to Yorio's Initial Declaration.]

Deol's attack on the time spent by Claimants' counsel and paralegals on specific tasks has been shown, by way of Yorio's reply declaration, not to be well taken. That evidence demonstrated why two attorneys participated in certain crucial depositions, why it was necessary and appropriate for the lead paralegal to be present during the evidentiary hearings, and explained the paralegals' entries regarding time spent handling documents and deposition transcripts.

Interestingly, too, despite making his "overstaffing" argument, Doel does not bother to mention that he had two attorneys attending six of the eleven days of hearings.[6] He also does not reveal, for comparison purposes, the number of hours his attorneys worked on this case.

When determining the reasonableness of time spent on a case, the opposing party's litigation conduct is always a relevant factor. In our case, Deol vigorously pursued every aspect of this matter, including making a number of rather personal attacks on Goel (alleging unethical behavior). Of course, "[a party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [other party] in response." *Int'l Longshoremen's and Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 304.

Having presided over this arbitration for several years now, the undersigned is well aware that this was a detailed, convoluted, and hard-fought matter. It involved

---

[6] Deol's attorneys Finnerty and Edgeworth both participated in the arbitration hearings on June 13, 14, 29, and 30, and July 21 and 22, 2016.

claims of several million dollars and a battle for control of a corporation and a solar power plant in India.    The underlying events spanned several years, and their recounting involved witness from the U.S., India, and Spain.

        If this fees motion were in court, the trial judge would not be required to engage in an overly "granular" review of the various tasks undertaken by the attorneys and opine as to the reasonableness of the time spent on each task. "We find no California case law analogue to [CCP] section 632 [regarding statements of decision] requiring trial courts to explain their decisions on all motions for attorneys fees and costs or even requiring an express acknowledgement of the lodestar amount." *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67.   As such, trial judges need not perform an "item by item" justification for any reductions they might make to requested fees: "trial courts are not required to specify each and every claimed item found to be unsupported or unreasonable," *Gorman v. Tassajara Development Corp., supra,* at 67.   Rather, a simple statement that the court finds the "amount of fees requested is reasonable" is deemed a sufficient explanation. *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1178.

        Although the undersigned has been notified of Deol's bankruptcy filing, the financial status of a losing party is not a factor to be used when determining and awarding reasonable fees under a contract. See, e.g., *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, at 372 - 373: " . . . we conclude it is inappropriate to consider the losing party's financial status as an equitable factor in assessing contractual attorney fees," and thus "a losing party's financial condition should not be considered in the setting the amount of such an award." Also, as noted above, Deol has already greatly benefitted in this motion from the fact that Claimants' lead attorney (Yorio) only asked for fees at the rate he billed his client (one-half his normal rate), not the reasonable value of his time.

        The amount requested for attorney and paralegal time is hereby determined to be reasonable and appropriate, without reduction: $985,788.72 is awarded as and for Claimants' reasonable attorneys' fees in this arbitration.

        As for Claimants' request to also recover the fees and costs incurred in the Superior Court, that request is denied.  Those fees and costs are matters for determination and award by the Superior Court.  C.C.P. § 1293.2 provides: "The court shall award costs upon any judicial proceeding under this title as provided in Chapter 6 (commencing with Section 1021) of Title 14 of Part 2 of this code." As such, "[a] court must award costs in a judicial proceeding to confirm, correct, or vacate an arbitration award. [citations omitted] Attorney fees are recoverable as costs if authorized by contract. (Code Civ. Proc. § 1033.5, subd. (a)(10)(A).)" *Corona v. Amherst Partners* (2003) 107 Cal.App.4th 701, at 707.  Similarly, Claimants' request for an award of the fees and costs incurred in dealing with Deol's Indian court actions is rejected.

///////

**ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS**

Exhibit 1 to
Proof of Claim
Page 8 of 15

 

## B. Costs:

The costs requested by Claimants total $231,679.11, and fall into three categories: (1) JAMS costs (case management fees, hearing fees, and arbitrator's fees) of $63,813.22; (2) non-JAMS costs, other than expert costs, of $62,171.77; and (3) expert costs of $105,692.12.

1. JAMS Costs (i.e., JAMS Case Management Fees, Hearing fees, and the Arbitrator's Fees:

Even without Article 6 of the Loan Agreement, these costs are recoverable by the prevailing parties. The parties agreed to arbitrate this matter through JAMS, and thus the JAMS arbitration rules become part of the parties' agreement to arbitrate. [See JAMS Comprehensive Arbitration Rule 1(b).]

Rule 24(f) of JAMS Comprehensive Rules provides: "The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, *unless such an allocation is expressly prohibited by the Parties' Agreement*." [Italics added.] Here, neither of the contracts "expressly prohibits" an allocation of arbitration costs, and thus the JAMS costs are properly awardable to the prevailing parties.

The Rule 24(f) costs include JAMS' (a) case management fees, (b) hearing fees, and (c) arbitrator's fees. Claimants have claimed these costs as being $63,813.22, which includes the fees Claimants advanced on behalf of Deol in order to secure the issuance of certain orders.

Deol challenges these JAMS costs as excessive and unsupported by adequate documentation. However, Yorio's reply declaration supplies the invoices for these JAMS charges. Also, these amounts are easily verifiable by Deol, who has received JAMS invoices for his one-half of these same costs. Additionally, the undersigned has verified the amount that has been paid to JAMS by Claimants through and including the issuance of this Order and the Final Award. The total amount Claimants have paid, including the $3,122.03 recently advanced on behalf of Deol to secure the issuance of this Order and the Final Award,[7] is $65,005.77.[8]

The undersigned finds the JAMS costs paid by Claimants have been adequately documented and are recoverable. That amount ($65,055.77) is awarded to Claimants, as part of their allowable costs.

---

[7] JAMS Comprehensive Rule 31(c) provides that "[i]n the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration."

[8] The previous advances made by Claimants on behalf of Deol were later paid by Deol, and thus JAMS has returned those funds to Claimants' account in this matter.

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 9 of 15

 

2.  Non-JAMS Costs (other than expert fees): $62,173.77

The non-JAMS, non-expert, costs requested by Claimants were as follows:

| | | |
|---|---|---|
| Courier fees (FedEx) | | $479.16 |
| Court reporter fees for depositions and arbitration hearing; | | $52,342.16 |
| Online research costs | | $1,379.43 |
| Document production service | | $4,886.71 |
| Travel expenses | | $884.11 |
| Service of Subpoenas | | $1,391.91 |
| Miscellaneous | | $808.29 |
| | Total: | $62,171.77. |

Deol objects to these costs. First, Deol argues that none should be recovered, as there is no contract allowing for their recovery. This argument is rejected: JAMS Comprehensive Rule 24(g) allows the arbitrator to "allocate fees *and expenses . . . if provided* by the Parties' Agreement . . . ," and, as discussed above, Article 6 of the parties' Loan Agreement provides for the recovery of "*any legal or other expenses incurred or suffered* by the Lender *due to* delay in the repayment of the Loan or *anything contrary to this Agreement.*" [Italics added.]

Deol also argues that many of the claimed costs, even if allowed under the parties' contract, have not been properly documented. This is rejected; they have been properly documented, including by way of Yorio's declarations and the exhibits thereto.

Finally, Deol argues that even if allowed by contract, and even if properly documented, many of these costs would not have been recoverable in a court proceeding, pursuant to the provisions of C.C.P. §1033.5, *et seq.* However, allowable costs in arbitration is not governed by these C.C.P. provisions: "Allocation of costs in arbitration proceedings is governed by the parties agreement or the rules governing the arbitration proceeding. The provisions of the Code of Civil Procedure for allocation of costs of suit (CCP §1032 et seq.) do not control arbitration awards." Cal. Practice Guide, Alternative Dispute Resolution, (The Rutter Group 2018) at ¶ 5:434.1, citing to *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1106 [fn. 9]; and *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1815.

All of the requested non-JAMS, non-expert, costs are found to be reasonable, adequately documented, and allowable under the parties' contract. They are awarded as requested: $62,171.77

/ / / / / / /

/ / / / / / /

/ / / / / / /

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 10 of 15

 
3. Costs of Experts: $105,692.12:

Claimants employed several experts in their preparation of this case,[9] and each provided testimony and/or supplied documentary evidence. Also, the undersigned appointed a neutral forensic accountant[10] to perform work in this matter, and the parties were required to share in the cost of that expert; that expert's costs are included in Claimants' request.

Deol argues that none of these expert costs are allowable under the C.C.P. and, even if allowable, they have not been properly documented. Once again, the provisions of the C.C.P. regarding costs do not apply to this motion. And each expert's work was directly relevant to the issues presented in this arbitration, and the cost of each is found to be a normal and reasonable expense incurred in preparing and presenting a case of this complexity. As such, they are part of the "expenses incurred or suffered by the Lender due to delay in the repayment of the Loan or anything contrary to this Agreement." These expenses have been adequately documented; they are awarded as requested: $105,692.12.

## C. Interest on Distributions Taken by Deol:

The FPFA allowed GFV to recover interest on 49% of the distributions that Deol improperly took from Econergy and withheld from GFV. Deol challenges the allowance of any pre-award interest on GFV's delayed receipt of these distributions, arguing that the amount was unliquidated until issuance of the FPFA. Deol also argues that, if interest is to be awarded, it must be at the 7% rate for tort actions under Civil Code § 3288, and not at the 10% rate for contract actions under Civil Code §3287(a).

Here, the amount Deol took out of Econergy's Indian bank accounts and out of repatriated funds was clearly known to him; he was the one making the withdrawals. He also knew that those withdrawals were done without the co-owner's involvement or consent. Deol also knew that GFV was a 49% owner of Econergy, and entitled to 49% of any distributions made by the corporation to its shareholders.

Deol's taking of these distributions was both a breach of the Loan Agreement and a tort, i.e., a breach of his fiduciary duty to the company's co-owner, GFV. The undersigned considers Deol's conduct with regard to these distributions as primarily tortious, and notes that "Civil Code section 3288 permits the trier of fact to award interest in tort actions . . . When, by virtue of fraud or breach of fiduciary duty of the defendant, a

---

[9] These included ArrowBeach LLC-Evidentia Consulting (Monica Ip) – tax/accounting; Eric Sundheim of Teknos Associates LLC for valuation of Deol's interest in Econergy; Colliers International was used for valuation of the land transferred under Deol's loan guarantee; Surinder Bedi was used for electrical engineering issues regarding PV Panel and grounding issues; and Sanli Pastore & Hill (the court reporters for the deposition of Deol's expert, Forest Vickery).

[10] Joseph Anastasi, CPA, of the Berkeley Research Group.

Exhibit 1 to
Proof of Claim
Page 11 of 15

 

plaintiff has been deprived of the use of his money or property and is obligated to resort to litigation to recover it, the inclusion of interest in the award is necessary in order to make the plaintiff whole." *Nordahl v. Franzalia* (1975) 48 Cal.App.3d 657, 665. Further, the fact that the precise amount of those improper distributions was not determined until the arbitration award does not bar recovery of interest on those sums: "[t]he fact that the sum is unliquidated does not remove the discretion to award interest in such instances." *Baker v. Pratt* (1986) 176 Cal.app.3d 370, 383.

As such, GFV is awarded interest at 7% per annum on its 49% share of each of the distributions taken by Deol, from the date of each distribution to the date of this Order. The calculations are as follows:

### Distributions Taken from Ecoenergy's Indian Bank Accounts

| Source Bank and Date of Distribution | 49% of the Distribution Taken by Deol | Daily Interest at 7% on this 49% of Distribution | Total Days from Distribution to this Order | Total Interest to 11/16/18 |
|---|---|---|---|---|
| IDBI 12/24/14 | $11,565.47 | $2.218 | 1422 | $3,153.99 |
| IDBI 12/24/14 | 46,175.64 | 8.856 | 1422 | 12,593.23 |
| IDBI 01/02/15 | 3,872.47 | 0.743 | 1413 | 1,049.86 |
| HDFC 01/02/15 | 7,744.45 | 1.485 | 1413 | 2,098.32 |
| IDBI 01/27/15 | 11,583.11 | 2.221 | 1388 | 3,084.14 |
| IDBI 03/24/15 | 15,704.99 | 3.012 | 1332 | 4,011.98 |
| IDBI 04/20/15 | 7,768.95 | 1.490 | 1305 | 1,944.45 |
| HDFC 05/11/15 | 153.37 | 0.029 | 1284 | 37.24 |
| HDFC 05/11/15 | 11,491.48 | 2.203 | 1284 | 2,828.65 |
| IDBI 06/11/15 | 11,496.87 | 2.204 | 1253 | 2,761.61 |
| IDBI 07/04/15 | 5,423.81 | 1.040 | 1230 | 1,279.20 |
| IDBI 07/10/15 | 11,605.65 | 2.225 | 1224 | 2,723.40 |
| IDBI 08/26/15 | 7,411.74 | 1.421 | 1177 | 1,672.51 |
| HDFC 09/29/15 | (14,871.01) | (2.852) | 1143 | (3,259.83) |
| Operating Expenses in Excess of Those Allowed under the Agreements: A midpoint start date of 05/31/15 is used | 74,725.00 | 14.331 | 1264 | 18,114.38 |
| | | | TOTAL | $54,093.13 |

/ / / / / / /

/ / / / / / /

/ / / / / / /

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 12 of 15

 
**Distributions Taken from Repatriated Econergy Funds**

| Date Funds Withdrawn by Deol | 49% of the Distribution to Deol | Daily Interest at 7% on this 49% of Distribution | Total Days from Distribution to Date of this Order | Total Interest to 11/16/18 |
|---|---|---|---|---|
| 02/7/14 | $34,300.00 | $6.578 | 1742 | $11,458.88 |
| 12/12/14 | 857.50 | .164 | 1434 | 235.18 |
| 9/25/15 | 980.00 | .188 | 1147 | 215.64 |
| 9/30/15 | 9,555.00 | 1.832 | 1142 | 2,092.14 |
| 10/21/15 | 6,860.00 | 1.315 | 1121 | 1,474.12 |
| 11/10/15 | 1,225.00 | .235 | 1101 | 258.74 |
| 11/13/15 | 1,225.00 | .235 | 1098 | 258.03 |
| 12/01/15 | 2,450.00 | .469 | 1080 | 506.52 |
| 12/02/15 | 1,470.00 | .282 | 1079 | 304.28 |
| 12/17/15 | 3,675.00 | .705 | 1064 | 750.12 |
| 01/06/16 | 612.50 | .117 | 1044 | 122.15 |
| 01/14/16 | 3,185.00 | .611 | 1036 | 632.99 |
| 02/01/16 | 980.00 | .188 | 1018 | 191.38 |
| 02/23/16 | 3,307.00 | .634 | 996 | 631.46 |
| 07/25/16 | 767.06 | .147 | 844 | 124.07 |
| 09/21/16 | 1,895.32 | .363 | 786 | 285.32 |
| 10/18/16 | 1,102.50 | .211 | 759 | 160.15 |
| 12/15/16 | 1,078.00 | .207 | 701 | 145.11 |
| 05/05/17 | 998.63 | .192 | 560 | 107.52 |
| | | | TOTAL | $19,953.80 |

As such, GFV is awarded a total of $74,046.93 as and for interest on the distributions wrongfully taken, and withheld, by Deol.

**D. Which Parties Should be Held Liable for the Fees and Costs Awarded Above?**

Lastly, Claimants argue that any fees and costs awarded in this matter should be borne solely by Deol, and not jointly with Econergy; Deol objects.

As discussed above, the basis for awarding fees and costs (other than the JAMS costs) is the contractual indemnity provision (Article 6) of the Loan Agreement. That Article provides that "Borrower [Econergy] and Guarantor [Deol] *shall jointly and severally indemnify and keep indemnified the Lender* [Goel] . . ."

The parties agreed to a joint and several indemnity obligation, and the undersigned is not persuaded that cause exists to rewrite that agreement. As such, the fees and costs are deemed a joint and several obligation of the indemnitors, Deol and Econergy.

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 13 of 15




## ORDERS

Based on the above findings and conclusions, the following is ordered:

1. Goel Family Ventures I, LP is awarded **$74,046.93** against Jaspal Singh Deol, as and for interest on the distributions wrongfully taken by Deol from Econergy, Inc. and withheld from GFV;

2. Claimants/Counter-Respondents Prabhakar Goel and Goel Family Ventures I, LP, are awarded the following as against Respondents/Counter-Claimants Jaspal Singh Deol and Econergy, Inc. jointly and severally:

     a. Reasonable attorneys fees:      **$985,788.72**

     b. Costs:

| | |
|---|---|
| JAMS arbitration costs (through and including this Order and the Final Award): | $65,005.77 |
| Non-JAMS costs (other than expert costs) | $62,171.77 |
| Expert costs | $105,692.12 |
| **Total Costs Awarded:** | **$232,869.66** |

The above amounts will be included in the Final Award, issued herewith.

Dated: November 16, 2018.



Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator

---

Exhibit 1 to
Proof of Claim
Page 14 of 15




## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Goel, Prabhakar vs. Econergy, Inc., et al.
Reference No. 1110016365

I, Jason Clark, not a party to the within action, hereby declare that on December 03, 2018, I served the attached Order on Attorneys' Fees, Costs, and Interest on Distributions on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Jose, CALIFORNIA, addressed as follows:

Robert J. Yorio Esq.
Christine Watson Esq.
Carr & Ferrell, LLP
120 Constitution Drive
Menlo Park, CA 94025
Phone: 650-812-3400
yorio@carrferrell.com
cwatson@carrferrell.com
  Parties Represented:
  Prabhakar Goel

Ognian Gavrilov Esq.
Eliezer M. Cohen Esq.
Gavrilov & Brooks
2315 Capitol Ave.
Sacramento, CA 95816
Phone: (916) 504-0529
info@gavrilovlaw.com
ecohen@gavrilovlaw.com
  Parties Represented:
  Econergy, Inc.
  Jaspal Singh Deol

I declare under penalty of perjury the foregoing to be true and correct. Executed at San Jose, CALIFORNIA on December 03, 2018.



Jason Clark
JClark@jamsadr.com

Exhibit 1 to
Proof of Claim
Page 15 of 15

 
# EXHIBIT 2

1    ROBERT J. YORIO (SBN 93178)
     yorio@carrferrell.com
2    ILENE H. GOLDBERG (SBN 168051)
     igoldberg@carrferrell.com
3    CARR & FERRELL LLP
     120 Constitution Drive
4    Menlo Park, California 94025
     Telephone No.: (650) 812-3400
5    Facsimile No.: (650) 812-3444

6    Attorneys for Plaintiffs
     ECONERGY, INC., PRABHAKAR GOEL and
7    GOEL FAMILY VENTURES I LP



(ENDORSED)
**FILED**
JAN 10 2019
Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY

R. ARAGON

8

9

10          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11            IN AND FOR THE COUNTY OF SANTA CLARA

12               UNLIMITED JURISDICTION

13    ECONERGY, INC., a California       )    CASE NO. 17- CV-314877
     corporation; GOEL FAMILY        )
14    VENTURES I LP, a partnership, and    )    [PROPOSED] ORDER TO CONFIRM
15    PRABHAKAR GOEL, an individual,    )    FINAL ARBITRATION AWARD
                                 )
16            Plaintiffs,           )    Date:      January 10, 2019
17                         )    Time:      9:00 a.m.
        v.                     )    Dept.:     6
18                         )    Judge:    Honorable Theodore C. Zayner
     JASPAL SINGH DEOL, an individual;    )
19    and DOES I through XX, inclusive,     )    Date Action Filed: August 22, 2017
20                         )    Trial Date: Not Yet Set
           Defendants.         )
21                         )

22

23      This matter came on for hearing on Thursday, January 10, 2019, on the Motion of Plaintiffs

24   Goel Family Ventures I LP and Prabhakar Goel for an Order to Confirm the Final Arbitration

25   Award in the Arbitration entitled *Goel, et al. v. Econergy, et al.,* JAMS Case No. 1110016363,

26   entered on November 16, 2018. After consideration of oral argument by counsel and the briefs

27   submitted by the parties, and good cause appearing therefor,

28      IT IS HEREBY ORDERED that:

Page 1

 
### FINAL ARBITRATION AWARD

The Petition to Confirm the Final Arbitration Award of Plaintiffs Goel Family Ventures I LP and Prabhakar Goel is GRANTED and the November 16, 2018 Final Arbitration Award is hereby confirmed as a Judgment;

### MONETARY RELIEF

1.     Plaintiff Prabhakar Goel is awarded $690,716 against Econergy, Inc. for the balance due under the Loan Agreement as of June 21, 2017. Plaintiff Prabhakar Goel is awarded $97,078.71 in interest from the time of the initial Partial Final Award (June 21, 2017) (Final Award, Section II.A);

2.     Defendant Jaspal Deol is awarded $624,291.41 against Plaintiff Prabhakar Goel representing the value of Defendant Jaspal Deol's interest in Econergy's shares and the Ludhiana land payable once the land and shares have been fully transferred to Plaintiff Prabhakar Goel after being offset by an amount of $352,308.59 which is the amount awarded against Deol to Goel for the Deol's guarantee on the defaulted loan (Final Award, Section II.B);

3.     Plaintiff Goel Family Ventures I LP is awarded $438,425.54 against Defendant Jaspal Deol representing 49% of the dividends Defendant Jaspal Deol wrongfully took and withheld from Goel Family Ventures, plus interest of $74,046.93 (Final Award, Section II.C);

4.     Plaintiffs Prabhakar Goel and Goel Family Ventures are awarded $985,788.72 in attorneys' fees against Defendant Jaspal Deol and Econergy jointly and severally (Final Award, Section IV);

5.     Plaintiffs Prabhakar Goel and Goel Family Ventures are awarded $232,869.66 in costs (including expert fees and arbitration fees) against Defendant Jaspal Deol and Econergy jointly and severally (Final Award, Section IV);

6.     Defendant Jaspal Deol is awarded $163,357.04 against Econergy for rent due from Econergy for its use of the Ludhiana land from the time of plant commissioning (March 2, 2012) to October 1, 2017 (the valuation date for Defendant Jaspal Deol's transfer of the land to Plaintiff Prabhakar Goel) (Final Award, Section II.D);

 
7.      Plaintiff Econergy, Inc. is awarded $4,473 against Defendant Jaspal Deol for the balance due from Defendant Jaspal Deol on Econergy's second capital call in late 2015 (Final Award, Section II.E); and

8.      Plaintiff, Econergy, Inc. is awarded $3,000 against Defendant Jaspal Deol for the interest Defendant Jaspal Deol received on bank guarantees Econergy had deposited with IREDA (Final Award, Section II.F).

9.      Defendant Jaspal Deol is required to indemnify Plaintiffs Prabhakar Goel, Goel Family Ventures and Econergy in the event they are subject to interest payments and/or tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017, and the JAMS Arbitrator retains jurisdiction to determine the amount of any such indemnification, if needed (Final Award, Further Partial Final Award, Section IV.b at p. 64).

## INJUNCTIVE RELIEF

A.    Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

1.      Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

2.      Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

3.      Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.    Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

1.      Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

2.      Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff

---

[1]     The land consists of eleven parcels totaling approximately 10.2 acres, described as Khasra No. 67/20/2, 21, 68/23, 24, 25, 74/3, 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

  
1      Prabhakar Goel, or his designee, three (3) original properly executed powers of
2      attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all
3      actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or
4      his designee;

5    3.   Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to
6      (a) immediately allow Claimants' agents in India to have unrestricted access to and
7      complete control over the Ludhiana solar power plant and its operations, including
8      turning over any keys and codes and (b) refrain from interfering with Claimants'
9      access to and control over the plant in any way, and ( c) provide the digital signature
10     to the Claimants' designated Chartered Accountant solely for the purpose of
11     changing any and all authorized signatories in India;

12    4.   Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents
13     (including originals where available) pertaining to (a) Econergy and Econergy's
14     business and its dealing with PEDA, IREDA and PSPCL, including all tax returns
15     (and supporting documents therefor) filed in the U.S. and all documents pertaining to
16     Econergy in India, and (b) original documents regarding Deol's purchase and
17     operation of the land underlying the Econergy Ludhiana plant;

18    5.   Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five
19     (5) days, three fully-executed and notarized originals of the Affidavit which is
20     attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh
21     Deol," dated February 20, 2018; and

22    6.   To immediately instruct Surinder Singh Sandhu to refrain from accessing or
23     attempting to access Econergy, Inc.'s bank accounts.

24   C.   Regarding Defendant Jaspal Deol's Indian Court Actions:

25    1.   Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any
26     legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy
27     Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs
28     of Econergy, Inc., including the planning, development, and operation of Econergy's

 
1    Ludhiana solar power plant;

2    2.    Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has

3          filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in

4          Econergy, Inc.; that he no longer has the legal capacity to pursue actions on behalf of

5          Econergy, Inc., and that any individual claims he possesses from the planning,

6          development, and operation of Econergy's Ludhiana solar plant are matters that he is

7          required to submit to binding arbitration in lieu of any court action; and

8    3.    Defendant Jaspal Deol, and any person or persons acting at his behest or on his

9          behalf, including agents, employees, representative, and all persons acting in concert

10         or participating with them, are ordered to forthwith instruct any Indian counsel

11         acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith

12         withdraw or dismiss the entire action pending in the court of Sh. K. K. Kareer

13         Commercial Court Ludhiana, Punjab, India, including all claims on behalf of

14         Econergy, Inc. and claims on behalf of himself individually regarding the planning,

15         development, and operation of Econergy's Ludhiana solar plant.

16

17   IT IS SO ORDERED.

18

19   DATED:    JAN 1 0 2019                    Theodore C. Zayner

20                                             _____
                                               JUDGE OF THE SUPERIOR COURT
21

22

23

24

25

26

27

28

[PROPOSED] ORDER TO CONFIRM FINAL ARBITRATION AWARD (CASE NO. 17-CV-314377)

# EXHIBIT 3

 

1   ROBERT J. YORIO (SBN 93178)
    yorio@carrferrell.com
2   ILENE H. GOLDBERG (SBN 168051)
    igoldberg@carrferrell.com
3   CARR & FERRELL LLP
    120 Constitution Drive
4   Menlo Park, California 94025
    Telephone No.:   (650) 812-3400
5   Facsimile No.:   (650) 812-3444

6   Attorneys for Plaintiffs
    ECONERGY, INC., PRABHAKAR GOEL and
7   GOEL FAMILY VENTURES I LP

8

**(ENDORSED)**
**FILED**
JAN 10 2019
Clerk of the Court
Superior Court of CA County of Santa Clara
BY _____H. ARAGON_____ DEPUTY

9           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              IN AND FOR THE COUNTY OF SANTA CLARA

11                        UNLIMITED JURISDICTION

12

13   ECONERGY, INC., a California          )   CASE NO. 17- CV-314877
     corporation; GOEL FAMILY             )
14   VENTURES I LP, a partnership, and    )   JUDGMENT
15   PRABHAKAR GOEL, an individual,       )
                                          )
16              Plaintiffs,               )
                                          )
17        v.                              )
                                          )
18                                        )
19   JASPAL SINGH DEOL, an individual;    )
     and DOES I through XX, inclusive,    )
20                                        )
                Defendants.               )
21                                        )

22

23       The Court having entered its Order confirming the Final Arbitration Award issued in the

24   JAMS arbitration proceeding between the parties, JUDGMENT is entered as follows:

25                        **FINAL ARBITRATION AWARD**

26       The Petition to Confirm the Final Arbitration Award of Plaintiffs Goel Family Ventures I

27   LP and Prabhakar Goel is GRANTED and the November 16, 2018 Final Arbitration Award is

28   hereby confirmed as a Judgment;

 
## MONETARY RELIEF

1.      Plaintiff Prabhakar Goel is entitled to Judgment in the amount of $787,794.71 against Econergy, Inc.;

2.      Defendant Jaspal Deol is entitled to Judgment in the amount of $624,291.41 against Plaintiff Prabhakar Goel for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred to Plaintiff Prabhakar Goel;

3.      Plaintiff Goel Family Ventures I LP is entitled to Judgment in the amount of $512,472.47 against Defendant Jaspal Deol;

4.      Plaintiffs Prabhakar Goel and Goel Family Ventures are entitled to Judgment in the amount of $1,218,658.38 against Defendant Jaspal Deol and Econergy jointly and severally;

6.      Defendant Jaspal Deol is entitled to Judgment in the amount of $155,884.01 against Econergy, Inc.; and

7.      Plaintiffs Econergy, Inc., Goel and Goel Family Ventures are entitled to Judgment against Defendant Jaspal Deol requiring Defendant Jaspal Deol to indemnify them in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

## INJUNCTIVE RELIEF

A.    Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

     1.     Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

     2.     Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

     3.     Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.    Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

     1.     Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest



in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

2. Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff Prabhakar Goel, or his designee, three (3) original properly executed powers of attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or his designee;

3. Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar power plant and its operations, including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and ( c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

4. Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business and its dealing with PEDA, IREDA and PSPCL, including all tax returns (and supporting documents therefor) filed in the U.S. and all documents pertaining to Econergy in India, and (b) original documents regarding Deol's purchase and operation of the land underlying the Econergy Ludhiana plant;

5. Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five (5) days, three fully-executed and notarized originals of the Affidavit which is attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated February 20, 2018; and

6. To immediately instruct Surinder Singh Sandhu to refrain from accessing or

---

[1] The land consists of eleven parcels totaling approximately 10 .2 acres , described as Khasra No. 67/20/2, 21, 68/23, 24, 25 , 74/3 , 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.





1   attempting to access Econergy, Inc.'s bank accounts.

2   C.   Regarding Defendant Jaspal Deol's Indian Court Actions:

3     1.   Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any

4       legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy

5       Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs

6       of Econergy, Inc., including the planning, development, and operation of Econergy's

7       Ludhiana solar power plant;

8     2.   Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has

9       filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in

10      Econergy, Inc.; that he no longer has the legal capacity to pursue actions on behalf of

11      Econergy, Inc., and that any individual claims he possesses from the planning,

12      development, and operation of Econergy's Ludhiana solar plant are matters that he is

13      required to submit to binding arbitration in lieu of any court action; and

14     3.   Defendant Jaspal Deol, and any person or persons acting at his behest or on his

15       behalf, including agents, employees, representative, and all persons acting in concert

16       or participating with them, are ordered to forthwith instruct any Indian counsel

17       acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith

18       withdraw or dismiss the entire action pending in the court of Sh. K. K. Kareer

19       Commercial Court Ludhiana, Punjab, India, including all claims on behalf of

20       Econergy, Inc. and claims on behalf of himself individually regarding the planning,

21       development, and operation of Econergy's Ludhiana solar plant.

22

23      JAN 1 0 2019

24   DATED: _____

25                  Theodore C. Zayner

                       JUDGE OF THE SUPERIOR COURT

26

27

28

# EXHIBIT L

Fill in this information to identify the case:

Debtor 1   Jaspal Singh Deol

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Eastern District of California

Case number   18-23885-C-11

## Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| 1. Who is the current creditor? | Econergy, Inc. | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| 2. Has this claim been acquired from someone else? | ☑ No | |
| | ☐ Yes. From whom? _____ | |
| 3. Where should notices and payments to the creditor be sent? | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent? (if different)** |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Thomas G. Mouzes, Boutin Jones Inc. | Prabhakar Goel |
| | Name | Name |
| | 555 Capitol Mall, Suite 1500 | 98 Ridgeview Drive |
| | Number     Street | Number     Street |
| | Sacramento        CA        95814 | Atherton        CA        94027 |
| | City        State        ZIP Code | City        State        ZIP Code |
| | Contact phone 916-321-4444 | Contact phone _____ |
| | Contact email tmouzes@boutinjones.com | Contact email _____ |
| | | |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| 4. Does this claim amend one already filed? | ☑ No | |
| | ☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____ | |
| | | MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| | ☐ Yes. Who made the earlier filing? _____ | |

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ̶ ____ ____ ____

**7. How much is the claim?**  $ _____ 75,943.51 . Does this amount include interest or other charges?

☐ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

See attachment. In addition to above, there is a contingent claim.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

Nature of property:

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☑ Other. Describe:    See attached, Setoff and recoupment.

Basis for perfection: _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:      $ _____

Amount of the claim that is secured:    $ _____ 75,943.51

Amount of the claim that is unsecured: $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $ _____

Annual Interest Rate (when case was filed) _____ %

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

**11. Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: See attached. _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check one:                                                   Amount entitled to priority

☐ Domestic support obligations (including alimony and child support) under
11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                              $_____

☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for
personal, family, or household use. 11 U.S.C. § 507(a)(7).          $_____

☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the
bankruptcy petition is filed or the debtor's business ends, whichever is earlier.
11 U.S.C. § 507(a)(4).                                              $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.  $_____

* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  09/27/2019
                  MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Prabhakar | | Goel |
| | First name | Middle name | Last name |
| Title | President | | |
| Company | Econergy, Inc. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 98 Ridgeview Drive | | |
| | Number  Street | | |
| | Atherton | CA | 94027 |
| | City | State | ZIP Code |
| Contact phone | | Email | |

## Attachment to Proof of Claim

Econergy, Inc. ("Econergy") submits this attachment to its proof of claim. Prabhakar Goel ("Goel") and Goel Family Ventures I, L.P. ("GFV") are sometimes collectively referred to as "Claimants". The following is a summary only. This proof of claim is based on information currently available and is subject, from time to time, to changes, amendments and/or modifications.

Claimants and Econergy were participants in a JAMS arbitration proceeding ("Arbitration") and action filed in the Superior Court of the State of California, County of Santa Clara, in the case entitled *Econergy, Inc. et al. v. Jaspal Deol*, Case No. 17-CV-314877 (the "State Court Action") against Debtor Jaspal Deol ("Deol" or "Debtor"). Among other things, those proceedings resulted in decisions, Orders for specific performance in favor of Goel and GFV including, requiring Debtor to turn over certain property to Goel and subsequent injunctions to implement those various Orders. Those Orders have been largely implemented. See generally, Doc. No. 38-46, 49-56.

Long before the filing of this bankruptcy case by Debtor, the Arbitrator in the Arbitration unequivocally transferred all of the ownership of Debtor's stock in Econergy ("Stock") to Goel effective August 16, 2017, and the ownership of the land in Ludhiana, India on which the solar plant is built (the "Land") effective October 1, 2017, in satisfaction of then existing secured debt of $352,308.59 due Goel, and removed Debtor as a director of Econergy effective August 16, 2017, which orders were confirmed in the orders and judgment of the State Court in the State Court Action. In the Arbitration and during June 2017, Deol was given the clear option to repay his 51% share of the unpaid construction loan owed to Goel under the applicable loan agreement/guaranty, and to retain the Stock and the Land securing that loan by paying his portion of the secured debt determined by the Arbitrator in the amount of $352,308.59, after the application of various credits. That said, Deol knowingly and intentionally elected not to repay his share of the debt and opted instead to have the Stock and the Land transferred to Goel in satisfaction of that secured debt, and to thereafter have the Stock and the Land valued by the Arbitrator following the submission of expert valuation reports submitted by the parties. The Stock and Land are the property of Goel.

Prior to the filing of this bankruptcy case, the relevant orders and decisions in the Arbitration and the Superior Court in the State Court Action included, without limitation, the following:

1.      Partial Final Award (Corrected) dated June 21, 2017.

2.      Arbitrator's Orders Following August 4, 2017, Hearing.

3.      Arbitrator's Order Enjoining Actions Undertaken By Jaspal Singh Deol In Violation Of Orders Issued In This Proceeding dated August 16, 2017.

4.      Superior Court Order filed September 11, 2017 (injunction).

1

5.      Arbitrator's Further Injunctive Orders Directed To Jaspal Singh Deol dated
February 20, 2018.

6.      Further Partial Final Award Determining Value dated February 20, 2018.

7.      Arbitrator's email Order dated March 19, 2018.

8.      Further Partial Final Award dated April 30, 2018.

9.      Superior Court Order After Hearing On Motions To Vacate February 20, 2018
Arbitration Awards.  See Doc. No. 44-46 for copies of these documents.  These
documents, along with the loan agreement/guaranty, are also available upon request.

Prior to the commencement of this case, the Arbitrator determined that Claimants were
the prevailing parties and as such were entitled to an award of attorney's fees and costs.
Claimants' Application for attorney's fees, interest and other monetary awards was submitted to
the Arbitrator and was awaiting determination when Debtor's bankruptcy case was filed.  The
supporting papers of the Application are voluminous and are not attached hereto, but are also
available upon request.

On October 31, 2018, this Court granted the motion for stay relief of Claimants including
to conclude and confirm the existing arbitration award in favor of Claimants and for the entry of
judgment in the State Court Action.  (See Doc. No. 87.)

On November 16, 2018, the Arbitrator issued his Order On Attorneys' Fees, Costs And
Interest On Distribution, a copy of which is attached hereto as Exhibit 1 and incorporated herein.
The Order provides in part that:

1.      GFV was awarded $74,046.93 against Debtor for interest on distributions wrongfully
taken by Debtor from Econergy and withheld from GFV.

2.      Goel and GFV were awarded against Debtor and Econergy, jointly and severally,
attorney fees of $985,788.72 and costs of $232,869.66, for a total of $1,218,658.38.

On January 10, 2019, the Superior Court in the State Court Action confirmed the
arbitration awards and the specific performance and injunctive relief in favor of Claimants.  A
copy of the Order To Confirm Final Arbitration Award is attached hereto as Exhibit 2 and
incorporated herein.

On January 10, 2019, the Superior Court in the State Court Action entered its judgment
confirming the arbitration award including for monetary relief, specific performance and
injunctive relief in favor of Claimants.  A copy of the Judgment is attached hereto as Exhibit 3
and incorporated herein.

2

The Judgment fully affirmed the Final Arbitration Award. The Judgment contained an award of monetary relief as follows:

## MONETARY RELIEF

1.      Plaintiff Prabhakar Goel is entitled to Judgment in the amount of $787,794.71 against Econergy, Inc.;

2.      Defendant Jaspal Deol is entitled to Judgment in the amount of $624,291.41 against Plaintiff Prabhakar Goel for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred to Plaintiff Prabhakar Goel;

3.      Plaintiff Goel Family Ventures I LP is entitled to Judgment in the amount of $512,472.47 against Defendant Jaspal Deol;

4.      Plaintiffs Prabhakar Goel and Goel Family Ventures are entitled to Judgment in the amount of $1,218,658.38 against Defendant Jaspal Deol and Econergy, jointly and severally;

6.      Defendant Jaspal Deol is entitled to Judgment in the amount of $155,884.01 against Econergy, Inc.; and

7.      Plaintiffs Econergy, Inc., Goel and Goel Family Ventures are entitled to Judgment against Defendant Jaspal Deol requiring Defendant Jaspal Deol to indemnify them in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

As to monetary relief, the Judgment reflects the following concerning to Debtor:

1.      Goel to pay Debtor $624,291.41 for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred by Debtor to Goel.

2.      Debtor to pay GFV $512,472.47.

3.      Debtor to pay Goel and GFV $1,218,658.38.

4.      Econergy to pay Debtor $155,884.01.

5.      Debtor to indemnify Econergy, Goel and GFV in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

3

The Judgment contained specific performance and injunctive relief as follows:

## INJUNCTIVE RELIEF

A.  Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

1.  Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

2.  Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

3.  Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.  Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

1.  Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

2.  Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff Prabhakar Goel, or his designee, three (3) original properly executed powers of attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or his designee;

3.  Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar plant and its operations including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and (c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

4.  Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business

---

[1]  The land consists of eleven parcels totaling approximately 10.2 acres, described as Khasra No. 67/20/2, 21, 68/23, 24, 25, 74/3, 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

4

and its dealing with PEDA, IREDA and PSPCL, including all tax returns; (and supporting documents therefor) filed in the U.S. and all documents pertaining to Econergy in India, and (b) original documents regarding Deol's purchase and operation of land underlying the Econergy Ludhiana plant;

5. Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five (5) days, three fully-executed and notarized originals of the Affidavit which is attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated February 20, 2018; and

. 6. To immediately instruct Surinder Singh Sandhu to refrain from accessing or attempting to access Econergy, Inc.'s bank accounts.

C.      Regarding Defendant Jaspal Deol's Indian Court Actions:

1. Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy, Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's Ludhiana solar power plant;

2. Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in Econergy, Inc., that he no longer has the legal capacity to pursue actions on behalf of Econergy, Inc., and that any individual claims he possesses from the planning, development, and operation of Econergy's Ludhiana solar plant are matters that he is required to submit to binding arbitration in lieu of any court action; and

3. Defendant Jaspal Deol, and any person or persons acting at his behest or on his behalf, including agents, employees, representative, and all persons acting in concert or participating with them, are ordered to forthwith instruct any Indian counsel acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith withdraw or dismiss the entire action pending in the court of Sh. K.K. Kareer Commercial Court Ludhiana, Punjab, India, including all claims on behalf of Econergy, Inc. and claims on behalf of himself individually regarding the planning, development, and operation of Econergy's Ludhiana solar plant.

Econergy is informed Debtor has not complied with the injunctive orders and judgment of the Arbitrator and/or the State Court.

Orders for specific performance are not an appropriate subject for a proof of claim. See In re Shearin Family Investments, LLC, 418 B.R. 584, 588 (Bankr. E.D. N.C. 2009) [Because the right to specific performance is not a claim, the obligation of the debtor to perform is not a debt and is not dischargeable. Instead, the obligation survives the bankruptcy proceeding.]; In re Ter Bush, 273 B.R. 625, 628-29 (Bankr. S.D. Cal. 2002) [The arbitrator's award for specific performance is not a claim within the meaning of the Bankruptcy Code because the underlying

breach does not give rise to a right to the payment of money damages.]; In re Indian River
Estates, Inc., 293 B.R. 429, 435 (Bankr. N.D. Ohio 2003) [Movant's right to receive specific
performance is not a claim, and the right of specific performance is not a debt that may be
discharged in bankruptcy.]; In re Pribonic, 70 B.R. 596, 602 (Bankr. W.D. Pa. 1987) [Aggrieved
land contract vendee who holds a decree for specific performance has an equitable remedy that
does *not* give rise to a right to payment. Therefore, such vendees do not and technically cannot
hold a claim for bankruptcy purposes.]; In re Acevedo, 441 B.R. 428, 437 (Bankr. S.D.N.Y.
2010) [The trustee cannot discharge the obligation under the state court orders in bankruptcy, as
that obligation does not constitute a claim against the estate. The trustee cannot avoid the
equitable remedy of specific performance and must comply with the orders of the state court.].

Econergy incurred attorney fees and costs in the State Court Action against Deol as
follows: attorney fees of $71,594.50 and costs of $4,349.01, for a total of $75,943.51. The
attorney fees and expenses incurred by Econergy in the State Court Action against Deol included
work for the injunctive relief filings and hearings, the unsuccessful attempt by Deol to vacate the
Arbitration Orders on the Land and the Stock, and the successful Petition to Confirm the Final
Arbitration Award and entry of the Judgment. The monetary obligations of Econergy to Debtor,
including under the Judgment of $155,884.01, are subject to setoff and/or recoupment. This
claim is secured to the extent of the rights of setoff and/or recoupment.

In addition, Debtor must indemnify Goel, GFV and Econergy for state and federal tax
liabilities arising out of his failure to file returns or incorrect returns filed for Econergy. As a
result, the claim of Econergy includes a contingent and unliquidated claim including for
indemnity. This amount is unknown at this time and is subject to proof and amendment from
time to time.

Econergy reserves the right to amend, modify and/or supplement this proof of claim,
from time to time, including to set forth any indemnity obligations of Debtor or any other claims
of Econergy. Econergy asserts any and all rights it has or may have to setoff and/or recoupment
and to amend, modify and/or supplement this claim from time to time to further set forth such
matters as additional information is obtained.

Nothing herein nor in any other appearance, pleading, claim, suit, motion, complaint, or
any other writing or conduct shall constitute a waiver of any procedural and/or substantive rights,
remedies and/or defenses including, without limitation: (a) the right to have any and all final
orders in any and all matters entered only after de novo review by a United States District Court
Judge; (b) the right to have any matter heard and tried before an Article III court; (c) the right to
have the reference of this matter withdrawn by the United States District Court in any matter or
proceeding subject to mandatory or discretionary withdrawal; (d) other rights, claims, actions,
remedies, defenses or other matters to which it is entitled; or (e) the right to be served directly
with pleadings commencing an adversary proceeding, contested matter and/or lawsuit.

Nothing herein nor in any other pleading or paper filed by Econergy is or is to be
construed as any waiver of the right or ability to demand or require alternative dispute resolution,
mediation, arbitration, or similar process available under the applicable agreements, law or
otherwise. Nothing herein nor in any other pleading or paper filed by Econergy shall limit or

6

impair any right, remedy, claim or interest, whether legal or equitable, including under the applicable law or otherwise, including against any person or entity. Econergy reserves the right to attach or rely upon additional documents or evidence in support of this Proof of Claim including if, as, and when such additional documents or evidence become available.

All of the above rights and/or remedies are hereby expressly reserved. The filing of this Proof of Claim or participating in the bankruptcy case shall not be deemed to constitute a concession or admission of jurisdiction in the case or cases or before this Court or any other court. Nor does Econergy waive and specifically preserves any procedural and/or substantive defenses to any claim that may be asserted against Econergy by Debtor, by any trustee of Debtor's estate, by any official committee appointed in this case, or by any other party, person, entity or group. The filing of this Proof of Claim shall <u>not</u> constitute an election of remedies or choice of law or a waiver of any such rights relating thereto. Nothing contained in this Proof of Claim shall limit any right of Econergy to commence or continue any proceeding or take any action to the extent permitted by the Bankruptcy Code, applicable non-bankruptcy law, or order of a court of competent jurisdiction.

7

 

# EXHIBIT 1

 
# JAMS ARBITRATION
## Case No. 1110016365

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

<div align="center">Claimants,</div>

vs.

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

<div align="center">Respondents.</div>

---

ECONERGY, INC., a California
Corporation, and JASPAL SINGH DEOL,
an individual,

<div align="center">Counter-Claimants,</div>

vs.

PRABHAKAR GOEL, an individual;
and GOEL FAMILY VENTURES I LP,
a limited partnership,

<div align="center">Counter-Respondents.</div>

---

## ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

 
## PROCEDURAL BACKGROUND TO THIS MOTION

The Further Partial Final Award ("FPFA") that was issued herein on or about April 30, 2018, resolved all issues in this arbitration other than the amount of attorneys' fees and costs to be awarded to the prevailing parties, Prabhakar Goel ("Goel") and Goel Family Ventures I, LP ("GFV")[1] and the amount of interest Deol owed to GFV on improperly converted distributions.

Specifically, the FPFA included the following findings and orders regarding attorneys' fees, costs, and interest on distributions:

A.  Attorneys' Fees and Costs:

"Prabhakar Goel and Goel Family Ventures I, LP, having obtained the greater relief in this matter, including having been awarded the bulk of the relief they requested and having defeated virtually every claim tendered by Jaspal Singh Deol and Econergy, Inc., are deemed the prevailing parties in this matter.  As such, they may recover from Deol and Econergy their reasonable attorneys' fees and costs incurred in the matter."  [FPFA at p. 64]

B.  Interest on Improper Distributions Taken by Deol:

"GFV is also awarded interest, at the legal rate, on its delayed receipt of [its share of Deol's improper] distributions, i.e., from the time each distribution was taken by Deol (and not shared with GFV) to the time of the Final Award herein."  [FPFA at p. 63]

The FPFA, in Section VI ("Remaining Proceedings: Attorneys' Fees, Costs, and Interest"), established the procedure for determining the amount of attorneys' fees and costs, as well as the amount of interest to be awarded.  Thereafter, the parties briefed these issues.  No party requested oral argument, and thus these matters were deemed submitted for decision upon the filing of Claimants' reply papers on June 13, 2018.  Shortly thereafter, however, Deol filed for Chapter 13 bankruptcy[2] and this arbitration was stayed until the Bankruptcy Judge's Order of October 31, 2018, lifting the automatic stay on the remaining phases of this arbitration.   More than fourteen days have passed since the Order lifting the stay.  [Fed. R. Bankr. P. 4001(a)(3)].

Having read and considered the moving, opposition, and reply papers, and good cause appearing, the undersigned makes the following findings and issues the following orders:

---

[1] In this Order, Goel and GFV may, at times, be referred to collectively as "Claimants."

[2] *In re Jaspal S. Deol, Debtor*, Case No. 18-23885-C-13, U.S. District Court for the Eastern District of California, filed October 20, 2018.

 
## DISCUSSION

**A. Attorneys' Fees:**

    1. Basis for Attorneys' Fees Award:

      Respondents/Counter-Claimants Jaspal Singh Deol and Econergy, Inc. (collectively "Deol") object to the undersigned's ruling, in the FPFA, that Claimants may recover their attorneys' fees. Deol argues there is no legal basis, in statute or contract, for any award of fees to these prevailing parties.

      Although there is no statute providing for fees in this case, Deol is incorrect in arguing that ". . . neither the loan agreement nor the co-development agreement contains a clause providing attorney fees to the prevailing party." [Opposition Memorandum of Points and Authorities ("Opposition Ps & As") at 3:26-27]. Rather, as pointed out by Claimants, Article 6 ("Indemnity") of the parties' Loan Agreement provides:

> "Borrower [Econergy] and Guarantor [Deol] shall jointly
> and severally indemnify and keep indemnified the Lender
> [Goel] and its representative, officers, employees and agents
> from and against any and all claims, liabilities, damages,
> demands, losses including but not limited to *any legal or*
> *other expenses incurred or suffered by the Lender due to delay*
> *in the repayment of the Loan or anything contrary to this Agreement.*"
> [italics added]

      This arbitration began as the result of Econergy's decision, orchestrated by Deol, to stop performing its obligations under the Loan Agreement, i.e., by stopping all repayments to Goel on his $1 million loan to Econergy. That non-payment was transformed into a rather complex matter as Deol sought to justify Econergy's non-payment by alleging a litany of misdeeds by Goel, which allegedly warranted not only stopping the loan payments, but which entitled Econergy to treat the loan as void *ab initio* or fully repaid. Other issues in the case also directly involved the Loan Agreement, included Deol's alleged default on his personal guarantee under that Agreement, and his default on the land purchase option he had given to GFV, which option was confirmed in the Loan Agreement. Indeed, Deol acknowledges that the Loan Agreement was at the core of the case: "[t]he primary claims in this case, [are] for breach of the Loan Agreement . . ." [Opposition Ps & As, at 9:9].

      As such, Claimants are correct in arguing that "nearly all of the asserted claims (and cross-claims) implicated disputes (with the same underlying facts) involving the Loan Agreement (breach or default, excuse for non-repayment, loan already repaid, unenforceability, duress, rescission and setoff) . . ." [Reply brief at 2:18-20]. They are also correct that the Loan Agreement and the Co-Development Agreement "may be construed as one contract and the attorneys' fees clause in the Loan Agreement applie[d]

---

3

 
to claims under the Co-Development Agreement as well." [Claimants' Reply Brief at 3:7-9].

Deol should not be surprised that attorneys' fees are available to the prevailing parties in this case. From the start, *all* parties have treated this case as one in which fees would be awarded to the prevailing party. Deol's first "pleading" in this arbitration, his counter-claim dated December 9, 2014, requested an award of attorneys' fees. [Cross-Complaint dated December 9, 2014, at 11:21]. And, shortly thereafter, on January 5, 2015, in the Claimants' First Amended Complaint in Arbitration, they specifically referenced the indemnity provisions of Article 6 of the Loan Agreement and requested "[a]ll costs of suit, including legal and other expenses incurred or suffered by Plaintiffs due to delay in repayment of the Loan or anything contrary to the Loan Agreement as provided by Article [6], titled 'Indemnity,' of the Loan Agreement." [Claimants' First Amended Complaint in Arbitration at 11:21-23]

The fact that all parties requested fees does not necessarily make them awardable in the absence of a contract or statute;[3] however, their mutual requests for fees can be viewed as evidence that they interpreted the language of their agreements as allowing for an award of fees to the prevailing party.

The undersigned hereby reaffirms his determination, announced in the FPFA, that Claimants, as the prevailing parties, are entitled to recover their reasonable attorneys' fees and costs.

   1. Use of Lodestar Method to Determine Reasonable Fees:

"California Courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." *Margolin v. Regional Planning Com.* (1982) 134 Cal.App.3rd 999,1004-1005. As such, "... the fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095. "The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." *Id*, at p. 1095. "Among the factors that may be considered by the trial court in adjusting the lodestar are the contingent nature of the fee award, the novelty and difficulty of the questions involved, and the skill displayed in presenting them." *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488.

---

[3] At least one case has held that if a party requests fees under a contract, that party will be judicially estopped from contesting the other party's right to fees even if the contract has no fees provision. *International Billing Services, Inc.. v.. Emigh* (2000) 84 Cal.App.4th 1175, 1187-1189. However, later cases have rejected this judicial estoppel argument and held that fees should not be awarded unless a contract or statute so provides. See, e.g., *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, at 899.

4

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 4 of 15

 
Both sides argue for use of the lodestar method, and the undersigned finds that method appropriate for determining reasonable fees in this arbitration.

Claimants contend that their attorneys' and paralegals' rates were reasonable, as were the number of hours they spent on the case; they request a lodestar award of $985,788.72. They also request an additional $44,373.77 for legal work done in the Santa Clara County Superior Court to enforce the earlier arbitration orders and an additional $31,333.57 related to defending against the legal action undertaken by Deol in India ("the Indian action") to re-litigate some of the issues of this case.

Deol rejoins that the hourly rates claimed by the attorneys and paralegals are excessive and unreasonable, and similarly that the time they spent on the case was excessive and unreasonable. As such, Deol argues for a large reduction in the lodestar amount. Deol also argues that it would be improper to award fees and costs to Claimants for their work in the Superior Court and in the Indian action. Neither side argues for an upward or downward modification of the lodestar amount, once it is determined

### 3. Are the Hourly Rates Reasonable?

Claimants submitted the declaration of lead attorney, Robert J. Yorio, Esq. ("Yorio"), giving the hourly rates billed by each attorney and paralegal working on this case. The hourly rates for the attorneys were as follows: for Yorio: $450/hr. (down from his usual fee of $900/hr.); for co-lead attorney Christine Watson: $350/hr. to $445/hr.; for all other attorneys: $375/hr. to $445/hr. The hourly rates for the paralegals ranged from $140/hr. to $210/hr.

Whether an attorney's hourly rate is reasonable is to determined by reference to the "market value" of those services: "[t]he reasonable market value of the attorney's services is the measure of a reasonable hourly rate." *Nemeck & Cole v. Horn* (2012) 208 Cal.App.4th 641, at p. 651. And, reasonable market value is determined by reference to the prevailing rate charged for similar work in the community where the proceedings took place. See, e.g., *Syers Properties III, Inc. v. Rankin* (2014) 226 Cal.App.4th 691.

Yorio, in his opening declaration, stated: "I am familiar with prevailing market rates for skilled attorneys experienced in commercial and intellectual property litigation. The rates charged to Claimants in this matter for partners, associates and paralegals (other than me) are consistent with rates charged by comparable attorneys at firms in San Francisco, San Jose and Silicon Valley. My billing rate charged to Claimants in this matter of $450.00 is substantially below that charged by commercial and intellectual property litigation attorneys with comparable skill and experience." [Initial Declaration of Robert J. Yorio at 3:15-21]

Yorio further declared: "I . . . have reviewed the hourly rates charged by all of the attorneys and paralegals in this matter and their respective experience levels. In addition, it is my responsibility as a litigation partner at Carr & Ferrell to regularly review and set billing rates for the members of our litigation practice group. In my opinion, the rates


charged to Claimants for representation in this matter are reasonable and well within the market range for comparably qualified and experienced attorneys and paralegals handling comparable litigation in the Bay Area." [Initial Declaration of Robert J. Yorio at 3:22-28]

Deol's objects to Yorio's declaration as "self-serving," and complains that none of the other attorneys and paralegals submitted declarations as to the reasonableness of their rates.[4] Deol also complains that Claimants did not produce declarations "from anyone else in the legal community as to standard community rates for lead counsel, associates, or paralegals." [Opposition Ps & As, at 5:1-2]

Interestingly, Deol did not submit a single declaration in opposition to this motion, and thus did not contradict Claimants' evidence as to the reasonableness of their attorneys' and paralegals' rates. Similarly, Deol did not reveal the hourly rates charged by his attorneys for work on this case. As such, Deol has not effectively challenged Yorio's declaration regarding the reasonableness of the rates charged. This situation is similar to that in *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010, where "[moving party's] counsel submitted evidence supporting his hourly rate and [opposing party] did not submit evidence of current rates contradicting this rate." The Court of Appeal concluded "the trial court did not abuse its discretion when it used the [unopposed hourly rate]." 215 Cal.App.4th at 1010.

Based on the uncontroverted evidence, as well as the undersigned's knowledge of attorney and paralegal rates in the San Francisco Bay Area generally (and in Silicon Valley in particular),[5] the requested attorney and paralegal rates are indeed reasonable market rates for attorneys and paralegals possessing their levels of experience and working on a case of this complexity. The hourly rates of the attorneys and paralegals are hereby found reasonable.

Indeed, Deol should be thankful that Yorio requested his fees only at the greatly discounted rate he gave this particular client. Yorio easily could have asked for the *reasonable hourly value* of his time, irrespective of this discount given the client. The law is clear that, when determining the reasonableness of an attorney's fees, the fee arrangement between that attorney and the client is irrelevant. See, e.g., *Nemeck & Cole v. Horn* (2012) 208 Cal.App.4th 641: "The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. [Citations.] This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represent the client on a straight contingent fee basis, or are in-house counsel. [Citations.]" 208 Cal. App.4th at 651.

---

[4] Why Deol would discount Yorio's declaration as "self-serving" yet complain that there were no similar self-serving declarations from the other attorneys and paralegals, was not explained.

[5] "The court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate." *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009.

---

6

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 6 of 15

 
4. Was the Time Spent on the Case Excessive or Unreasonable?

According the Yorio's declaration, Claimants' attorneys and paralegals spent the following hours on this case: Yorio: 924.10 hours; Christine Watson: 812.60 hours; all other attorneys: 163.5 hours; paralegal Julia Burillo: 1,147.65 hours; all other paralegals: 9.15 hours.

Deol challenges these hours as excessive and unreasonable. He alleges both overstaffing and excessive time spent on certain tasks. He complains that (1) two attorneys participated in the depositions of Jaspal Deol, Prabhakar Goel, Vijay Goel, and Neelkant Gargya; (2) two attorneys participated in a telephonic case management conference held on August 13, 2014; (3) one paralegal (Ms. Burillo) attended all evidentiary hearings; (4) the attorneys spent time setting up and attending board meetings with their clients; and (5) the paralegals spent allegedly excessive time on handing documents and deposition transcripts. Deol also complains that the redactions on several of the invoices made it hard, if not impossible, to determine and challenge the work done.

Deol also challenges the awarding of any attorneys' fees incurred by Claimants in the Superior Court action seeking to enforce certain arbitration orders, as well as the fees incurred in India defending against Deol's actions there. [See Exhibits F and G to Yorio's Initial Declaration.]

Deol's attack on the time spent by Claimants' counsel and paralegals on specific tasks has been shown, by way of Yorio's reply declaration, not to be well taken. That evidence demonstrated why two attorneys participated in certain crucial depositions, why it was necessary and appropriate for the lead paralegal to be present during the evidentiary hearings, and explained the paralegals' entries regarding time spent handling documents and deposition transcripts.

Interestingly, too, despite making his "overstaffing" argument, Doel does not bother to mention that he had two attorneys attending six of the eleven days of hearings.[6] He also does not reveal, for comparison purposes, the number of hours his attorneys worked on this case.

When determining the reasonableness of time spent on a case, the opposing party's litigation conduct is always a relevant factor. In our case, Deol vigorously pursued every aspect of this matter, including making a number of rather personal attacks on Goel (alleging unethical behavior). Of course, "[a party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [other party] in response." *Int'l Longshoremen's and Warehousemen's Union v. Los Angeles Export Terminal, Inc.* (1999) 69 Cal.App.4th 287, 304.

Having presided over this arbitration for several years now, the undersigned is well aware that this was a detailed, convoluted, and hard-fought matter. It involved

---

[6] Deol's attorneys Finnerty and Edgeworth both participated in the arbitration hearings on June 13, 14, 29, and 30, and July 21 and 22, 2016.

7

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 7 of 15


claims of several million dollars and a battle for control of a corporation and a solar power plant in India.   The underlying events spanned several years, and their recounting involved witness from the U.S., India, and Spain.

      If this fees motion were in court, the trial judge would not be required to engage in an overly "granular" review of the various tasks undertaken by the attorneys and opine as to the reasonableness of the time spent on each task. "We find no California case law analogue to [CCP] section 632 [regarding statements of decision] requiring trial courts to explain their decisions on all motions for attorneys fees and costs or even requiring an express acknowledgement of the lodestar amount." *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67.   As such, trial judges need not perform an "item by item" justification for any reductions they might make to requested fees: "trial courts are not required to specify each and every claimed item found to be unsupported or unreasonable." *Gorman v. Tassajara Development Corp., supra,* at 67.   Rather, a simple statement that the court finds the "amount of fees requested is reasonable" is deemed a sufficient explanation. *Hjelm v. Prometheus Real Estate Group, Inc.* (2016) 3 Cal.App.5th 1155, 1178.

      Although the undersigned has been notified of Deol's bankruptcy filing, the financial status of a losing party is not a factor to be used when determining and awarding reasonable fees under a contract. See, e.g., *Walker v. Ticor Title Co. of California* (2012) 204 Cal.App.4th 363, at 372 - 373: ". . . we conclude it is inappropriate to consider the losing party's financial status as an equitable factor in assessing contractual attorney fees," and thus "a losing party's financial condition should not be considered in the setting the amount of such an award." Also, as noted above, Deol has already greatly benefitted in this motion from the fact that Claimants' lead attorney (Yorio) only asked for fees at the rate he billed his client (one-half his normal rate), not the reasonable value of his time.

      The amount requested for attorney and paralegal time is hereby determined to be reasonable and appropriate, without reduction: $985,788.72 is awarded as and for Claimants' reasonable attorneys' fees in this arbitration.

      As for Claimants' request to also recover the fees and costs incurred in the Superior Court, that request is denied.  Those fees and costs are matters for determination and award by the Superior Court. C.C.P. § 1293.2 provides: "The court shall award costs upon any judicial proceeding under this title as provided in Chapter 6 (commencing with Section 1021) of Title 14 of Part 2 of this code." As such, "[a] court must award costs in a judicial proceeding to confirm, correct, or vacate an arbitration award. [citations omitted] Attorney fees are recoverable as costs if authorized by contract. (Code Civ. Proc. § 1033.5, subd. (a)(10)(A).)" *Corona v. Amherst Partners* (2003) 107 Cal.App.4TH 701, at 707.  Similarly, Claimants' request for an award of the fees and costs incurred in dealing with Deol's Indian court actions is rejected.

///////

Exhibit 1 to
Proof of Claim
Page 8 of 15

 
**B. Costs:**

The costs requested by Claimants total $231,679.11, and fall into three categories: (1) JAMS costs (case management fees, hearing fees, and arbitrator's fees) of $63,813.22; (2) non-JAMS costs, other than expert costs, of $62,171.77; and (3) expert costs of $105,692.12.

1. JAMS Costs (i.e., JAMS Case Management Fees, Hearing fees, and the Arbitrator's Fees:

Even without Article 6 of the Loan Agreement, these costs are recoverable by the prevailing parties. The parties agreed to arbitrate this matter through JAMS, and thus the JAMS arbitration rules become part of the parties' agreement to arbitrate. [See JAMS Comprehensive Arbitration Rule 1(b).]

Rule 24(f) of JAMS Comprehensive Rules provides: "The Award of the Arbitrator may allocate Arbitration fees and Arbitrator compensation and expenses, *unless such an allocation is expressly prohibited by the Parties' Agreement.*" [Italics added.] Here, neither of the contracts "expressly prohibits" an allocation of arbitration costs, and thus the JAMS costs are properly awardable to the prevailing parties.

The Rule 24(f) costs include JAMS' (a) case management fees, (b) hearing fees, and (c) arbitrator's fees. Claimants have claimed these costs as being $63,813.22, which includes the fees Claimants advanced on behalf of Deol in order to secure the issuance of certain orders.

Deol challenges these JAMS costs as excessive and unsupported by adequate documentation. However, Yorio's reply declaration supplies the invoices for these JAMS charges. Also, these amounts are easily verifiable by Deol, who has received JAMS invoices for his one-half of these same costs. Additionally, the undersigned has verified the amount that has been paid to JAMS by Claimants through and including the issuance of this Order and the Final Award. The total amount Claimants have paid, including the $3,122.03 recently advanced on behalf of Deol to secure the issuance of this Order and the Final Award,[7] is $65,005.77.[8]

The undersigned finds the JAMS costs paid by Claimants have been adequately documented and are recoverable. That amount ($65,055.77) is awarded to Claimants, as part of their allowable costs.

---

[7] JAMS Comprehensive Rule 31(c) provides that "[i]n the event that one Party has paid more than its share of such fees, compensation and expenses, the Arbitrator may award against any other Party any such fees, compensation and expenses that such Party owes with respect to the Arbitration."

[8] The previous advances made by Claimants on behalf of Deol were later paid by Deol, and thus JAMS has returned those funds to Claimants' account in this matter.

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 9 of 15



2.  Non-JAMS Costs (other than expert fees): $62,173.77

The non-JAMS, non-expert, costs requested by Claimants were as follows:

| | |
|---|---|
| Courier fees (FedEx) | $479.16 |
| Court reporter fees for depositions and arbitration hearing; | $52,342.16 |
| Online research costs | $1,379.43 |
| Document production service | $4,886.71 |
| Travel expenses | $884.11 |
| Service of Subpoenas | $1,391.91 |
| Miscellaneous | $808.29 |
| Total: | $62,171.77. |

Deol objects to these costs. First, Deol argues that none should be recovered, as there is no contract allowing for their recovery. This argument is rejected: JAMS Comprehensive Rule 24(g) allows the arbitrator to "allocate fees *and expenses . . .* if provided by the Parties' Agreement . . ," and, as discussed above, Article 6 of the parties' Loan Agreement provides for the recovery of "any legal *or other expenses incurred or suffered* by the Lender *due to* delay in the repayment of the Loan or *anything contrary to this Agreement.*" [Italics added.]

Deol also argues that many of the claimed costs, even if allowed under the parties' contract, have not been properly documented. This is rejected; they have been properly documented, including by way of Yorio's declarations and the exhibits thereto.

Finally, Deol argues that even if allowed by contract, and even if properly documented, many of these costs would not have been recoverable in a court proceeding, pursuant to the provisions of C.C.P. §1033.5, *et seq.* However, allowable costs in arbitration is not governed by these C.C.P. provisions: "Allocation of costs in arbitration proceedings is governed by the parties agreement or the rules governing the arbitration proceeding. The provisions of the Code of Civil Procedure for allocation of costs of suit (CCP §1032 et seq.) do not control arbitration awards." Cal. Practice Guide, Alternative Dispute Resolution, (The Rutter Group 2018) at ¶ 5:434.1, citing to *Britz, Inc. v. Alfa-Laval Food & Dairy Co.* (1995) 34 Cal.App.4th 1085, 1106 [fn. 9]; and *Austin v. Allstate Ins. Co.* (1993) 16 Cal.App.4th 1812, 1815.

All of the requested non-JAMS, non-expert, costs are found to be reasonable, adequately documented, and allowable under the parties' contract. They are awarded as requested: $62,171.77

///////

///////

///////

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 10 of 15

 
3.  Costs of Experts: $105,692.12:

Claimants employed several experts in their preparation of this case,[9] and each provided testimony and/or supplied documentary evidence. Also, the undersigned appointed a neutral forensic accountant[10] to perform work in this matter, and the parties were required to share in the cost of that expert; that expert's costs are included in Claimants' request.

Deol argues that none of these expert costs are allowable under the C.C.P. and, even if allowable, they have not been properly documented. Once again, the provisions of the C.C.P. regarding costs do not apply to this motion. And each expert's work was directly relevant to the issues presented in this arbitration, and the cost of each is found to be a normal and reasonable expense incurred in preparing and presenting a case of this complexity. As such, they are part of the "expenses incurred or suffered by the Lender due to delay in the repayment of the Loan or anything contrary to this Agreement." These expenses have been adequately documented; they are awarded as requested: $105,692.12.

## C. Interest on Distributions Taken by Deol:

The FPFA allowed GFV to recover interest on 49% of the distributions that Deol improperly took from Econergy and withheld from GFV. Deol challenges the allowance of any pre-award interest on GFV's delayed receipt of these distributions, arguing that the amount was unliquidated until issuance of the FPFA. Deol also argues that, if interest is to be awarded, it must be at the 7% rate for tort actions under Civil Code § 3288, and not at the 10% rate for contract actions under Civil Code §3287(a).

Here, the amount Deol took out of Econergy's Indian bank accounts and out of repatriated funds was clearly known to him; he was the one making the withdrawals. He also knew that those withdrawals were done without the co-owner's involvement or consent. Deol also knew that GFV was a 49% owner of Econergy, and entitled to 49% of any distributions made by the corporation to its shareholders.

Deol's taking of these distributions was both a breach of the Loan Agreement and a tort, i.e., a breach of his fiduciary duty to the company's co-owner, GFV. The undersigned considers Deol's conduct with regard to these distributions as primarily tortious, and notes that "Civil Code section 3288 permits the trier of fact to award interest in tort actions . . . When, by virtue of fraud or breach of fiduciary duty of the defendant, a

---

[9] These included ArrowBeach LLC-Evidentia Consulting (Monica Ip) – tax/accounting; Eric Sundheim of Teknos Associates LLC for valuation of Deol's interest in Econergy; Colliers International was used for valuation of the land transferred under Deol's loan guarantee; Surinder Bedi was used for electrical engineering issues regarding PV Panel and grounding issues; and Sanli Pastore & Hill (the court reporters for the deposition of Deol's expert, Forest Vickery).

[10] Joseph Anastasi, CPA, of the Berkeley Research Group.

ORDER ON ATTORNEYS' FEES, COSTS, AND INTEREST ON DISTRIBUTIONS

Exhibit 1 to
Proof of Claim
Page 11 of 15


plaintiff has been deprived of the use of his money or property and is obligated to resort to litigation to recover it, the inclusion of interest in the award is necessary in order to make the plaintiff whole." *Nordahl v. Franzalia* (1975) 48 Cal.App.3d 657, 665. Further, the fact that the precise amount of those improper distributions was not determined until the arbitration award does not bar recovery of interest on those sums: "[t]he fact that the sum is unliquidated does not remove the discretion to award interest in such instances." *Baker v.Pratt* (1986) 176 Cal.app.3d 370, 383.

As such, GFV is awarded interest at 7% per annum on its 49% share of each of the distributions taken by Deol, from the date of each distribution to the date of this Order. The calculations are as follows:

### Distributions Taken from Ecoenergy's Indian Bank Accounts

| Source Bank and Date of Distribution | 49% of the Distribution Taken by Deol | Daily Interest at 7% on this 49% of Distribution | Total Days from Distribution to this Order | Total Interest to 11/16/18 |
|---|---|---|---|---|
| IDBI   12/24/14 | $11,565.47 | $2.218 | 1422 | $3,153.99 |
| IDBI   12/24/14 | 46,175.64 | 8.856 | 1422 | 12,593.23 |
| IDBI   01/02/15 | 3,872.47 | 0.743 | 1413 | 1,049.86 |
| HDFC 01/02/15 | 7,744.45 | 1.485 | 1413 | 2,098.32 |
| IDBI   01/27/15 | 11,583.11 | 2.221 | 1388 | 3,084.14 |
| IDBI   03/24/15 | 15,704.99 | 3.012 | 1332 | 4,011.98 |
| IDBI   04/20/15 | 7,768.95 | 1.490 | 1305 | 1,944.45 |
| HDFC 05/11/15 | 153.37 | 0.029 | 1284 | 37.24 |
| HDFC 05/11/15 | 11,491.48 | 2.203 | 1284 | 2,828.65 |
| IDBI   06/11/15 | 11,496.87 | 2.204 | 1253 | 2,761.61 |
| IDBI   07/04/15 | 5,423.81 | 1.040 | 1230 | 1,279.20 |
| IDBI   07/10/15 | 11,605.65 | 2.225 | 1224 | 2,723.40 |
| IDBI   08/26/15 | 7,411.74 | 1.421 | 1177 | 1,672.51 |
| HDFC 09/29/15 | (14,871.01) | (2.852) | 1143 | (3,259.83) |
| Operating Expenses in Excess of Those Allowed under the Agreements: A midpoint start date of 05/31/15 is used | 74,725.00 | 14.331 | 1264 | 18,114.38 |
|  |  |  | TOTAL | $54,093.13 |

///////

///////

///////

Exhibit 1 to
Proof of Claim
Page 12 of 15

 

### Distributions Taken from Repatriated Econergy Funds

| Date Funds Withdrawn by Deol | 49% of the Distribution to Deol | Daily Interest at 7% on this 49% of Distribution | Total Days from Distribution to Date of this Order | Total Interest to 11/16/18 |
|---|---|---|---|---|
| 02/7/14 | $34,300.00 | $6.578 | 1742 | $11,458.88 |
| 12/12/14 | 857.50 | .164 | 1434 | 235.18 |
| 9/25/15 | 980.00 | .188 | 1147 | 215.64 |
| 9/30/15 | 9,555.00 | 1.832 | 1142 | 2,092.14 |
| 10/21/15 | 6,860.00 | 1.315 | 1121 | 1,474.12 |
| 11/10/15 | 1,225.00 | .235 | 1101 | 258.74 |
| 11/13/15 | 1,225.00 | .235 | 1098 | 258.03 |
| 12/01/15 | 2,450.00 | .469 | 1080 | 506.52 |
| 12/02/15 | 1,470.00 | .282 | 1079 | 304.28 |
| 12/17/15 | 3,675.00 | .705 | 1064 | 750.12 |
| 01/06/16 | 612.50 | .117 | 1044 | 122.15 |
| 01/14/16 | 3,185.00 | .611 | 1036 | 632.99 |
| 02/01/16 | 980.00 | .188 | 1018 | 191.38 |
| 02/23/16 | 3,307.00 | .634 | 996 | 631.46 |
| 07/25/16 | 767.06 | .147 | 844 | 124.07 |
| 09/21/16 | 1,895.32 | .363 | 786 | 285.32 |
| 10/18/16 | 1,102.50 | .211 | 759 | 160.15 |
| 12/15/16 | 1,078.00 | .207 | 701 | 145.11 |
| 05/05/17 | 998.63 | .192 | 560 | 107.52 |
| | | | TOTAL | $19,953.80 |

As such, GFV is awarded a total of $74,046.93 as and for interest on the distributions wrongfully taken, and withheld, by Deol.

### D. Which Parties Should be Held Liable for the Fees and Costs Awarded Above?

Lastly, Claimants argue that any fees and costs awarded in this matter should be borne solely by Deol, and not jointly with Econergy; Deol objects.

As discussed above, the basis for awarding fees and costs (other than the JAMS costs) is the contractual indemnity provision (Article 6) of the Loan Agreement. That Article provides that "Borrower [Econergy] and Guarantor [Deol] *shall jointly and severally indemnify and keep indemnified the Lender* [Goel] . . ."

The parties agreed to a joint and several indemnity obligation, and the undersigned is not persuaded that cause exists to rewrite that agreement. As such, the fees and costs are deemed a joint and several obligation of the indemnitors, Deol and Econergy.


## ORDERS

Based on the above findings and conclusions, the following is ordered:

1. Goel Family Ventures I, LP is awarded **$74,046.93** against Jaspal Singh Deol, as and for interest on the distributions wrongfully taken by Deol from Econergy, Inc. and withheld from GFV;

2. Claimants/Counter-Respondents Prabhakar Goel and Goel Family Ventures I, LP, are awarded the following as against Respondents/Counter-Claimants Jaspal Singh Deol and Econergy, Inc. jointly and severally:

    a. Reasonable attorneys fees:              **$985,788.72**

    b. Costs:

| | |
|---|---|
| JAMS arbitration costs (through and including this Order and the Final Award): | $65,005.77 |
| Non-JAMS costs (other than expert costs) | $62,171.77 |
| Expert costs | $105,692.12 |
| **Total Costs Awarded:** | **$232,869.66** |

The above amounts will be included in the Final Award, issued herewith.

Dated: November 16, 2018.

Hon. Robert A. Baines
Judge of the Superior Court (Ret.)
Arbitrator


## PROOF OF SERVICE BY EMAIL & U.S. MAIL

Re: Goel, Prabhakar vs. Econergy, Inc., et al.
Reference No. 1110016365

    I, Jason Clark, not a party to the within action, hereby declare that on December 03, 2018, I served the attached Order on Attorneys' Fees, Costs, and Interest on Distributions on the parties in the within action by Email and by depositing true copies thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States Mail, at San Jose, CALIFORNIA, addressed as follows:

Robert J. Yorio Esq.
Christine Watson Esq.
Carr & Ferrell, LLP
120 Constitution Drive
Menlo Park, CA 94025
Phone: 650-812-3400
yorio@carrferrell.com
cwatson@carrferrell.com
    Parties Represented:
    Prabhakar Goel

Ognian Gavrilov Esq.
Eliezer M. Cohen Esq.
Gavrilov & Brooks
2315 Capitol Ave.
Sacramento, CA 95816
Phone: (916) 504-0529
info@gavrilovlaw.com
ecohen@gavrilovlaw.com
    Parties Represented:
    Econergy, Inc.
    Jaspal Singh Deol

    I declare under penalty of perjury the foregoing to be true and correct. Executed at San Jose, CALIFORNIA on December 03, 2018.

Jason Clark
JClark@jamsadr.com

Exhibit 1 to
Proof of Claim
Page 15 of 15

 

# EXHIBIT 2

 

1  ROBERT J. YORIO (SBN 93178)
   yorio@carrferrell.com
2  ILENE H. GOLDBERG (SBN 168051)
   igoldberg@carrferrell.com
3  CARR & FERRELL LLP
   120 Constitution Drive
4  Menlo Park, California 94025
   Telephone No.: (650) 812-3400
5  Facsimile No.: (650) 812-3444

6  Attorneys for Plaintiffs
   ECONERGY, INC., PRABHAKAR GOEL and
7  GOEL FAMILY VENTURES I LP

8

9

10          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11               IN AND FOR THE COUNTY OF SANTA CLARA

12                        UNLIMITED JURISDICTION

13  ECONERGY, INC., a California          )  CASE NO. 17- CV-314877
    corporation; GOEL FAMILY              )
14  VENTURES I LP, a partnership, and     )  [PROPOSED] ORDER TO CONFIRM
15  PRABHAKAR GOEL, an individual,        )  FINAL ARBITRATION AWARD
                                          )
16                Plaintiffs,             )  Date:    January 10, 2019
                                          )  Time:    9:00 a.m.
17        v.                              )  Dept.:   6
                                          )  Judge:   Honorable Theodore C. Zayner
18  JASPAL SINGH DEOL, an individual;     )
19  and DOES I through XX, inclusive,     )
                                          )  Date Action Filed: August 22, 2017
20                Defendants.             )  Trial Date: Not Yet Set
                                          )
21                                        )

22

23      This matter came on for hearing on Thursday, January 10, 2019, on the Motion of Plaintiffs

24  Goel Family Ventures I LP and Prabhakar Goel for an Order to Confirm the Final Arbitration

25  Award in the Arbitration entitled Goel, et al. v. Econergy, et al., JAMS Case No. 1110016363,

26  entered on November 16, 2018. After consideration of oral argument by counsel and the briefs

27  submitted by the parties, and good cause appearing therefor,

28      IT IS HEREBY ORDERED that:

                                                                        Page 1
   [PROPOSED] ORDER TO CONFIRM FINAL ARBITRATION AWARD (CASE NO. 17-CV-314877)  Exhibit 2 to
                                                                        Proof of Claim
                                                                        Page 1 of 5

 

## FINAL ARBITRATION AWARD

The Petition to Confirm the Final Arbitration Award of Plaintiffs Goel Family Ventures I LP and Prabhakar Goel is GRANTED and the November 16, 2018 Final Arbitration Award is hereby confirmed as a Judgment;

## MONETARY RELIEF

1.      Plaintiff Prabhakar Goel is awarded $690,716 against Econergy, Inc. for the balance due under the Loan Agreement as of June 21, 2017. Plaintiff Prabhakar Goel is awarded $97,078.71 in interest from the time of the initial Partial Final Award (June 21, 2017) (Final Award, Section II.A);

2.      Defendant Jaspal Deol is awarded $624,291.41 against Plaintiff Prabhakar Goel representing the value of Defendant Jaspal Deol's interest in Econergy's shares and the Ludhiana land payable once the land and shares have been fully transferred to Plaintiff Prabhakar Goel after being offset by an amount of $352,308.59 which is the amount awarded against Deol to Goel for the Deol's guarantee on the defaulted loan (Final Award, Section II.B);

3.      Plaintiff Goel Family Ventures I LP is awarded $438,425.54 against Defendant Jaspal Deol representing 49% of the dividends Defendant Jaspal Deol wrongfully took and withheld from Goel Family Ventures, plus interest of $74,046.93 (Final Award, Section II.C);

4.      Plaintiffs Prabhakar Goel and Goel Family Ventures are awarded $985,788.72 in attorneys' fees against Defendant Jaspal Deol and Econergy jointly and severally (Final Award, Section IV);

5.      Plaintiffs Prabhakar Goel and Goel Family Ventures are awarded $232,869.66 in costs (including expert fees and arbitration fees) against Defendant Jaspal Deol and Econergy jointly and severally (Final Award, Section IV);

6.      Defendant Jaspal Deol is awarded $163,357.04 against Econergy for rent due from Econergy for its use of the Ludhiana land from the time of plant commissioning (March 2, 2012) to October 1, 2017 (the valuation date for Defendant Jaspal Deol's transfer of the land to Plaintiff Prabhakar Goel) (Final Award, Section II.D);

 
7.     Plaintiff Econergy, Inc. is awarded $4,473 against Defendant Jaspal Deol for the balance due from Defendant Jaspal Deol on Econergy's second capital call in late 2015 (Final Award, Section II.E); and

8.     Plaintiff, Econergy, Inc. is awarded $3,000 against Defendant Jaspal Deol for the interest Defendant Jaspal Deol received on bank guarantees Econergy had deposited with IREDA (Final Award, Section II.F).

9.     Defendant Jaspal Deol is required to indemnify Plaintiffs Prabhakar Goel, Goel Family Ventures and Econergy in the event they are subject to interest payments and/or tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017, and the JAMS Arbitrator retains jurisdiction to determine the amount of any such indemnification, if needed (Final Award, Further Partial Final Award, Section IV.b at p. 64).

## INJUNCTIVE RELIEF

A.     Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

    1.     Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

    2.     Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

    3.     Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.     Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

    1.     Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

    2.     Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff

---

[1]     The land consists of eleven parcels totaling approximately 10 .2 acres , described as Khasra No. 67/20/2, 21, 68/23, 24, 25 , 74/3 , 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Tehsil Jagraon , Dist. Ludhiana, Punjab, India.



1    Prabhakar Goel, or his designee, three (3) original properly executed powers of

2    attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all

3    actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or

4    his designee;

5    3.    Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to

6    (a) immediately allow Claimants' agents in India to have unrestricted access to and

7    complete control over the Ludhiana solar power plant and its operations, including

8    turning over any keys and codes and (b) refrain from interfering with Claimants'

9    access to and control over the plant in any way, and ( c) provide the digital signature

10    to the Claimants' designated Chartered Accountant solely for the purpose of

11    changing any and all authorized signatories in India;

12    4.    Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents

13    (including originals where available) pertaining to (a) Econergy and Econergy's

14    business and its dealing with PEDA, IREDA and PSPCL, including all tax returns

15    (and supporting documents therefor) filed in the U.S. and all documents pertaining to

16    Econergy in India, and (b) original documents regarding Deol's purchase and

17    operation of the land underlying the Econergy Ludhiana plant;

18    5.    Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five

19    (5) days, three fully-executed and notarized originals of the Affidavit which is

20    attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh

21    Deol," dated February 20, 2018; and

22    6.    To immediately instruct Surinder Singh Sandhu to refrain from accessing or

23    attempting to access Econergy, Inc.'s bank accounts.

24   C.   Regarding Defendant Jaspal Deol's Indian Court Actions:

25    1.    Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any

26    legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy

27    Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs

28    of Econergy, Inc., including the planning, development, and operation of Econergy's

 

Ludhiana solar power plant;

2.    Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in Econergy, Inc.; that he no longer has the legal capacity to pursue actions on behalf of Econergy, Inc., and that any individual claims he possesses from the planning, development, and operation of Econergy's Ludhiana solar plant are matters that he is required to submit to binding arbitration in lieu of any court action; and

3.    Defendant Jaspal Deol, and any person or persons acting at his behest or on his behalf, including agents, employees, representative, and all persons acting in concert or participating with them, are ordered to forthwith instruct any Indian counsel acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith withdraw or dismiss the entire action pending in the court of Sh. K. K. Kareer Commercial Court Ludhiana, Punjab, India, including all claims on behalf of Econergy, Inc. and claims on behalf of himself individually regarding the planning, development, and operation of Econergy's Ludhiana solar plant.

IT IS SO ORDERED.

DATED:   **JAN 1 0 2019**  _____

                Theodore C. Zayner

                _____
                JUDGE OF THE SUPERIOR COURT

 

# EXHIBIT 3

1  ROBERT J. YORIO (SBN 93178)
   yorio@carrferrell.com
2  ILENE H. GOLDBERG (SBN 168051)
   igoldberg@carrferrell.com
3  CARR & FERRELL LLP
   120 Constitution Drive
4  Menlo Park, California 94025
   Telephone No.: (650) 812-3400
5  Facsimile No.: (650) 812-3444

6  Attorneys for Plaintiffs
   ECONERGY, INC., PRABHAKAR GOEL and
7  GOEL FAMILY VENTURES I LP

8



(ENDORSED)

# FILED

JAN 1 0 2019

Clerk of the Court
Superior Court of CA County of Santa Clara
BY _____ H. ARAGON_____ DEPUTY

9

10              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  IN AND FOR THE COUNTY OF SANTA CLARA

12                          UNLIMITED JURISDICTION

13  ECONERGY, INC., a California           )   CASE NO. 17- CV-314877
14  corporation; GOEL FAMILY               )
    VENTURES I LP, a partnership, and      )   JUDGMENT
15  PRABHAKAR GOEL, an individual,         )
                                           )
16              Plaintiffs,                )
                                           )
17                                         )
         v.                                )
18                                         )
                                           )
19  JASPAL SINGH DEOL, an individual;      )
    and DOES I through XX, inclusive,      )
20                                         )
                                           )
21              Defendants.                )
                                           )

22

23      The Court having entered its Order confirming the Final Arbitration Award issued in the

24  JAMS arbitration proceeding between the parties, JUDGMENT is entered as follows:

25                          FINAL ARBITRATION AWARD

26      The Petition to Confirm the Final Arbitration Award of Plaintiffs Goel Family Ventures I

27  LP and Prabhakar Goel is GRANTED and the November 16, 2018 Final Arbitration Award is

28  hereby confirmed as a Judgment;

Exhibit 3 to
Proof of Claim
Page 1 of 4



### MONETARY RELIEF

1.     Plaintiff Prabhakar Goel is entitled to Judgment in the amount of $787,794.71 against Econergy, Inc.;

2.     Defendant Jaspal Deol is entitled to Judgment in the amount of $624,291.41 against Plaintiff Prabhakar Goel for the excess value of the Econergy shares and Ludhiana land payable once the shares and land have been fully transferred to Plaintiff Prabhakar Goel;

3.     Plaintiff Goel Family Ventures I LP is entitled to Judgment in the amount of $512,472.47 against Defendant Jaspal Deol;

4.     Plaintiffs Prabhakar Goel and Goel Family Ventures are entitled to Judgment in the amount of $1,218,658.38 against Defendant Jaspal Deol and Econergy jointly and severally;

6.     Defendant Jaspal Deol is entitled to Judgment in the amount of $155,884.01 against Econergy, Inc.; and

7.     Plaintiffs Econergy, Inc., Goel and Goel Family Ventures are entitled to Judgment against Defendant Jaspal Deol requiring Defendant Jaspal Deol to indemnify them in the event they are subject to interest payment on tax penalties for Econergy's failure to timely file tax returns for any tax year before 2017.

### INJUNCTIVE RELIEF

A.     Regarding Transfer of Defendant Jaspal Deol's Ownership Interest in Econergy, Inc.:

1.     Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel all of his shares in Econergy, Inc., and to take all necessary actions to complete the transfer of his ownership interest in the corporation to Plaintiff Prabhakar Goel;

2.     Defendant Jaspal Deol is ordered to immediately resign as a director of Econergy, Inc.; and

3.     Plaintiff Prabhakar Goel has previously been appointed as, and remains as, the sole director of Econergy, Inc.

B.     Regarding the Transfer of Defendant Jaspal Deol's Interest in the Land in Ludhiana and his control of the Econergy solar plant there:

1.     Defendant Jaspal Deol is ordered to transfer to Plaintiff Prabhakar Goel his interest



in the land under Econergy, Inc.'s Ludhiana solar power plant[1];

2.   Defendant Jaspal Deol is ordered to promptly take all actions needed to ensure the transfer of the land underlying the Econergy Ludhiana solar plant to a designee of Plaintiff Prabhakar Goel, including, but not limited to, furnishing to Plaintiff Prabhakar Goel, or his designee, three (3) original properly executed powers of attorney granting to Plaintiff Prabhakar Goel or his designee full authority to take all actions necessary for the transfer of the Ludhiana land to Plaintiff Prabhakar Goel or his designee;

3.   Defendant Jaspal Deol is ordered to instruct Surinder Singh Sandhu, in writing, to (a) immediately allow Claimants' agents in India to have unrestricted access to and complete control over the Ludhiana solar power plant and its operations, including turning over any keys and codes and (b) refrain from interfering with Claimants' access to and control over the plant in any way, and ( c) provide the digital signature to the Claimants' designated Chartered Accountant solely for the purpose of changing any and all authorized signatories in India;

4.   Defendant Jaspal Deol is ordered to forthwith turn over to Goel all documents (including originals where available) pertaining to (a) Econergy and Econergy's business and its dealing with PEDA, IREDA and PSPCL, including all tax returns (and supporting documents therefor) filed in the U.S. and all documents pertaining to Econergy in India, and (b) original documents regarding Deol's purchase and operation of the land underlying the Econergy Ludhiana plant;

5.   Defendant Jaspal Deol is ordered to deliver to Plaintiff Prabhakar Goel, within five (5) days, three fully-executed and notarized originals of the Affidavit which is attached as Exhibit A to the "Further Injunctive Orders Directed to Jaspal Singh Deol," dated February 20, 2018; and

6.   To immediately instruct Surinder Singh Sandhu to refrain from accessing or

---

[1] The land consists of eleven parcels totaling approximately 10 .2 acres , described as Khasra No. 67/20/2, 21, 68/23, 24, 25 , 74/3 , 4, 7, 8, 13, and 14, Village Boporai Kalan, H.B. 88, Teshil Jagraon, Dist. Ludhiana, Punjab, India.

 

attempting to access Econergy, Inc.'s bank accounts.

C.    Regarding Defendant Jaspal Deol's Indian Court Actions:

   1.    Defendant Jaspal Deol is ordered to immediately cease and desist from pursing any legal action(s), in India or in any other jurisdiction, whether on behalf of Econergy Inc. or on behalf of Defendant Jaspal Deol individual interests, involving the affairs of Econergy, Inc., including the planning, development, and operation of Econergy's Ludhiana solar power plant;

   2.    Defendant Jaspal Deol is ordered to forthwith advise any court(s) in which he has filed actions on behalf of Econergy, Inc., that he no longer holds any legal interest in Econergy, Inc.; that he no longer has the legal capacity to pursue actions on behalf of Econergy, Inc., and that any individual claims he possesses from the planning, development, and operation of Econergy's Ludhiana solar plant are matters that he is required to submit to binding arbitration in lieu of any court action; and

   3.    Defendant Jaspal Deol, and any person or persons acting at his behest or on his behalf, including agents, employees, representative, and all persons acting in concert or participating with them, are ordered to forthwith instruct any Indian counsel acting on his behalf, including Damanbir Singh Sobti, in writing, to forthwith withdraw or dismiss the entire action pending in the court of Sh. K. K. Kareer Commercial Court Ludhiana, Punjab, India, including all claims on behalf of Econergy, Inc. and claims on behalf of himself individually regarding the planning, development, and operation of Econergy's Ludhiana solar plant.

DATED:    JAN 1 0 2019            _____

                                    Theodore C. Zayner

                                JUDGE OF THE SUPERIOR COURT

JUDGMENT (CASE NO. 17-CV-314877)           Exhibit 3E5 4
                                                  Proof of Claim
                                                  Page 4 of 4

# EXHIBIT M

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 18-23885 – C – 13 |
| Jaspal S. Deol, | ) Docket Control No. STJ-3 |
| Debtor. | ) Document No. 74 |
| | ) Date: 10/23/2018 |
| | ) Time: 1:30 PM |
| | ) DEPT: C |

## Order

Findings of Fact and Conclusions of Law are stated in the Civil Minutes for the hearing.

The Motion for Relief from the Automatic Stay filed by Prabhakar Goel and Goel Family Partnership LP("Movant") having been presented to the court, and upon review of the pleadings, evidence, arguments of counsel, and good cause appearing,

**IT IS ORDERED** that the automatic stay provisions of 11 U.S.C. § 362(a) are modified as applicable to Jaspal Deol ("Debtor") to allow Prabhakar Goel and Goel Family Partnership LP, its agents, representatives, and successors, and trustee under the trust deed, and any other beneficiary or trustee, and their respective agents and successors to conclude the arbitration before JAMS in San Jose in Case No. 1110016365 to permit the Arbitrator to issue the ruling on the attorneys' fees, costs, and interest awarded for the arbitration, the issuance of the final arbitration award (based on the prior rulings and the additional rulings on attorneys' fees, costs, and interest, and Movant obtaining confirmation of that final award under applicable law.

**IT IS FURTHER ORDERED** that the automatic stay is not modified with respect to the determination of any other issues by the Arbitrator, enforcement of the arbitration final award or any judgment based on the arbitration final award against the Debtor, the Chapter 13 Trustee, or property of the bankruptcy estate. Any final judgment obtained by Movant shall be submitted to this court for the proper treatment of any claims arising under the Bankruptcy Code.

No other or additional relief is granted.

Dated: October 31, 2018

_____
United States Bankruptcy Judge

Family Ventures I LP (Fee Paid $181) (eFilingID: 6373317) (wmim)